IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **Safelite Group, Inc.,** | : | |
| | : | **Case No. 2:21-cv-04558** |
| *Plaintiff*, | : | |
| | : | |
| v. | : | **Judge Sarah D. Morrison** |
| | : | |
| **Nathaniel Lockridge, *et al*.,** | : | **Magistrate Judge Elizabeth Preston Deavers** |
| | : | |
| *Defendants*. | : | |
| | : | |

### PLAINTIFF SAFELITE GROUP, INC.'S MOTION TO COMPEL DISCOVERY AND RECOVER FEES AND, IN THE ALTERNATIVE, MOTION SEEKING SANCTIONS FOR SPOLIATION

Pursuant to Rule 37 of the Federal Rules of Civil Procedure, Plaintiff Safelite Group, Inc. ("Plaintiff" or "Safelite") respectfully moves the Court for an order compelling Defendant William Harris Billingsley ("Billingsley") to produce documents responsive to Safelite's requests for production of documents. In accordance with Rule 37(a)(5), Safelite also seeks its reasonable costs and attorney's fees incurred in filing the instant motion. In the alternative, if the documents Safelite seeks have been destroyed, Safelite moves the Court for sanctions due to Billingsley's spoliation.

Respectfully submitted,

/s/ *Thomas H. Fusonie*
Thomas H. Fusonie, Trial Attorney (0074201)
Daniel J. Clark (0075125)
Timothy J. Cole (0084117)
George L. Stevens (0092609)
Danielle S. Rice (0093757)
52 East Gay Street, P.O. Box 1008
Columbus, Ohio 43216-1008
Phone: (614) 464-6400
Fax: (614) 719-4630
thfusonie@vorys.com

1

djclark@vorys.com
tjcole@vorys.com
glstevens@vorys.com
dsrice@vorys.com

*Attorneys for Plaintiff Safelite Group, Inc.*

## MEMORANDUM IN SUPPORT

I. **BACKGROUND**

   A. **Case Background**

The Court is well-versed in the background of this case. To briefly summarize, Safelite is a nationwide provider of auto glass replacement and repair services. (Am. Compl. ECF No. 15, ¶ 13.) In an effort to compete with Safelite, Defendant Caliber Auto Glass ("Caliber") recruited, solicited, and hired the other Defendants, who violated their non-competition, non-solicitation, and confidentiality obligations when they left their employment with Safelite to work at Caliber. (*See generally id.*) Relevant here, Defendant Billingsley was a long-tenured Safelite employee who routinely worked with Safelite's confidential and proprietary business information. (*Id.* at ¶¶ 50-53.)

On July 28, 2021, Billingsley attended a Microsoft Teams meeting with the Vice President of Auto Glass for Caliber as well as Defendant Jeffrey Nowak, by then a Caliber employee. On August 1, 2021, Billingsley sent confidential business documents from his Safelite computer to his personal email, and performed a "permanent delete" to cover his tracks. Two weeks later, Billingsley resigned from Safelite to work at Caliber, using Safelite's confidential and proprietary information to recruit other Safelite technicians to join him, in direct violation of the non-competition, non-solicitation, and confidentiality obligations he had with Safelite. (Am. Compl. at ¶¶ 19, 60, 86-90, 94-97.)

Consequently, on August 27, 2021, Senior Corporate Counsel for Safelite sent Billingsley a cease-and-desist letter based on his direct violations of his non-competition, non-solicitation, and confidentiality obligations to Safelite. (Letter attached hereto as **Exhibit 1**.) Then, on November 15, 2021, Safelite filed its Amended Complaint in this matter regarding, among other things,

Billingsley's improper and unlawful actions.[1] (ECF No. 15.) Shortly thereafter, Safelite filed a motion for preliminary injunction against Billingsley, as well as a motion seeking leave for expedited discovery and to depose Billingsley, in part, due to Billingsley's history of deleting relevant information. (ECF Nos. 42, 43.) On January 6, 2022, the Court granted Safelite's motion. (ECF No. 52.)

### B. Discovery and Deposition

On January 7, 2022, Safelite served expedited discovery on Billingsley. As part of that discovery, Safelite sought the following the information:

- All communications with Defendant Jeffrey Nowak, Defendant Nathaniel Lockridge, Bryan Lynch, Michael Fox, Mark Turner, Chris Abal, or any individual relating to Billingsley's employment with Caliber [RFP Nos. 6-12];

- All Safelite documents, information, or materials Billingsley emailed or attempted to email or transfer from any Safelite computer or network to his personal computer or email account, including, but not limited to, glassman303836@gmail.com [RFP No. 15];

- All Safelite documents, information or materials that Billingsley retained following his employment with Safelite [RFP No. 16]; and

- All calendars, diaries, and/or similar such documents or materials evidencing Billingsley's day-to-day schedule from July 1, 2021 to present. [RFP No. 23].

Despite the expedited nature of the requests, Safelite did not receive the relevant documents before Billingsley's deposition.

Prior to the deposition, though, Safelite asked its senior Cloud Engineer to review email logs and data for Billingsley. (Declaration of Trevor Jones ("Jones Decl."), ¶¶ 2, 6, ECF No. 42-1.) Pursuant to this review, Safelite discovered that on Sunday, August 1, 2021 at 7:40 p.m. EST,

---

[1] Safelite notes that it originally filed suit in Texas, but dismissed that action and brought the instant action in this Court.

Billingsley attempted to forward documents from Safelite's internal system from his Safelite email account to his personal Gmail account. (*Id.* ¶ 7.)

This email contained the following attachments: 2020 Houston Key Performance Indicators containing performance metrics for Safelite technicians and locations in the Houston area; "10-2 Associate Letter;" "1881 Role Responsibilities 8-3-2020" containing certain Safelite job descriptions; "1870-phone assignments" containing all of the phone numbers for Safelite's technicians employed at one of its locations in Houston; "2020 Asst Store Mgr NE Store Mgr IC Plan;" 091520 WH Nonglass;" and "Adding Vendors to GlassTrack Buyout Box." (*Id.*, Ex. 2.)[2]

Billingsley's email attempt failed, however, as the message was too large to send. (*Id.*) Consequently, Microsoft Outlook sent a "bounce back" notification to Billingsley (the "Bounce Back Email," ECF 42-1, PageID #269). Billingsley then tried to erase any evidence of his attempt to send this information by deleting the email from his "Sent Items" folder, as then from his "Deleted Items" folder. (*Id.* ¶¶ 7-8.)[3] Billingsley confirmed at his deposition that he intentionally performed this permanent delete. (Billingsley Tr. 96:18-97:11.) Because Billingsley performed this "permanent delete," Safelite cannot recover the document. Billingsley forgot, however, to

---

[2] During his deposition, Safelite asked Billingsley about the Safelite documents he attempted to forward to himself days after meeting with Caliber. Billingsley testified that the email attachments included "phone splits," which identified "certain role responsibilities and phone assignments in the Pasadena location;" an installation compliance plan that discussed Safelite's "processes for installation;" and the 2020 Houston Market KPI Report that discussed rankings of stores throughout Houston (William Harris Billingsley Deposition Transcript ("Billingsley Tr.") 91:24-94:8, attached as **Exhibit 2**.) Billingsley later admitted during his deposition that these were "Confidential Safelite documents." (Billingsley Tr. 95:4-6.)

[3] As explained in Mr. Jones' Declaration, Safelite found evidence that on August 1, 2021, Billingsley deleted the email from his "Sent" folder at 8:47 p.m., and one hour later went into the "Deleted Items" folder and again deleted the email. (*Id.* ¶ 9.) When a Safelite employee attempts a permanent delete—deleting a document from his or her "deleted items" folder—Microsoft Outlook warns the employee with the following prompt: "This will be permanently deleted. Continue?" (*Id.* ¶ 10.) The employee must then click "yes" to effectuate a permanent delete." (*Id.*)

5

perform a permanent delete of the Bounce Back Email, which is how Safelite learned of Billingsley's behavior in the first place.

At his deposition, Billingsley testified that following the Bounce Back Email, he sent ***additional*** emails from his Safelite computer to his personal Gmail address containing Safelite documents ("Sent Emails"). (*Id.* at 96:1-17.) The "Sent Emails" were not found on Safelite's system, presumably because Billingsley performed another permanent delete. Despite being served discovery requests seeking the Sent Emails, Billingsley testified that he had not produced them to Safelite or to his counsel. (*Id.*)

Later in the deposition, Billingsley confirmed he had searched his "Gmail account for responsive documents to this litigation." (*Id.* at 141:5-8.) The following exchange then took place:

> Q: Okay. Have you deleted any items from your Gmail account, since August 27, 2021?
>
> A: Yes.
>
> Q: Any documents relating to Safelite or your employment with Safelite or Caliber or your employment with Caliber?
>
> A: To my knowledge, I have paper copies of just about everything or whatever I did have was sent over to either Caliber or one of my counsel. And it is probably not on the Gmail account anymore. I turned it over and I trust my legal team with it now.
>
> Q: Do you recall when you performed the search for documents on your Gmail?
>
> A: No, I don't.
>
> Q: Was it recently?
>
> A: Yes.
>
> Q: After January 7, 2022?
>
> A: Probably so.

6

> Q: And you provided any documents you found from those searches to either Caliber or your counsel?
>
> A: Correct.
>
> Q: And then you deleted them?
>
> A: Correct.
>
> Q: Were you advised not to delete documents like that?
>
> A: Yes.
>
> Q: And you are obviously aware that this litigation was pending, when you deleted those documents?
>
> A: Well, as I just stated, those documents were either forwarded to counsel or moved over to Caliber's computer. So being deleted out of the Gmail, I still had them. So I still have all the documents that have been sent. They're just not on that side of it anymore.

(*Id.* at 142:1-143:13.) Accordingly, the Sent Emails appear to have been deleted unless preserved in hard copy form.

### C. Meet and Confer Efforts

In the weeks following Billingsley's deposition, Safelite reached out to Billingsley's counsel on multiple occasions regarding the production of emails from Billingsley's personal email account (including the Sent Emails); any documents taken from Safelite; and relevant calendar invitations after September 2021.[4] Specifically, Safelite was attempting to discuss where the Sent Emails were, what documents Billingsley "printed out," and what was deleted from Billingsley's Gmail account. After attempting to meet and confer with counsel for Billingsley on at least five occasions (*see* 1/22/22 deficiency letter, 1/28/22 email, 2/3/22 email, 2/8/22 email,

---

[4] For clarity, Billingsley did produce some calendar invites dated prior to September 2021.

2/15/22 email, attached as **Exhibit 3**), Safelite contacted the court to request an informal status conference.

On February 24, 2022, the parties participated in an informal discovery conference with Magistrate Judge Deavers to discuss the missing documents—specifically, the lack of personal emails (including the Sent Emails) or calendar invitations. At the conference, Billingsley's counsel argued that the calendar invitations were not relevant. The Court disagreed and ordered the calendar invitations to present day be produced. Billingsley's counsel did not have a clear answer for why Billingsley's personal emails (including the Sent Emails) had not been produced, but offered to search Billingsley's Gmail account himself and provide whatever he found. Accordingly, the Court issued a Minute Entry stating that "Counsel for Defendant Billingsley will search personal G-mail account for responsive documents." (ECF No. 100.)

After several weeks, and multiple emails back and forth between Safelite and Billingsley's counsel, Billingsley produced *three* emails from Billingsley's personal Gmail account.[5] None were the Sent Emails that Billingsley admitted he sent to his personal email from Safelite's computer prior to deleting from Safelite's servers. Moreover, Safelite was aware that additional emails existed from Billingsley Gmail account because other Defendants in this case produced those emails. (*See, e.g.*, Nowak0040, attached hereto as **Exhibit 4**.) He also did not produce any calendar invitations. Accordingly, Safelite requested another informal discovery conference with the Court.

At the March 25, 2022 discovery conference, the parties discussed the missing calendar invites and emails from Billingsley's personal Gmail account. During the conference, it still was

---

[5] The three emails from Billingsley's personal Gmail account included: (1) a July 28, 2021 meeting invitation with Caliber employees titled "Quick Call," (2) an August 20, 2021 email regarding Caliber auto glass training, and (3) an October 15, 2021 meeting invitation titled "Power Partner meeting."

not clear what happened to the "print outs" Billingsley testified he gave to counsel, where the Sent Emails were that Billingsley testified he forwarded from his Safelite account, and whether there were any remaining calendar invites. The Court then advised Safelite that it was permitted to file a motion to compel related to this issue.

### D. Billingsley Only Makes Partial Production

On April 4, 2022, Billingsley's counsel provided ***nine*** pages of email printouts to Safelite, stating that these were the "final documents from Mr. Billingsley's email accounts as requested by Safelite." (Email and documents attached hereto as **Exhibit 5**). Confusingly, these printout emails appear to be from Billingsley's Caliber email account, not his personal Gmail account. Nevertheless, the partial production did not contain any calendar invites after September 2021, nor did they contain the Sent Emails that Billingsley sent from his Safelite account to his personal Gmail account. As of the date of the filing of this Motion, Safelite does not have the Sent Emails. It appears possible that they have been deleted and not preserved.

## II. LAW AND ARGUMENT

### A. Motion to Compel

#### 1. *Safelite's Motion to Compel Should Be Granted*

"District courts have broad discretion over docket control and the discovery process." *Pittman v. Experian Info. Sol., Inc.*, 901 F.3d 619, 642 (6th Cir. 2018) (citations omitted). And "[i]t is well established that the scope of discovery is within the sound discretion of the trial court." *Id.* (quoting *Lavado v. Keohane*, 992 F.2d 601, 604 (6th Cir. 1993)). Rule 37 allows for a motion to compel discovery when a party fails to provide proper responses to requests for production of documents under Rule 34, "provided that the motion to compel includes a certification that the movant has, in good faith, conferred or attempted to confer with the party failing to respond to the

requests." *Decker Constr. Co. v. Wesex Corp.*, No. 2:18-cv-727, 2019 U.S. Dist. LEXIS 187142, at *6-7 (S.D. Ohio Oct. 29, 2019) (citing Fed. R. Civ. P. 37(a)(1); S.D. Ohio Civ. R. 37.1); *Cohen v. Allegiance Adm'rs, LLC*, No. 2:20-cv-3411, 2022 U.S. Dist. LEXIS 19414, at *4 (S.D. Ohio Feb. 3, 2022).

"[T]he movant bears the initial burden of showing that the information is sought is relevant." *Prado v. Thomas*, No. 3:16-cv-306, 2017 U.S. Dist. LEXIS 173610 at *1 (S.D. Ohio Oct. 19, 2017) (citing *Gruenbaum v. Werner*, 270 F.R.D. 298, 302 (S.D. Ohio 2010)). The relevancy factor is guided by Rule 26(b) of the Federal Rules of Civil Procedure, which provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). It is well-established that "[r]elevance for discovery purposes is extremely broad." *United States v. Elsass*, No. 2:10-CV-336, 2012 U.S. Dist. LEXIS 64889, at *5, (S.D. Ohio May 9, 2012) (citing *Lewis v. ACB Business Services, Inc*., 135 F.3d 389, 402 (6th Cir. 1998)). If the movant makes the relevancy showing, "then the burden shifts to the non-movant to show that to produce the information would be unduly burdensome." *Id.* (citing *O'Malley v. NaphCare, Inc.*, 311 F.R.D. 461, 463 (S.D. Ohio 2015)).

First, Safelite has met its initial burden of showing that the information sought is relevant. Safelite seeks the Sent Emails that Billingsley admits he sent to himself from Safelite's computer so that it can evaluate the confidential and proprietary information it believes he took, as is relevant to its misappropriation of trade secrets claim. Similarly, Safelite seeks Billingsley's calendar and calendar invites so that it can determine what meetings and interviews Billingsley participated in once employed by Caliber that involved recruiting, soliciting, and/or hiring Safelite employees. This information is relevant to Safelite's claims, which the Court acknowledged during its

February 24, 2022 discovery conference when it ordered Billingsley to produce all calendar invites and search his Gmail account and produce responsive emails to Safelite.

Second, Safelite certifies that it has in good faith conferred and attempted to confer with counsel for Billingsley related to these issues. Indeed, Safelite reached out to counsel for Billingsley *five* times before first contacting the Court for an informal discovery conference. After these efforts, in addition to the two informal discovery conferences with the Court, Safelite sought permission from the Court to file the instant motion.

Finally, counsel for Billingsley has provided no reason for why the documents have not been produced.[6] There has been no formal objection, nor any claim of undue expense. Instead, counsel for Billingsley has given explanations that are inconsistent with his own client's testimony—testimony in which Billingsley claims to have provided emails to counsel in hard copy form and deleted their electronic versions as late as January of 2022. As such, it is not clear if Billingsley is refusing to provide documents or if he has deleted the relevant information—though it appears to be the latter.

2. *Safelite is Entitled to Its Fees Under Rule 37(a)*[7]

Pursuant to Rule 37, if a motion to compel is granted, "the Court must… require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's

---

[6] While Safelite suspects that some of the documents may have been intentionally destroyed, including the Sent Emails, counsel for Billingsley has avoided the topic of spoliation. If the documents are in fact destroyed and no longer exist, Safelite expects Billingsley will say so in response to the motion to compel, in which case Safelite urges the Court to grant the relief it seeks in the alternative: discovery sanctions for spoliation.

[7] If the court decides to grant the motion only in part, the Federal Rules still provide the court with authority to "apportion the reasonable expenses for the motion." Fed. R. Civ. P. 37(a)(5)(C). For all the reasons articulated in this Motion, Safelite contends that it would be appropriate to award Safelite its reasonable costs and attorney's fees for bringing this Motion.

11

fees." Fed. R. Civ. P. 37(a)(5). There are only three exceptions to this rule: "(1) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action, (2) the opposing party's nondisclosure, response, or objection was substantially justified, or (3) other circumstances make an award of expenses unjust." *Hatmaker v. PJ Ohio, LLC*, No. 3:17-cv-146, 2020 U.S. Dist. LEXIS 118736, at *16 (S.D. Ohio July 6, 2020) (citing Fed. R. Civ. P. 37(a)(5)(A)(i)—(iii)).

As noted above, Safelite has attempted in good faith to obtain the discovery at issue for almost three months. As of this date, counsel for Billingsley has provided no response, objection, or reason for why Billingsley has not complied with his discovery obligations to produce the relevant documents. Finally, an award of expenses is the just result. Counsel for Safelite has been forced to spend countless hours attempting to meet and confer on this issue, meeting with the court for informal discovery conference, and now preparing this motion. Counsel for Billingsley has failed to explain its lack of cooperation and failure to provide the relevant documents. Thus, no circumstances exist that make an award of expenses unjust. *See Decker Constr. Co.*, 2019 U.S. Dist. LEXIS 187142, at *7.

Consequently, an award of Safelite's reasonable attorney's fees and costs associated with bringing this Motion to Compel is appropriate.

> **B.     In the Alternative, Motion for Sanctions Due to Billingsley's Spoliation of the Sent Emails**
>
>> *1.     Safelite is Entitled to an Adverse Inference Instruction*

When a party destroys evidence in anticipation of litigation or during litigation, the trial court may impose sanctions for spoliation. *See Applebaum v. Target Corp.*, 831 F.3d 740, 744 (6th Cir. 2016). And under Rule 37(e), "[i]f electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take

reasonable steps to preserve it," a court may issue an adverse inference that the information lost was unfavorable to the party. Fed. R. Civ. P. 37. This Court has "broad discretion when deciding to issue an adverse-inference instruction." *Allied Erecting & Dismantling, Inc., v. Genesis Equip. & Mfg., Inc.*, 511 F. App'x 398, 408 (6th Cir. 2013) (citing *Adkins v. Wolever*, 554 F.3d 650, 652-53 (6th Cir. 2009) (en banc)). "The purpose of imposing sanctions is to assure both future compliance with the discovery rules and to punish past discovery failures, as well as to compensate a party for expenses incurred due to another party's failure to properly allow discovery." *DiLuzio v. Vill. of Yorkville*, No. 2:11-cv-1102, 2016 U.S. Dist. LEXIS 177376, at *73-74 (S.D. Ohio Dec. 22, 2016).

A party seeking sanctions for spoliation—and, specifically, adverse inference instruction—has the burden of establishing three criteria: (1) the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) the party seeking the adverse inference must show that the records were destroyed with a culpable state of mind; and (3) the party seeking the adverse inference must establish that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense. *E.g.*, *Lemmon v. City of Akron*, 768 F. App'x 410, 421 (6th Cir. 2019). Here, all three criteria have been met as to the Sent Emails that Billingsley sent from his Safelite account to his personal Gmail account.

*First*, "[t]he obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." *In re Nat'l Century Fin. Enters., Inc. Fin. Inv. Litig.*, No. 2:03-md-1565, 2009 U.S. Dist. LEXIS 68379, 2009 WL 2169174, at *3 (S.D. Ohio July 16, 2009); *see also John B. v. Goetz*, 531 F.3d 448, 459 (6th Cir. 2008) ("As a general matter . . . a party to civil

13

litigation has a duty to preserve . . . when that party has notice that the evidence is relevant to litigation or . . . should have known that the evidence may be relevant to future litigation.") Safelite sent Billingsley a cease-and-desist letter on August 27, 2021, Billingsley was named in this lawsuit on November 15, 2021 (ECF No. 15), Safelite sought discovery as to Billingsley on December 19, 2021 (ECF No. 42), and Safelite served Billingsley with discovery on January 7, 2022. It is clear that Billingsley had an obligation to preserve evidence and was aware of that obligation for several months.

*Second*, to show a culpable state of mind, a plaintiff must show defendant "acted with the intent to deprive another party of the information's use in the litigation." *Brown v. Duke Energy Corp.*, No. 1:13cv869, 2019 U.S. Dist. LEXIS 54923, at *19 (S.D. Ohio Mar. 31, 2019); *see also* Fed. R. Civ. P. 37(e)(2) advisory committee's note to 2015 amendment (stating that Rule 37(e) applies "if the information was lost because the party failed to take reasonable steps to preserve the information.") This is exactly what Billingsley did, as he testified that he deleted relevant emails from his Gmail account (potentially including the Sent Emails) ***after*** January 7, 2022 (the date he was served with discovery), and even after he was advised by his counsel not to do so. (Billingsley Tr. 142:1-143:13.)

*Third*, the information Billingsley destroyed was relevant to Safelite's claims that Billingsley misappropriated trade secrets. Safelite has evidence that Billingsley attempted to forward numerous confidential and proprietary business documents to his personal account just days after meeting with Caliber, and two weeks prior to his resignation from Safelite that, unfortunately for him, bounced back. Then, Billingsley performed a permanent delete to cover his tracks. Billingsley testified that after the Bounce Back Email, he sent additional emails from his Safelite account to his personal Gmail account containing documents (Billingsley Tr. 91:24-

14

94:17), but that correspondence has now been deleted, depriving Safelite of the opportunity to see what documents were attached to the Sent Emails.

The Sixth Circuit has made clear that the discovery sanction of "an adverse inference for evidence spoliation is appropriate if the Defendants knew the evidence was relevant to some issue at trial and . . . [their culpable] conduct resulted in its loss or destruction. *Lemmon*, 768 F. App'x at 421 (internal quotation marks and citation omitted). That is the case here. Consequently, Safelite seeks an adverse inference instruction that the finder of fact must infer that inspection of the Sent Emails would have shown that Billingsley emailed himself confidential and proprietary Safelite documents.

### 2. *Safelite is Entitled to its Fees under Rule 37(b)*

"Rule 37(b) of the Federal Rules of Civil Procedure provides for sanctions when a party fails to comply with a discovery order." *DiLuzio*, No. 2:11-cv-1102, 2016 U.S. Dist. LEXIS 177376, at *98. "Regardless of what sanction is imposed, 'the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or circumstances make an award of expenses unjust.'" *Id.* (quoting Fed. R. Civ. P. 37(b)(2)). If fees are now awarded pursuant to Rule 37(a), alternatively, Safelite seeks its fees under Rule 37(b). At the February 24, 2022 discovery conference, the Court ordered Billingsley to produce calendar invites and relevant emails from his personal Gmail account. Billingsley has failed to do so without justification. Thus, Safelite seeks its reasonable costs and fees in bringing this motion.

### III. CONCLUSION

For the foregoing reasons, the Court should grant Safelite's Motion to Compel Billingsley to produce the requested documents and award Safelite its reasonable costs and attorney's fees in

bringing this Motion. In the alternative, if the documents Safelite seeks have been destroyed, the Court should grant Safelite's motion for sanctions due to Billingsley's spoliation and award Safelite its reasonable costs and fees.

Respectfully submitted,

/s/ *Thomas H. Fusonie*
Thomas H. Fusonie, Trial Attorney (0074201)
Daniel J. Clark (0075125)
Timothy J. Cole (0084117)
George L. Stevens (0092609)
Danielle S. Rice (0093757)
52 East Gay Street, P.O. Box 1008
Columbus, Ohio 43216-1008
Phone: (614) 464-6400
Fax: (614) 719-4630
thfusonie@vorys.com
djclark@vorys.com
tjcole@vorys.com
glstevens@vorys.com
dsrice@vorys.com

*Attorneys for Plaintiff Safelite Group, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the forgoing was served this 6th day of April, 2022, through the Court's electronic filing system.

>                              /s/ *Danielle S. Rice*
>                              Danielle S. Rice