**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **Safelite Group, Inc.,** | : | |
| | : | **No. 2:21-cv-4558** |
| *Plaintiff*, | : | |
| | : | |
| v. | : | **Judge Sarah D. Morrison** |
| | : | **Magistrate Elizabeth P. Deavers** |
| **Nathaniel Lockridge, *et al.*,** | : | |
| | : | |
| *Defendant*. | : | |

---

**PLAINTIFF SAFELITE GROUP, INC.'S RESPONSE IN OPPOSITION TO
DEFENDANT CALIBER COLLISION CENTERS' (CALIBER HOLDINGS
CORPORATION) D/B/A CALIBER AUTO GLASS MOTION TO DISMISS**

---

In its motion to dismiss (ECF No. 152), Defendant Caliber Collision Centers (Caliber

Holdings Corporation) d/b/a Caliber Auto Glass ("Caliber") asks this Court to do two things: first,

to dismiss the case under Rule 12(b)(2) based on lack of jurisdiction, making the exact same

arguments that this Court already rejected in denying Caliber's first motion to dismiss (ECF No.

85); and, second, to dismiss numerous claims under Rule 12(b)(6) by presenting only some of the

facts upon which Plaintiff Safelite Group, Inc. ("Safelite") bases its claims.  Despite Caliber's

mischaracterizations, Safelite has pled more than enough to establish both personal jurisdiction

and a factual basis for each of its claims against Caliber.  This Court should deny Caliber's motion.

**I.      FACTUAL AND PROCEDURAL BACKGROUND[1]**

Caliber has traditionally operated as a nationwide auto body repair company headquartered

in Lewisville, Texas and is registered to do business in Ohio under the name "Caliber Holdings of

Ohio, LLC."  (ECF No. 126, ¶¶ 4, 7.)  Caliber advertises over 1,300 locations in 36 states,

*including over forty locations in Ohio*.  (*Id.* at ¶ 15, 22.)  Recently, Caliber expanded into the auto

---

[1] The background of this case is well-known to the Court and laid out in detail in Safelite's opposition to Caliber's
first motion to dismiss.  (ECF No. 49.)  As such, Safelite gives only a brief recitation of the most relevant facts.

glass repair and replacement business in which it competes with Safelite in markets throughout the United States—including Ohio. (*Id.* at ¶¶ 17, 23.) Caliber's plan for its expansion into this industry involved soliciting and hiring high-level Safelite employees, who in turn would poach Safelite technicians and Safelite customers. These efforts were part of Caliber's plan to "blitz" markets where it intended to grow the auto glass arm of its business. (*See* ECF No. 153, ¶ 373.)

In keeping with this plan, Caliber solicited and then hired Defendants Jeffrey Nowak, William Harris Billingsley, Nathaniel Lockridge, and Bryan Lynch (collectively, the "Individual Defendants"), all longtime Safelite managerial employees. (ECF No. 126 at ¶ 1.) The Individual Defendants had all signed non-compete, non-solicitation, and non-disclosure contracts with Safelite. (*Id*. at ¶ 1, 40, 77, 193-195.) Caliber knew of these contracts but hired them anyway in furtherance of its nationwide scheme. (*Id.* ¶¶ 81, 196, 383-408; *see* ECF No. 147, ¶ 196.)

Safelite filed its original complaint on September 13, 2021 (ECF No. 1) and a First Amended Complaint on November 15, 2021 (ECF No.15) against Caliber, Nowak, Billingsley, and Lockridge. In response, each defendant filed a motion to dismiss, arguing that the Court did not have specific jurisdiction over them. (ECF Nos. 27, 34, 56, 63.) The Court denied each motion and Defendants subsequently answered. (ECF Nos. 85, 91, 94, 95, 96.)

On March 14, 2022, Safelite moved for leave to file a Second Amended Complaint seeking to add "additional facts regarding Caliber's unlawful scheme to entice current Safelite employees to breach their non-competition, non-disclosure and non-solicitation agreements with Safelite, become Caliber employees, and systematically target current Safelite technicians, employees, and customers using Safelite's confidential information." (ECF No 104.) Safelite added another individual defendant, Bryan Lynch, as well as a spoliation claim against Caliber and Billingsley concerning Billingsley's conduct as a Caliber manager during the pendency of this litigation. (*Id.*)

The Motion was granted and on April 20, 2022, the Second Amended Complaint ("SAC") became the operative complaint.  (ECF No. 125.)

Caliber has now filed another motion to dismiss, again arguing that the Court lacks jurisdiction under Rule 12(b)(2) while also raising based on various merits arguments under Rule 12(b)(6).  (ECF No. 152.)  As below, this Court should deny that motion again in its entirety.

## II.      CALIBER'S RULE 12(b)(2) MOTION

Federal Rule of Civil Procedure 12(b)(2) provides for dismissal when a court lacks personal jurisdiction over a defendant."  *Int'l Confection Co., LLC v. Z Capital Grp., LLC*, No. 2:18-cv-1108, 2019 U.S. Dist. LEXIS 159257, at *5-6 (S.D. Ohio Sep. 17, 2019).   Despite having previously filed a motion to dismiss for lack of jurisdiction (ECF No. 34)—a motion that was denied by this Court (ECF No. 85)—Caliber "reasserts its position that personal jurisdiction has not been pled and does not exist."  (ECF No. 152, 8; *see also id.* at n.8.)  Caliber's second motion to dismiss regarding jurisdiction should be denied; the Court has already decided this issue and Caliber's attempt to relitigate it is nothing more than a motion for reconsideration.  And even if the Court were to reconsider Caliber's arguments on the merits, they are once again unpersuasive.[2]

### A.      The Personal Jurisdiction Issue Has Already Been Litigated and Decided

"[A] motion to dismiss an amended complaint is no more than a motion for reconsideration to the extent it simply restates arguments already considered and rejected with respect to the original complaint."  *League of Women Voters of Ohio v. Blackwell*, 432 F.Supp.2d 734, 738 (N.D. Ohio 2006); *see also Oglesby v. FedEx Ground Package Sys.*, No. 3:20-cv-346, 2022 U.S. Dist.

---

[2] This Court may also deny Caliber's Rule 12(b)(2) motion on the basis that Caliber has waived any challenge to personal jurisdiction through its actions in this case.  A "defendant waives its personal jurisdiction defense if submissions, appearances and filings give the plaintiff a reasonable expectation that the defendant will defend the suit on the merits[.]"  *Means v. United States Conference of Catholic Bishops*, 836 F.3d 643, 648 (6th Cir. 2016) (quotation marks, alterations, and citations omitted).  Here, after Safelite filed its SAC, Caliber served merits discovery unrelated to jurisdiction—including 73 document requests.  Accordingly, Caliber has certainly given Safelite "a reasonable expectation" that it planned to defend this suit on the merits.

LEXIS 32264, at *4 (S.D. Ohio Feb. 24, 2022). Accordingly, although Safelite's SAC replaces its earlier-filed complaints, the allegations as to Caliber remain the same and thus "an order denying a motion to dismiss with respect to an original complaint remains in force." *Id.*

"A motion for reconsideration should only be granted: '(1) to accommodate an intervening change in the controlling law; (2) to account for new evidence not available at the time of trial; and (3) to correct a clear error of law or to prevent manifest injustice.'" *Oglesby*, 2022 U.S. Dist. LEXIS 32264, at *4 (quoting *Forman v. Meridian Bioscience, Inc.*, 387 F. Supp. 3d 791, 796 (S.D. Ohio 2019)). "A party seeking reconsideration must show more than a disagreement with the Court's decision, and recapitulation of the cases and arguments considered by the court before rendering its original decision fails to carry the moving party's burden." *Beamer v. Bd. of Crawford Twp. Trs.*, No. 2:09-cv-213, 2010 U.S. Dist. LEXIS 28400, at *6 (S.D. Ohio Mar. 24, 2010) (internal quotation marks and citation omitted). This is to ensure that a party does not get "an opportunity for a second bite at the apple." *Id.*

Here, there has been no intervening change in controlling law, nor has there been "new evidence" to make reconsideration appropriate. Indeed, Caliber does not assert otherwise, and instead simply says that the Court was wrong in its jurisdictional analysis. But case law is clear that disagreement with a prior decision is not enough. This attempt by Caliber to relitigate these same issues amounts to nothing more than a "second bite at the apple" and should be denied.[3]

---

[3] This court may also choose to deny Caliber's motion under a "law of the case" theory:

> In addition to construing a second motion to dismiss as a motion for reconsideration, a district court may also view a prior ruling on a motion to dismiss as "the law of the case." *Blackwell*, 432 F.Supp.2d at 739. This is essentially a doctrine that "the decision of [the] court at one stage of the case is binding in successive stages of the same litigation." *Id*. The salutary purpose of this doctrine is "to prevent continued litigation of settled issues." *Id*. The standard for application of the law of the case doctrine "is nearly identical to the one governing motions for reconsideration."

*Universal Surveillance Corp. v. Checkpoint Sys.*, No. 5:11-CV-1755, 2013 U.S. Dist. LEXIS 187038, at *13 (N.D. Ohio Sep. 28, 2013).

## B.     The Court Has Personal Jurisdiction Over Caliber

Even if this Court reconsiders Caliber's jurisdictional arguments, its motion should again be denied. "Where a Rule 12(b)(2) motion is decided solely on written submissions, the plaintiff's burden is 'relatively slight'; the court must view all of the pleadings and affidavits in a light most favorable to the plaintiff, and to defeat dismissal, the plaintiff need only make a prima facie showing that personal jurisdiction exists." *Id.* As the Sixth Circuit has explained, a court disposing of a 12(b)(2) motion "does not weigh the controverting assertions of the party seeking dismissal." *Theunissen v. Matthews*, 935 F.2d 1454, 1459 (6th Cir. 1991). The Sixth Circuit has adopted that approach "to prevent non-resident defendants from regularly avoiding personal jurisdiction simply by filing an affidavit denying all jurisdictional facts." *Id.*

This Court first applies Ohio law when reviewing personal jurisdiction. *See, e.g.*, *Baughman v. KTH Parts Indus.*, No. 3:19-cv-8, 2020 U.S. Dist. LEXIS 63771, at *10 (S.D. Ohio Apr. 10, 2020). "Because 'Ohio's long-arm statute is not coterminous with federal constitutional limits,' to establish a *prima facie* case of personal jurisdiction a plaintiff must demonstrate that (1) Ohio's long-arm statute has been satisfied and (2) exercising jurisdiction would comport with the Due Process Clause of the Fourteenth Amendment of the United States Constitution." *Snap Med. Indus., LLC v. Focus Health Grp., Inc.*, No. 2:20-cv-5557, 2021 U.S. Dist. LEXIS 89281, at *7 (S.D. Ohio May 11, 2021) (Morrison, J.) (quoting *Schneider v. Hardesty*, 669 F.3d 693, 699 (6th Cir. 2012)).

Here, as the Court has noted, Ohio's long-arm statute has been satisfied and exercising jurisdiction would comport with due process. Because Caliber only challenges the due process element, Safelite will only address that issue.[4]

---

[4] Safelite reincorporates its analysis on the Ohio long-arm statute from its previous opposition. (ECF No. 49.)

The Due Process Clause of the Fourteenth Amendment recognizes two types of personal jurisdiction—general and specific—either one of which is adequate to confer jurisdiction over a defendant. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). As previously held, this Court has specific jurisdiction over Caliber.

"Specific jurisdiction refers to jurisdiction over claims arising from or related to a defendant's contacts with the forum state." *Maclin v. Reliable Reports of Tex., Inc.*, 314 F. Supp. 3d 845, 849 (N.D. Ohio 2018). The Sixth Circuit has "promulgated a three-prong test that not only guides the determination of whether specific jurisdiction exists, but also protects the due process rights of a defendant[:]"

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

(ECF No. 85 (citing *Intera Corp. v. Henderson*, 428 F.3d 605, 615 (6th Cir. 2005). All three requirements are satisfied here.[5]

The purposeful availment requirement is satisfied if a defendant engages in "significant activities within [the state]" or creates "continuing obligations between [it]self and residents of the forum." *AlixPartners, LLP v. Brewington*, 836 F.3d 543, 550 (6th Cir. 2016). Courts consider whether the defendant's contacts were "intended to be ongoing in nature," as opposed to "a one-shot affair." *Id.* at 551. Contacts that are going to have "ongoing, far-reaching consequences" in the forum state are sufficient to subject the defendant to personal jurisdiction. *Id.* at 550.

Caliber argues there is no purposeful availment because a company "does not purposefully

---

[5] Because Caliber only provides substantive analysis on the "purposeful availment" prong, Safelite responds to this prong and reincorporates its arguments as to the remaining two prongs. (ECF No. 49 at 13-16.)

avail itself of Ohio jurisdiction merely by allegedly causing harm to the out-of-state operations of a nationally-operating company that happens to maintain its headquarters in Ohio, even if the purported conduct allegedly harms the national company's bottom line."  (ECF No. 152 at 8-9.) This argument is both disingenuous and incorrect.

First, Caliber ignores that it operates more than forty locations in Ohio.  (ECF No. 15, ¶ 18.)  Caliber admits in its filing with the Ohio Secretary of State that it "desires to transact business in Ohio."  (ECF No. 49, Ex. 3.)  This is enough to demonstrate that Caliber should reasonably expect to be hailed into Court in Ohio.  Additionally, Caliber has engaged in the tortious activities of (1) misappropriating Safelite's confidential and proprietary information, (2) maliciously interfering with Safelite's business and contractual relationships with its employees and customers, and (3) conspiring with the Individual Defendants with the knowledge and intent that they would significantly injure Safelite in Ohio.

Caliber's actions were part of a scheme to grow its new business segment, as this Court put it, "by syphoning documentary and institutional knowledge from an Ohio-based industry bulwark[.]"  (ECF No. 85 at 7.)  These contacts are such that they are "subject to regulation and sanctions in [Ohio] for the consequences of their activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 (1985); *see also e.g.*, *CrossCountry Mortg. v. Messina*, No. 1:19-cv-1021, 2019 LEXIS 18980, at *11–12 (N.D. Ohio Oct. 31, 2019) (finding the purposeful availment prong satisfied where defendants agreed to continuing obligations in an employment agreement with an Ohio company and were alleged to have misappropriated said company's confidential information to divert customers to their new employer); *Dayton Superior Corp. v. Yan*, 288 F.R.D. 151, 168 (S.D. Ohio 2012) (Rose, J.) (finding the purposeful availment prong satisfied on allegation of misappropriating trade secrets from an Ohio company, because "[t]he misappropriation of trade

secrets belonging to an Ohio company causes consequences in Ohio") (citation omitted). As this

Court has previously noted, Caliber is subject to personal jurisdiction in Ohio.[6]

## III.  CALIBER'S RULE 12(B)(6) MOTION

When considering a motion to dismiss under Rule 12(b)(6), a court must construe the

complaint in the light most favorable to the plaintiff and accept all of the complaint's well-pleaded

factual allegations as true. *Jackson v. Ohio State Highway Patrol*, No. 2:17-cv-163, 2017 U.S.

Dist. LEXIS 152116, at *9 (S.D. Ohio Sep. 18, 2017). As an initial matter, Caliber's second Rule

12(b) motion violates Rule 12(g). But even on the merits, Caliber's Motion fails.

### A.  Caliber's Motion Violates Rule 12(g)

Rule 12(g)(2) states "[e]xcept as provided in Rule 12(h)(2) or (3), a party that makes a

motion under this rule must not make another motion under this rule raising a defense or objection

*that was available to the party but omitted from its earlier motion*." (Emphasis added). This is

"intended to eliminate unnecessary delays at the pleading stage of a case by avoiding the piecemeal

consideration of pretrial motions." *Swart v. Pitcher*, 1993 U.S. App. LEXIS 26632, at *6 (6th Cir.

1993) (quoting *Rauch v. Day & Night Mfg. Corp.*, 576 F.2d 697, 701 (6th Cir. 1978)).

Rule 12(h)(2), which provides for the waiver or preservation of certain defenses, states:

> ***Failure to state a claim upon which relief can be granted***, to join a person required
> by Rule 19(b), or to state a legal defense to a claim may be raised:
>
> (A) in any pleading allowed or ordered under Rule 7(a);
> (B) by a motion under Rule 12(c); or
> (C) at trial.

(Emphasis added). Thus, under Rule 12(h)(2), "a party may raise a defense of failure to state a

claim upon which relief can be granted, even though not raised in an earlier motion to dismiss, in

one of three ways: 1) in an answer, 2) in a motion for judgment on the pleadings, or 3) at trial on

---

[6] In the event that the Court is not inclined to reject Caliber's arguments as it did the first time Caliber raised them, Safelite requests that the Court grant leave to conduct jurisdictional discovery before ruling on Caliber's Motion.

the merits." *Swart*, 1993 U.S. App. LEXIS 26632, at *7-8. A party ***cannot*** file a subsequent

12(b)(6) ***motion to dismiss*** after an initial motion to dismiss failed to include arguments that were

available at the time. *Id.*; *see also Williamson v. Recovery Ltd. P'shp*, No. C2-06-292, 2009 U.S.

Dist. LEXIS 99670, at *10 (S.D. Ohio Sep. 30, 2009) (holding that Rule 12(g) "prohibit[s] a party

who makes a Rule 12 motion that omits a Rule 12 defense available at the time from making a

subsequent motion based on the omitted defense").

The 12(b)(6) claims Caliber now raises were available to it during its initial motion to

dismiss—it simply chose not to raise them. "[T]he filing of an amended complaint will not revive

the right to present by motion defenses that were available but were not asserted in a timely fashion

prior to the amendment of the pleading." *Williamson*, U.S. Dist. LEXIS 99670, at *3; *see also*

*Premier Dealer Servs.*, 2019 U.S. Dist. LEXIS 75160, at *9; *McGlone v. Centrus Energy Corp.*,

No. 2:19-cv-02196, 2022 U.S. Dist. LEXIS 59398, at *14 (S.D. Ohio Mar. 31, 2022).

Accordingly, Caliber's Rule 12(b)(6) motion is untimely and should be denied, and the Court

should require Caliber to answer the SAC. *See Williamson*, 2009 U.S. Dist. LEXIS 99670, at *10

("Defendants' Motion to Dismiss under Rule 12(b)(6) will be denied for failing to interpose all of

its defenses and objections that it had available to them when they filed their first motions under

Rule 12, as required by Rule 12(g)").

### B. Caliber's 12(b)(6) Motion Fails on its Merits

For the sake of completeness, Safelite will address the merits of Caliber's 12(b)(6) motion.

#### 1. *Counts 5, 6, 7, and 8 Are Not Preempted by State Trade Secret Statutes*

Caliber argues that Safelite's common law claims of tortious interference with business

relationships (Count 5), tortious interference with contractual relationships (Count 6), conspiracy

(Count 7), and unjust enrichment (Count 8) are preempted by state trade secret statutes asserted in

the Second Amended Complaint. (ECF No. 152 at 12.) Specifically, Caliber argues that Safelite "cannot allege both an OUTSA claim, and a common law tort claim under Ohio law if the common law claim is based on the same facts as the OUTSA claim." (*Id.*) While Safelite agrees with this general proposition of law, Caliber's application here is too narrow.

As a threshold matter, Caliber raises this issue for the first time on its second motion to dismiss. "Preemption is an affirmative defense which ordinarily must be raised in an answer or is waived." *Finmeccanica S.p.A. v. GMC*, No. CV 07-08222 SJO, 2008 U.S. Dist. LEXIS 128534, at *20-21 (C.D. Cal. Dec. 17, 2008) (citing Fed. R. Civ. P. 8(c)). Caliber did not assert it in response to Safelite's First Amended Complaint (*See* ECF No. 96) and cannot do so now. Instead, it can raise it in a summary judgment after it answers the SAC and discovery is completed. *Id.*

Next, as Caliber noted in its Motion, "[t]he OUTSA incorporates the Uniform Trade Secrets Act's displacement of 'conflicting tort, restitutionary, and other laws of this state providing civil remedies for misappropriation of a trade secret.'" *Stolle Mach. Co., LLC v. Ram Precision Indus.*, 605 F. App'x 473, 484 (6th Cir. 2015) (quoting Ohio Rev. Code § 1333.67(A)). But "'[o]ther civil remedies *that are not based on misappropriation of a trade secret' are not preempted by the OUTSA.*" *Id.* (quoting O.R.C. § 1333.67(B)(2)) (emphasis added). Thus, when a common law tort claim "has a factual basis independent from the facts establishing the OUSTA claim, the portion of the claim supported by an independent factual basis survives preemption." *Stolle Mach. Co., LLC*, 605 F. App'x at 485.

All four common law claims challenged by Caliber have a factual basis independent from the OUSTA. As such, each survives.

     i.     *Count 5: Tortious Interference with Business Relationships*

"In Ohio, the elements of tortious interference with a business relationship are: (1) a

business relationship; (2) the wrongdoer's knowledge thereof; (3) an intentional interference causing a breach or termination of the relationship; and (4) damages resulting therefrom." *Westfall Auto Sales, LLC v. Zurich Am. Ins. Co.*, No. 21-3126, 2021 U.S. App. LEXIS 34150, at *9 (6th Cir. Nov. 15, 2021) (internal quotation marks and citations omitted). Caliber does not challenge this claim on its face, but instead argues that the factual allegations underlying this claim "are the same operative facts that form the basis of Safelite's trade secret misappropriation claims." (ECF No. 152 at 14.) Caliber is mistaken.

In the SAC, Safelite alleges that the Individual Defendants—at the direction of Caliber— "unlawfully targeted and unlawfully solicited Safelite employees, including high performing technicians, in Texas and Arizona to induce them to terminate their business relationship with Safelite and enter into business relationships with Safelite's competitor Caliber." (ECF No. 126, ¶ 480.) Safelite also alleges that Caliber directed the individual defendants to unlawfully solicit Safelite customers "to induce them to divert business away from Safelite to Safelite's competitor, Caliber. (*Id.* at ¶ 363.) Safelite further alleges that Caliber's interference included efforts to conceal and obfuscate the ongoing activities of the individual defendants that violated their restrictive covenants to Safelite to the pecuniary gain of Caliber. (*Id.* at ¶¶ 383-408). Such interference is separate and apart from any trade secret allegations. Indeed, other Defendants concede this point: both Nowak and Billingsley do not claim that Count Five is preempted. (*See* ECF Nos. 146, 162.)

The SAC also includes contentions that certain Defendants were able to interfere with Safelite's business relationships using trade secret information (ECF No. 126, ¶ 481), but the tortious interference claim is not based entirely on that premise. Indeed, Safelite alleges that Defendants used their previous relationships and contacts with various technicians and customers

11

to induce them to leave Safelite for Caliber—allegations that have nothing to do with trade secret information. Further, as noted above, Caliber then concealed and obfuscated the ongoing interference for its pecuniary gain. Thus, the facts alleged in the SAC related to tortious interference "have an independent factual basis separate from the factual allegations supporting the UTSA claim" and are not preempted by the OUTSA. *See Miami Valley Mobile Health Servs. v. ExamOne Worldwide, Inc.*, 852 F. Supp. 2d 925, 940 (S.D. Ohio 2012).

>        ii.        *Count 6: Tortious Interference with Contractual Relationships*

The elements of tortious interference with contractual relationships in Ohio are almost identical to claims involving business relationships: (1) the existence of a contract, (2) the wrongdoer's knowledge of the contract, (3) the wrongdoer's intentional procurement of the contract's breach, (4) the lack of justification, and (5) resulting damages. *Ga.-Pacific Consumer Prods. LP v. Four-U-Packaging, Inc.*, 701 F.3d 1093, 1102 (6th Cir. 2012) (internal quotation and citations omitted). In the SAC, Safelite has sufficiently pled allegations to meet all five elements.

Safelite alleges that it had contractual agreements with the Individual Defendants (ECF No. 126, ¶ 492); that Caliber had knowledge of the relationships (*id.* at ¶ 494); that Caliber intentionally, improperly, and without justification interfered with the contracts by recruiting Defendants to terminate their employment (*id.* at ¶¶ 495-96); and that Safelite was damaged as a result (*id.* at ¶ 498). Caliber did so with knowledge of the individual Defendants' restrictive covenants with Safelite and went on to conceal and obfuscate the extent and ongoing nature of the interference. (ECF No. 126, ¶¶ 81, 226, 271, 383-408.) This interference furthered Caliber's larger scheme to poach Safelite talent across the country. (*See, e.g.*, *id*. at ¶ 120 "Caliber sought to hire managerial-level current or former employees to come work at Caliber in New Jersey").

Despite Caliber's contentions, and as was the case with the tortious interference with

business relationships, this claim ***does not arise*** solely out of facts related to the OUTSA claim. (*See* ECF No. 152, 15.)  Instead, Safelite ***explicitly pled*** that Caliber interfered with its contractual relationships in ***multiples ways***, including through "recruiting Nowak, Billingsley, Lockridge, and Lynch to terminate their employment with Safelite and work for Caliber in its auto glass business in violation of the Agreements."  (ECF No. 126, ¶ 495.)  Safelite also argues that the Defendants further violated confidentiality provisions of their contracts with Safelite—contractual obligations with which Caliber interfered.  This interference is separate and apart from Caliber receiving trade secrets from these individual defendants and survives preemption.  *See Miami Valley Mobile Health Servs. v. ExamOne Worldwide, Inc.*, 852 F. Supp. 2d 925, 940 (S.D. Ohio 2012).[7]

  *iii.  Count 7: Conspiracy*

"In Ohio, a civil conspiracy consists of: (1) a malicious combination; (2) two or more persons; (3) injury to person or property; and (4) existence of an unlawful act independent from the actual conspiracy."  *Lee v. Countrywide Home Loans, Inc.*, 692 F.3d 442, 446 (6th Cir. 2012) (quoting *Universal Coach, Inc. v. New York City Transit Auth., Inc.*, 90 Ohio App. 3d 284, 629 N.E.2d 28, 33 (Ohio Ct. App. 1993)).  "An underlying unlawful act or tort is required before a party can prevail on a civil conspiracy claim."  *Ohio Bureau of Workers' Comp. v. MDL Active Duration Fund, Ltd.*, 476 F. Supp. 2d 809, 825 (S.D. Ohio 2007).  Safelite has appropriately alleged multiple underlying torts and pled these four elements—based on facts unrelated to trade secrets—to survive a motion to dismiss.  (ECF No. 126, ¶¶ 499-505.)

---

[7] Caliber also refers to an unrelated case, with unrelated claims, and unrelated facts, in which Safelite was a party and had certain claims dismissed due to preemption. (ECF No. 152 at 15 (citing *Campfield v. Safelite Grp., Inc.*, No. 2:15-cv-2733, 2021 U.S. Dist. LEXIS 62070, at *1 (S.D. Ohio Mar. 31, 2021)).)  In *Campfield*, the Court dismissed claims in which "the underlying factual basis for the claims [was] the same as Safelite's OUTSA claims."  2021 U.S. Dist. LEXIS 62070 at *38.  Again, Safelite does not dispute this general proposition.  What Safelite does dispute, though, is that the underlying factual basis for its tortious interference claims are the same as Safelite's OUTSA in this case. To the extent a Court ruled against Safelite in an unrelated action with unrelated facts is irrelevant to whether these claims survive preemption.

Caliber once again argues that Safelite's claim fails because it is preempted by the OUTSA. This argument suffers from two fatal problems.

First, other Defendants have not asserted preemption. Defendant Billingsley has not asserted a preemption defense in his Answer in this action as to any of the underlying torts he committed as part of the conspiracy. Defendant Nowak has not sought to dismiss Counts 5-6 as preempted by the OUTSA in his pending Rule 12(c) Motion. Because underlying torts against at least two of the Defendants are not preempted by OUTSA (as illustrated by those Defendants failing to seek dismissal of them), the conspiracy claim as to Caliber as a co-conspirator cannot be preempted as to those underlying tort claims.[8]

Second, the conspiracy claim is not preempted as to Caliber. Caliber argues that "[i]n the Second Amended Complaint, Safelite alleges that Defendants conspired to 'unlawfully appropriate Safelite's confidential, proprietary, and trade secret information in order to harm Safelite's business for their own pecuniary gain as Defendants and others worked in concert to build up Caliber's auto glass repair and replacement business[.]'" (ECF No. 152 at 16 (quoting ECF No. 126, ¶ 500.) Thus, Caliber states that the basis of the conspiracy—*i.e.* the necessary underlying tort—is the misappropriation of trade secrets. (*Id.*)

Caliber selectively quotes the Second Amended Complaint to **only** include the allegations related to the misappropriation of confidential and trade secret information. Safelite would concede at summary judgment that, to the extent its conspiracy claim relied on facts involving the misappropriation of trade secrets, that claim would be preempted as to Caliber. But Safelite's SAC listed several ways in which Caliber conspired, only one of which was through the

---

[8] Again, Caliber has filed both an untimely motion to dismiss under Rule 12(g) and one that is premature concerning certain claims involving other Defendants. Discovery and, then perhaps, summary judgment practice will sort out this affirmative defense. At this stage, Caliber cannot side-step Defendants Billingsley and Nowak's current election that certain underlying torts as to them are not preempted.

misappropriation of trade secrets—but also others of which had nothing to do with trade secret information. Illustrative allegations include:

- "Defendants and others, with malice, entered into an agreement or common understanding *to harm Safelite's business* **[Count 5]** *and contractual* **[Count 6]** *relationships* . . . In carrying out their plan, Defendants and others have committed unlawful acts including, *but not limited to*, the misappropriation of confidential, proprietary, and trade secret information, *and tortious interference with contractual and business relationships*. " (ECF No. 126, ¶¶ 500-01 (emphasis added).)

- "Caliber and Nowak, with the malicious intent to cause injury to Safelite . . . deployed their recently hired General Managers (Billingsley, Lockridge, and Lynch) . . . to solicit Safelite technicians in Houston, San Antonio, and Tucson to terminate their business relationships with Safelite." (*Id.* at ¶ 323.)

- "Caliber and Nowak, with the malicious intent to cause injury to Safelite . . . also directed Billingsley, Lockridge, and Lynch to undertake the unlawful solicitation of Safelite customers, including local and national accounts of Safelite's in Texas and Arizona, to induce them to divert business away from Safelite to Safelite's competitor, Caliber." (*Id.* at ¶ 363.)

- Caliber knew of the Individual Defendants' restrictive covenants with Safelite, but employed them in violation of them and leveraged their violations for its own pecuniary gain. (*Id.* at ¶¶ 81, 226, 271.) It also took numerous steps to then conceal and obfuscate the extent and ongoing nature of its interference. (*Id.* at ¶¶ 383-408.)

As above, these actions form the basis of underlying torts, illustrating that Caliber and the Individual Defendants conspired to harm Safelite in ways unrelated to trade secrets. Because this conspiracy is not dependent on an underlying act of misappropriation of trade secrets, it survives. *See Stolle Mach. Co., LLC.*, 605 F. App'x at 485-86.

      iv.        *Count 8: Unjust Enrichment*

The elements of an unjust enrichment claim in Ohio are: "(1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment[.]" *Auto Chem Labs., Inc. v. Turtle Wax, Inc.*, No. 3:07cv156, 2010 U.S. Dist. LEXIS 100677, at *32 n.9 (S.D. Ohio Sep. 24, 2010). Safelite adequately pled each element as to Caliber.

Once again, Caliber claims that "[t]he entire basis of Safelite's unjust enrichment claim is

centered on alleged misappropriation of Safelite's trade secrets." (ECF No. 152 at 16-17.)  Once again, Caliber is incorrect.  At this stage, the parties are still going through the discovery process and the Court has not yet had the opportunity to weigh the merits of Safelite's trade secrets claims. It is possible that the Court could determine that those claims fail; in that event, the allegations at the heart of Safelite's unjust-enrichment claim would not be trade secrets and there would be no OUTSA-preemption issue.  Dismissal on preemption grounds is not warranted at this stage in the proceedings.  *See* Fed. R. Civ. P. 8(d)(3) (stating that "a party may state as many separate claims [] as it has, regardless of consistency").

2.        *The Intra-Corporate Conspiracy Doctrine Does Not Bar Count 7*

In the alternative, Caliber claims that Count 7 should be dismissed because it is barred by the intra-corporate conspiracy doctrine.  (ECF No. 152 at 17.)  The intra-corporate conspiracy doctrine "recognizes that there must be at least two persons or entities to have a conspiracy" because a corporation cannot conspire with itself.  *Chung v. Berkman*, No. 1:13 CV 1354, 2013 U.S. Dist. LEXIS 120919, at *37-38 (N.D. Ohio Aug. 26, 2013); *see also id.* (noting that the "general rule" is that "the acts of the agent are the acts of the corporation").  In other words, "if all of the defendants are members of the same collective entity, there are not two separate 'people' to form a conspiracy."  *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839-40 (6th Cir. 1994). However, "[t]he intra-corporate conspiracy doctrine does not bar a claim 'where the defendants were alleged to have been acting outside the scope of their employment.'" *Yoder v. King*, No. 2:20-cv-2079, 2020 U.S. Dist. LEXIS 200039, at *11-12 (S.D. Ohio Oct. 27, 2020) (quoting *Jackson v. City of Cleveland*, 925 F.3d 793, 818 (6th Cir. 2019)).

Caliber argues that because "Safelite bases its conspiracy claim on Defendants' alleged misappropriation of Safelite's trade secret information," these "tortious activities could not have

16

occurred until each individual Defendant became employed by Caliber[.]" (ECF No. 152 at 18.) Caliber is incorrect for several reasons.

First, Safelite's conspiracy claim is ***not*** solely based on the misappropriation of trade secret information. As pled in the SAC, the conspiracy began when Caliber sought to hire managerial-level current of former Safelite employees across the country in order to harm Safelite's business and contractual relationships. Thus, the conspiracy took place when Caliber was recruiting individuals ***before they ever worked for Caliber.*** (*See, e.g.,* ECF No. 126, ¶¶ 227-35.) And "if the elements were satisfied when at least one of the Defendants was not yet an agent of [Caliber], the intra-corporate conspiracy doctrine would not bar the claim against Defendants." *Cheryl & Co. v. Krueger*, 536 F. Supp. 3d 182, 214 (S.D. Ohio 2021).

Second, case law is clear that if a defendant is acting outside the scope of its employment, he can in fact conspire with his employer. *See Jackson*, 925 F.3d at 818. In its spoliation argument, Caliber's position is that Billingsley's actions cannot be imputed onto Caliber—*i.e.*, that he was not acting within the scope of his employment. (ECF No. 152 at 19.) But Billingsley remained employed at Caliber in a management role after spoliating evidence, suggesting that he acted with Caliber's approval. Caliber cannot have it both ways: either the individual defendants were acting within the scope of their employment during this nationwide conspiracy or they were not. Either discovery or stipulated admissions will sort this issue out on an individual defendant by individual defendant basis, but dismissal at this stage is not appropriate.

### 3. *Count 11 Asserts Viable Claims Under Texas and Arizona Law*

Caliber argues that Safelite's aiding and abetting claim fails because it "is not a cause of action under Ohio law." (ECF No. 152 at 18.) Safelite agrees, but Caliber fails to acknowledge ***it is a viable cause of action*** under both Arizona and Texas state law. *See Chonczynski v. Aguilera*,

No. 1 CA-CV 13-0728, 2014 Ariz. App. Unpub. LEXIS 1430, at *5 (Ct. App. Dec. 2, 2014) (recognizing aiding and abetting as a cause of action under Arizona law); *Macias v. Gomez*, No. 13-14-00139-CV, 2014 Tex. App. LEXIS 13197, at *1 (Tex. App. Dec. 11, 2014) (recognizing aiding and abetting as a cause of action under Texas law). While Safelite believes Ohio law should apply to the majority of claims at issue in this case, Defendants have not yet stipulated to this.[9] Anticipating this, Safelite pled this claim in the alternative. *See Kramer v. Plan*, No. 2:21-cv-5501, 2022 U.S. Dist. LEXIS 89844, at *3 (S.D. Ohio May 10, 2022) (noting that "the Civil Rules allow a plaintiff to plead in the alternative" (internal quotation marks and citations omitted)). Because aiding and abetting is a cause of action under both Texas and Arizona law, and choice of law has yet to be decided, this claim survives.

4.     *Count 15 Asserts Facts Sufficient to Survive a Motion to Dismiss*

A party seeking sanctions for spoliation has the burden of establishing three criteria: (1) the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) the party seeking the adverse inference must show that the records were destroyed with a culpable state of mind; and (3) the party seeking the adverse inference must establish that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense. *See Lemmon v. City of Akron*, 768 F. App'x 410, 421 (6th Cir. 2019). Here, Safelite has adequately pled all three criteria as it relates to Billingsley's destruction of documents, and Caliber does not argue otherwise.

Caliber argues that "[t]here are no allegations that Caliber participated in the alleged spoliation" because "the mere fact Caliber continued to employ Billingsley does not equate to 'willful destruction.'" (ECF No. 152 at 19-20.) But Safelite *does* plead that Billingsley had a

---

[9] In fact, Caliber pairs this argument with an argument that this Court lacks jurisdiction over it in the very same motion.

culpable state of mind by "willfully" destroying documents after being advised by counsel not to destroy any documents. (ECF No. 126, ¶¶ 590-93.) Safelite also alleges that Billingsley was *acting within the course of his employment* when the spoliation occurred (ECF No. 126, ¶ 594). Caliber has not admitted or denied whether Billingsley acted in the course of employment when he spoliated evidence. At the time of spoliation, Billingsley worked at a senior level at Caliber reporting to its senior executives and guided by its counsel. That Billingsley's conduct did not result in termination evidences Caliber's endorsement of his conduct. Certainly, discovery will permit an examination of this issue in greater detail. Given the pled allegations and the lack of any admission or denial from Caliber, this claim against Caliber survives.

## IV.     CONCLUSION

For the foregoing reasons, the Court should deny Caliber's motion to dismiss in its entirety.

Respectfully submitted,

/s/ *Daniel J. Clark*
Thomas H. Fusonie (0074201), *Trial attorney*
Daniel J. Clark (0075125)
George L. Stevens (0092609)
Danielle S. Rice (0093757)
Brian W. Dressel (0097163)
Vorys, Sater, Seymour and Pease LLP
52 East Gay Street, P.O. Box 1008
Columbus, Ohio 43216-1008
(614) 464-6400 / Fax: (614) 719-4630
thfusonie@vorys.com
djclark@vorys.com
glstevens@vorys.com
dsrice@vorys.com
bwdressel@vorys.com

*Counsel for Safelite Group, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was electronically filed with the U.S. District Court, Southern District of Ohio, on July 20, 2022, and served upon all parties of record via the court's electronic filing system.

/s/ *Daniel J. Clark*
Daniel J. Clark