IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

SAFELITE GROUP, INC.,

        Plaintiff,

                                                                       Case No. 2:21-cv-04558

    vs.                                                      Judge Sarah D. Morrison

                                                               Magistrate Judge Elizabeth P. Deavers

NATHANIEL LOCKRIDGE, *et al.*,

        Defendants.

## OPINION AND ORDER

    This matter is before the Court on Defendant William Harris Billingsley's ("Billingsley") Motion to Quash the Subpoena of Attorney-Client Privileged Matters (ECF No. 201), Plaintiff Safelite Group, Inc.'s ("Safelite") Response (ECF No. 202), and Billingsley's Reply (ECF No. 203). For the following reasons, the Motion to Quash (ECF No. 201) is **DENIED**.

**I.**

    Briefly, by way of background, Safelite is a nationwide auto glass and repair and replacement company. (Second Amended Complaint, ECF No. 126.) It brings this action against Defendants Caliber Collision Centers (Caliber Holdings Corporation) d/b/a Caliber Auto Glass ("Caliber"), Jeffrey Nowak ("Nowak"), William Harris Billingsley ("Billingsley"), Nathaniel Lockridge ("Lockridge"), Bryan Lynch ("Lynch"), and John Does 1–100 (collectively, "Defendants"). (*Id.*)

    According to Safelite, Defendants knowingly and maliciously developed and participated "in a systematic scheme and conspiracy designed to unlawfully increase Caliber's presence in

1

the auto glass repair and replacement industry at Safelite's expense." (*Id.* at ¶ 1.) Safelite alleges that Caliber, a direct competitor of Safelite, induced Nowak, Billingsley, Lockridge, Lynch, and others "to violate the valid and enforceable restrictive covenants they had signed as part of their employment with Safelite in order to become the primary figures in Caliber's scheme to build up its auto glass repair and replacement business." (*Id.* at ¶ 1a.)  Further, Safelite asserts that, "[w]ith Caliber's knowledge and enticement, Nowak, Billingsley, Lockridge, and Lynch, by common plan, design, and while acting in concert (1) deliberately breached their non-competition, non-disclosure, and non-solicitation agreements with Safelite, (2) became Caliber employees, and (3) systematically targeted current Safelite technicians, employees, and customers utilizing Safelite's confidential, proprietary, and trade secret information they misappropriated during and after their employment with Safelite." (*Id.* at ¶ 1b.) Safelite further alleges that "[u]sing Safelite's confidential, proprietary, and trade secret information, Nowak, Billingsley, Lockridge, and Lynch (1) solicited Safelite technicians to end their business relationships with Safelite and work for Caliber, causing the defection of several high-performing Safelite technicians, and (2) directed Caliber technicians to solicit current Safelite customers to end their business relationships with Safelite and purchase Caliber services instead." (*Id.* at ¶ 1c.)   Finally, Safelite contends that "Caliber instructed Nowak, Billingsley, Lockridge, and Lynch to mislead people when discussing their roles with Caliber and the geographical markets where they worked for Caliber." (*Id.* at ¶ 1d.)  According to Safelite, each Defendant's actions violate numerous federal and state laws and the actions of Nowak, Billingsley, Lockridge, and Lynch "directly contravene their contractual and other duties owed to Safelite." (*Id.*)

By way of more specific background for purposes of the current motion, on September 14, 2021, Safelite filed an initial complaint against Billingsley in Harris County, Texas asserting breach of his non-compete and non-solicitation agreements. (*See* ECF No. 61-1.) Billingsley retained Robert Wood, a Texas attorney from Wood Edwards, LLP to represent him in that action. (*See* ECF No. 61-3 at ¶ 7; ECF No. 201-2.) Safelite quickly dismissed that action (*see* ECF No. 61-2) and on November 15, 2021, filed its First Amended Complaint naming Billingsley as a Defendant in this action. (ECF No. 15.) Safelite represents that it provided Mr. Wood a copy of the then-operative complaint in this action on December 1, 2021. (ECF No. 202 at 1.)

Billingsley has attested in filings before this Court that, on or about December 21, 2021, Mr. Wood advised Billingsley via email that Billingsley had been named as a Defendant in the First Amended Complaint. (Declaration of William Harris Billingsley, ECF No. 201-1 at ¶ 9; *see also* ECF No. 61-3.) On either December 22 or December 24, 2021, Billingsley had "an initial conversation" with Gil Gradisar, his current counsel in this case. (Compare ECF No. 61-3 at ¶ 10 with ECF No. 140-1 at ¶ 16.)

On April 7, 2022, Safelite filed a Motion to Compel, or in the Alternative, Seeking Sanctions for Spoliation. (ECF No. 119.) That motion arose from Billingsley's deposition testimony confirming that he had deleted documents from his personal email account after January 7, 2022. (*See* Deposition of William H. Billingsley, ECF No. 119-2 at 142-143.) In responding to that motion, Billingsley submitted a declaration swearing that, "[o]n or about December 24, 2021, [he] spoke with Attorney [Gil] Gradisar, [his] counsel in this matter for the first time. During that conversation, [he] was advised to preserve all documents in [his] possession relative to [his] employment with Safelite." (Second Declaration of William

3

Billingsley, ECF No. 140-1, ¶ 16.) Billingsley further averred that "[d]uring the course of this litigation, [he] advised [his] counsel that [his] emails were set to delete after 30 days. [He] assured [counsel], however, that all relevant documents had been printed out and preserved." (*Id*. at ¶ 17.) Additionally, Billingsley declared that "[he] retained the services of a cyber security contractor to search … for any lost or deleted texts or documents" and "all recovered documents" were provided to his counsel. (*Id.* at ¶ 18.) Billingsley also asserted that "all [his] relevant emails and documents … have been retained, given to [his] counsel and provided to Safelite." (*Id.* at ¶ 19.) Finally, he stated that "[t]he loss of relevant information, if any, predated [his] knowledge of this litigation or resulted from "accident or inadvertence and not an intentional act on [his] part." (*Id*. at ¶ 20.) On April 20, 2022, Safelite filed a Second Amended Complaint asserting, *inter alia*, an intentional spoliation of evidence claim against Caliber and Billingsley. (Second Amended Complaint, ECF No. 126 at ¶¶ 585-597.)

On August 22, 2022, Safelite requested that the Court hold in abeyance its Motion to Compel because it had discovered more evidence of spoliation. (ECF No. 194.) As explained in that filing, Safelite's discovery had resulted from Defendant Bryan Lynch's production of an email thread with Billingsley relating to the Houston glass market. (*Id*.) The email thread between Billingsley and Lynch from their personal email accounts, dated between December 21 and 22, 2021, in Safelite's view, contradicts Billingsley's Declaration as to when he was notified of his duty to preserve evidence, the completeness of his production, and the timing of his auto-delete feature. (ECF No. 194-1.) Further, Safelite explained that the Houston market is one in which both Billingsley and Lynch were precluded from working under the terms of their agreements with Safelite. (ECF No. 194 at 2; see also Second Amended Complaint, ECF No.

4

126.) According to Safelite, that email thread had not been produced by Billingsley. (ECF No. 202 at 2.)

Following production of this email thread, on August 29, 2022, Safelite issued a subpoena to Wood Edwards, LLP[1] ("the firm") directing production of the following:

1. All documents, communications, and/or records related to [the firm] notifying William Harris Billingsley of his preservation obligations and/or any litigation hold notice or communication from September 1, 2021 to present in connection with any lawsuit initiated by Safelite against William Harris Billingsley.

2. The email with attachments [the firm] sent William Harris Billingsley on or about December 21, 2021, as referenced in Mr. Billingsley's Declaration, ¶ 9, a true and accurate copy of which is attached hereto as Exhibit 1.

3. Any other communications [the firm] had with William Harris Billingsley informing him of the Amended Complaint in Case No. 2:21-cv-4558 in the United States District Court for the Southern District of Ohio and/or his being added as a defendant in said court action.

(ECF No. 201-1).

Wood Edwards objected on the basis of attorney-client privilege. Following a meet and confer, Safelite confirmed that it was not seeking the substance of attorney-client communications and would accept (1) a privilege log documenting the relevant communications and (2) a copy of the litigation hold notice (if one existed) provided by Mr. Wood to Billingsley. (ECF No. 202.) It is with this background in mind that the Court will consider Billingsley's motion to quash.

## II.

Rule 45 of the Federal Rules of Civil Procedure governs subpoenas. Fed. R. Civ. P. 45. Rule 45 permits parties in legal proceedings to command a non-party to attend a deposition,

---

[1] The subpoena was directed to Wood Edwards LLP, including its attorneys, paralegals, and staff. (ECF No. 201-1).

5

produce documents, and/or permit inspection of premises. Fed. R. Civ. P. 45(a)(1). But a subpoena must be quashed where it "requires disclosure of a privileged or protected matter" without any waiver or exception to support it. Fed. R. Civ. P. 45(d)(3)(A)(iii). Although Rule 45 does not specifically include irrelevance as a basis for quashing a subpoena, "the scope of discovery under a subpoena is the same as the scope of discovery under Rule 26." *Hendricks v. Total Quality Logistics, LLC*, 275 F.R.D. 251, 253 (S.D. Ohio 2011) (internal citation and quotation marks omitted).

### III.

At the outset, as Safelite notes, "[a] party generally lacks standing to seek to quash a subpoena issued to a nonparty." *Hendricks*, 275 F.R.D. at 253 (citing *Hackmann v. Auto Owners Ins. Co.,* 2009 WL 330314, at *1 (S.D. Ohio Feb. 6, 2009)). A party with a claim of privilege with respect to the materials being sought by the subpoena, however, has a right to object. *Id.* Safelite is correct that Billingsley failed to confirm, or even acknowledge as an issue, his standing to pursue a motion to quash the subpoena directed to Wood Edwards. Nevertheless, the Court is satisfied from the nature of the subpoena and Billingsley's claim of privilege, that Billingsley has a right to object to the subpoena. *See, e.g., Tera II, LLC v. Rice Drilling D, LLC*, No. 2:19-CV-2221, 2022 WL 1114943, at *2 (S.D. Ohio Apr. 14, 2022) (citing *Allen Cnty. Bar Ass'n v. Williams*, 766 N.E.2d 973, 974 (Ohio 2002)) (recognizing that the attorney-client privilege belongs to the client.) Accordingly, the Court will not deny Billingsley's motion on the basis that he lacks standing to pursue it under the circumstances here.[2]

---

[2]The Court notes that the place of compliance with the subpoena is Columbus, Ohio. (ECF No. 201-1). Rule 45(3)(A) requires that motions to quash be brought in the district where compliance is required. As the subpoena was drafted, the Southern District of Ohio is the district where compliance is required. However, the Court also notes that, in the first instance, "a subpoena may command" the "production of documents, electronically stored information, or

6

Having considered Billingsley's motion in full, however, the Court finds that his position is not well-taken. Safelite's subpoena seeks information from Wood Edwards addressed to two straightforward and limited issues: (1) when Billingsley learned of this lawsuit; and (2) when he was first advised of his obligation to preserve evidence. Safelite contends that this information is necessary because Billingsley's sworn testimony suggests that Mr. Wood did not advise him of that obligation in connection with the Texas lawsuit and that Billingsley was not aware of this litigation until December 21, 2021. Accordingly, Safelite seeks both the privilege log to allow it to evaluate its spoliation claims against Billingsley's representations and a copy of any actual litigation hold notice Mr. Wood provided Billingsley. The Court will consider the materials sought by Safelite in turn.

### A. Litigation Hold Notice

Initially, "[t]he fact of a litigation hold is not privileged or protected by work product." *Beaudry v. TeleCheck Servs., Inc.,* No. 3-07-0842, 2013 WL 12355782, at *2 (M.D. Tenn. Mar. 31, 2013). Nevertheless, litigation hold letters generally are privileged and are not discoverable. *EPAC Techs., Inc. v. Thomas Nelson, Inc.,* No. 3:12-CV-00463, 2015 WL 13729725, at *6 (M.D. Tenn. Dec. 1, 2015) (citing *Little Hocking Water Ass'n, Inc. v. E.I. Dupont de Nemours & Co.*, No. 2:09-CV-1081, 2013 WL 5311292, at *3 (S.D. Ohio Sept. 20, 2013) (citing *Major Tours, Inc. v. Colorel*, No. CIV 05-3091(JBS/JS), 2009 WL 2413631, at *2 (D.N.J. Aug. 4, 2009)). Courts, including this one, have recognized, however, that "this rule is not absolute." *Id*. Indeed, "if a party makes a preliminary showing of spoliation, the court may order production of

---

tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business…." Fed. R. Civ. P. 45(c)(2). Columbus, Ohio is more than 100 miles from Wood Edwards LLP's Dallas, Texas offices. The 100-mile limitation, however, was not cited as a basis for quashing the subpoena, presumably because Billingsley, and not Wood Edwards, filed the motion.

the litigation hold letters." *Id.* The inquiry is fact-intensive, and a court should consider "proportionality and reasonableness" in assessing preservation obligations. *Id.* at *4 (citing *Tracy v. NVR, Inc.*, No. 04-CV-6541L, 2012 WL 1067889, at *9 (W.D.N.Y. Mar. 26, 2012)). A preliminary showing of spoliation requires more than speculative claims. *Id*

Billingsley contends that Safelite has made no such showing here because its spoliation claim is specious and unsubstantiated. The Court disagrees.

"Federal law of spoliation applies to cases that are litigated in federal court." *Phoenix Process Equip. Co. v. Cap. Equip. & Trading Corp.*, No. 3:16-CV-00024-CHB, 2022 WL 3094320, at *5 (W.D. Ky. July 18, 2022), *report and recommendation adopted,* No. 3:16-CV-024-CHB, 2022 WL 3088102 (W.D. Ky. Aug. 3, 2022) (citing *Adkins v. Wolever*, 554 F.3d 650, 652 (6th Cir. 2009) (en banc)); *see also Jones v. Staubli Motor Sports Div. of Staubli Am. Corp.*, 897 F. Supp. 2d 599, 608 (S.D. Ohio 2012) ("the Sixth Circuit Court of Appeals clarified … it is *federal* law, not state law, that governs spoliation issues in a case pending in federal court.") (emphasis in original). Broadly, the term spoliation refers to "'the intentional destruction of evidence that is presumed to be unfavorable to the party responsible for its destruction.'" *Id.* (quoting *United States v. Copeland*, 321 F.3d 582, 597 (6th Cir. 2003) (citation omitted)). Spoliation sanctions are appropriate upon the satisfaction of three conditions: (1) the party with control over the evidence had an obligation to preserve it at the time it was destroyed; (2) the accused party destroyed the evidence with a culpable state of mind; and (3) the evidence destroyed is relevant to the other side's claim or defense. *Id*. (citing *McCarty v. Covol Fuels No. 2, LLC*, 664 F. App'x 372, 378 (6th Cir. 2016)); *see also Beaven v. U.S. Dep't of Justice*, 622 F.3d 540, 553 (6th Cir. 2010) (citations omitted).

To establish relevance, the party seeking sanctions must make "'some showing indicating the destroyed evidence would have been relevant to a contested issue ... such that a reasonable trier of fact could find that it would support that claim[.]'" *Phoenix*, 2022 WL 3094320, at *5 (quoting *Beaven*, 622 F.3d at 555 (internal quotation omitted). "The relevance factor does not require proof that the lost or destroyed evidence would be dispositive of the party's claim." *Id.* (citing *McCarty*, 664 F. App'x at 379).

Safelite has met its burden of making a preliminary showing of spoliation sufficient to support its discovery request based, in no small part, on Mr. Billingsley's own representations. Billingsley testified at his deposition that he deleted documents from his personal email account on a date after he had been advised not to by his current counsel. That is, even accepting Billingsley's suggestion that he was not aware of his preservation obligations until mid-December 2021, he has admitted that he deleted documents from his personal email account after January 7, 2022. Further issues regarding deletion are raised by the December 2021 email thread Safelite obtained through discovery directed to Defendant Lynch. Notably, this thread was not produced by Defendant Billingsley. Moreover, as Safelite has explained, this email relates work in the Houston glass market, a market in which Safelite alleges Billingsley and Lynch were precluded from working under the terms of their agreements with Safelite.

Beyond this, Billingsley's position here also implies that, when he retained Mr. Wood in October 2021,[3] Mr. Wood failed to fulfill his duty to advise Billingsley of his obligation "to retain pertinent documents that may be relevant to the litigation." *Schnatter v. 247 Grp., LLC*, No. 320CV00003BJBCHL, 2022 WL 2402658, at *19 (W.D. Ky. Mar. 14, 2022) (quoting *John*

---

[3] Billingsley represents in his motion that he retained Mr. Wood on October 27, 2001. (ECF No. 201 at 2.)

9

*B. v. Goetz*, 879 F. Supp. 2d 787, 868 (M.D. Tenn. 2010) (explaining that "the obligation runs first to counsel, who then has a duty to advise and explain to the client"); *see also Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 432 (S.D.N.Y. 2004) (discussing that counsel is required to "monitor[ ] the party's efforts to retain and produce the relevant documents.") This, of course, is aside from any preservation obligations that may have arisen from Billingsley's receipt of a cease-and-desist letter in August 2021 or a copy of the complaint in the Texas action filed in September 2021. *Prudential Def. Sols., Inc. v. Graham*, No. 20-11785, 2021 WL 4810498, at *5 (E.D. Mich. Oct. 15, 2021) (citing *John B. v. Goetz*, 531 F.3d 448, 459 (6th Cir. 2008) (holding that a party has a duty to preserve evidence for litigation "when that party has notice that the evidence is relevant to litigation or ... should have known that the evidence may be relevant to future litigation."). All of these circumstances combine to elevate the issue of spoliation beyond the level of mere speculation.

      In reaching this conclusion, the Court finds no merit to Billingsley's conclusory suggestion that any documents suggestive of spoliation are "innocuous and unrelated to the allegations of Plaintiff's Complaint."[4] (ECF No. 201 at 4.) Billingsley provides no support for his position that Safelite and this Court should be required to simply take his word that he deleted only documents unrelated to Safelite's claims. At most, Billingsley argues that, because the emails only concern work at Caliber and "do not reference Safelite at all" they are unrelated to Safelite's claims. (ECF No. 203 at 2.) However, "*[r]elevance* is construed very broadly for discovery purposes." *Doe v. Ohio State Univ.*, No. 2:16-CV-171, 2018 WL 1373868, at *2 (S.D.

---

[4] Billingsley also argues that certain emails relied upon by Safelite to support its position predate his retention of counsel in the Texas litigation. The Court sees no reason to address this argument when Billingsley's alternative argument suggests that he deleted emails after he was made aware of his preservation obligations

Ohio Mar. 19, 2018) (emphasis in original) (citation omitted). Thus, the mere absence of a reference to Safelite does not conclusively establish that a document is not relevant to Safelite's misappropriation of trade secrets claim. Moreover, Billingsley is not an attorney and there is no indication that his counsel reviewed the documents and made any relevance determination. *See, e.g., Schnatter v. 247 Grp., LLC*, 2022 WL 2402658, at *15 (finding non-attorney party's assessments of relevance not reliable); *see also Clark Const. Grp., Inc. v. City of Memphis*, 229 F.R.D. 131, 136–37 (W.D. Tenn. 2005) (discussing that agent of defendant city did not have sole discretion to determine what is relevant. The agent was not a lawyer and defense counsel admitted that agent "was not necessarily qualified to ascertain whether a document … was potentially relevant…. confirming that "what might be potentially relevant to a person trained in law might not be relevant to a lay person.") Accordingly, Billingsley's motion is **DENIED** to the extent it seeks to quash the subpoena as it relates to any litigation hold notice Mr. Wood provided to Billingsley.

### B. Privilege Log

Billingsley has invoked attorney-client privilege as the basis for his motion to quash. Safelite, apparently recognizing that this privilege is likely implicated, requests only a privilege log or redacted documents showing the date, time, sender, recipients, subject line, and whether there was an attachment in order to determine when Billingsley learned of this action and, by extension, of his corresponding duty to preserve documents. Despite his assertion of attorney-client privilege, Billingsley challenges Safelite's request for a privilege log.

Without question "[a] privilege log is the near-universal method of asserting privilege under Rule 26." *McCall v. Procter & Gamble Co.,* No. 1:17-CV-406, 2019 WL 3997375, at *8 (S.D. Ohio Aug. 22, 2019) (citing *Avis Rent A Car Sys., LLC v. City of Dayton, Ohio*, No. 3:12-

11

CV-399, 2013 WL 3781784, at *8 (S.D. Ohio July 18, 2013)). Indeed, "failure to produce a privilege log is fatal to a party's assertion of privilege." *Glowgower v. Bybee-Fields*, No. 3:21-CV-00012-EBA, 2022 WL 4042412, at *8 (E.D. Ky. Sept. 2, 2022). Thus, Billingsley's resistance here is exerted in the face of well-settled authority.

Contrary to Billingsley's contentions, as Safelite has made abundantly clear in voluntarily limiting its request, it is not attempting to invade attorney-client communications. Further, there is no merit to Billingsley's claim that "Safelite's demand for a privilege log … is a transparent attempt to access information descriptive of the attorney client communication." (ECF No. 203 at 3.) The information Safelite seeks is the precise information to be included in a privilege log to ensure compliance with the federal rules. *See, e.g., Shufeldt v. Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C.*, No. 3:17-CV-01078, 2020 WL 1532323, at *5 (M.D. Tenn. Mar. 31, 2020) (citing *First Horizon Nat'l Corp. v. Houston Cas. Co.*, No. 2:15-CV-2235, 2016 WL 5867268, at *5 (W.D. Tenn. Oct. 5, 2016) (collecting cases) (explaining, in the context of similar language in Rule 26(b)(5)(a), that compliance is ensured "through a document-by-document privilege log that states the date and time of the document, the type of communication, the author, the addressee(s), identification of the recipients, the privilege asserted, and an explanation of the privilege claimed."). Accordingly, Billingsley's motion to quash will not be granted on the basis that it requires disclosure of privileged or other protected matter as contemplated by Federal Rule of Civil Procedure 45(d)(3)(iii).

## IV.

For the foregoing reasons, the Motion to Quash (ECF No. 201) is **DENIED.**

**IT IS SO ORDERED.**

Date:  December 22, 2022                               s/ *Elizabeth A. Preston Deavers*
                                                      **ELIZABETH A. PRESTON DEAVERS**
                                                      **UNITED STATES MAGISTRATE JUDGE**