## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**SAFELITE GROUP, INC.,**

   **Plaintiff,**   :

  **v.**         **Case No. 2:21-cv-4558**
              **Judge Sarah D. Morrison**
              **Magistrate Judge Elizabeth A.**
**NATHANIEL LOCKRIDGE,**    **Preston Deavers**
***et al.,***        :

   **Defendants.**


## OPINION AND ORDER

Safelite Group, Inc. commenced this action on September 13, 2021, by filing a two-count complaint against Nathaniel Lockridge. (Compl., ECF No. 1.) Two months later, Safelite amended its complaint to add claims against Caliber Collision Centers, Jeffrey Nowak, and William Harris Billingsley. (ECF No. 15.) Safelite was granted leave to amend its complaint once more, this time adding claims against Bryan Lynch. (ECF No. 125.) The operative Second Amended Complaint was filed on April 20, 2022. (SAC, ECF No. 126.) Caliber, Nowak, Lockridge, and Lynch now move for dismissal of, or judgment on, the claims against them. (ECF Nos. 154, 152, 162, and 166.)

For the reasons set forth below, the motions are **GRANTED in part** and **DENIED in part**.

## I.    BACKGROUND

All well-pleaded factual allegations in the Second Amended Complaint are considered as true for purposes of these motions. *See Gavitt v. Born*, 835 F.3d 623, 639–40 (6th Cir. 2016); *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008) (citation omitted). The following summary draws from the allegations in that Complaint and the documents attached thereto.

### A.    The Parties

Safelite is an auto glass repair and replacement company with more than 7,000 locations. (SAC, ¶ 17.)

Caliber is a collision repair company, but has recently "developed and expanded its auto glass repair and replacement business to compete directly with Safelite nationwide." (*Id*., ¶¶21, 24.)

Nowak, Billingsley, Lockridge, and Lynch are all former Safelite employees and current Caliber employees. (*Id*., ¶¶ 25, 83, 199, 238, 239, 279, 285, 318.)

### B.    The Proprietary Information

Safelite alleges that the auto glass repair and replacement industry is "highly competitive." (*Id*., ¶ 9.) As a result, "Safelite considers its pricing, costs, designs, services, sales plans, business model, strategic growth plans, training methods, employee ratings, individual market data, and vendor and customer information" (the "Proprietary Information") to be proprietary and confidential. (*Id*., ¶ 18.) It takes pains to protect the Proprietary Information from public disclosure, "because it could be used to Safelite's detriment should such information fall into the hands of a competitor." (*Id*.) Among other efforts, Safelite restricts internal access to the

2

Proprietary Information using password protection and document privilege schemes (*see, e.g.*, ¶¶ 20, 34–35, 38, 202–10), and requires employees with access to the Proprietary Information to enter into confidentiality, non-competition, and non-solicitation agreements (*id.*, ¶ 19).

### C.    After twenty-five years, Nowak leaves Safelite. He is quickly hired by Caliber to lead its emerging auto glass business.

Nowak started working for Safelite in 1996 as a technician. (*Id.*, ¶ 25.) After working elsewhere for two years, Nowak returned to Safelite in 2004 as a Tucson-based technician manager. (*Id.*, ¶¶ 26–27.) Nowak received a series of promotions until, in 2013, he was named District Manager responsible for Safelite operations in Washington and Alaska. (*Id.*, ¶¶ 29–30, 36–37.)

As District Manager, and in a previous role as National Technician Trainer, Nowak had access to certain Proprietary Information. (*Id.*, ¶¶ 33–34, 38.) Consequently, Nowak entered into an Agreement dated February 23, 2008, pursuant to which he agreed to keep certain information (including the Proprietary Information) confidential. (*Id.*, ¶¶ 43–47; Nowak Agreement, PAGEID # 85–90.) The Nowak Agreement also included non-competition and non-solicitation provisions intended to apply after Nowak left Safelite's employ. (SAC, ¶¶ 48–49, 51; Nowak Agreement.)

Nowak resigned from Safelite effective January 29, 2021. (SAC, ¶¶ 56–57; Nowak Separation Agreement, PAGEID # 91–126.) On that date, he entered into a Separation Agreement affirming his confidentiality, non-competition, and non-solicitation obligations. (SAC, ¶¶ 58–61; Nowak Separation Agreement.)

Two months later, Nowak applied for a managerial position with ProTech, a Caliber affiliate that performs vehicle calibrations. (SAC, ¶¶ 66–67.) By way of the ProTech application and interview process, Caliber began recruiting Nowak to "help set up [Caliber's] auto glass repair and replacement business[.]" (*Id.*, ¶¶ 69–76.) Safelite alleges that "Caliber targeted Nowak because of his intimate knowledge of Safelite's confidential and proprietary training techniques and business structure[.]" (*Id.*, ¶ 80.) Though aware of his contractual obligations to Safelite, Caliber hired Nowak in May 2021. (*Id.*, ¶¶ 77, 81.)

As a Glass Operations Specialist/Senior Manager, Integration Operations, Nowak was responsible for the following aspects of Caliber's auto glass repair and replacement venture:

> overall project management of each new acquisition and market expansion; delivery of training and standards for technician performance and growth; ensuring that new Caliber team members have support and resources to complete their work safely and efficiently; directing and leading operations at market level by establishing and maintaining company goals; conducting interviews and facilitating the offer process; determining instructional methods utilizing knowledge of specific training needs and effectiveness of such methods such as individualized training, group training, or demonstrative training; managing of market performance; providing expectations and necessary tools, training, and information for each General Manager; and evaluating operational processes and recommending company-wide practices.

(*Id.*, ¶ 79.) To accomplish their aims, Caliber and Nowak launched an effort to hire "managerial-level current or former Safelite employees" across the country—among them, Billingsley, Lockridge, and Lynch. (*Id.*, ¶¶ 89–195.)

4

### D. Caliber and Nowak recruit Billingsley, Lockridge, and Lynch.

Although certain aspects of Billingsley, Lockridge, and Lynch's stories diverge (with relevant details discussed further, below), the three have common elements. Each one had access to certain Proprietary Information because of his position with Safelite (*id.*, ¶¶ 202–09, 242–49, 289–93); each one entered into an agreement with confidentiality, non-competition, and non-solicitation clauses (*id.*, ¶¶ 210–13, 250–60, 294–306); each one was "disgruntled" (*id.*, ¶¶ 214, 261–62, 308); and each one left Safelite for a position with Caliber (*id.*, ¶¶ 234, 237, 272–73, 315–16).

### 1. Billingsley — Caliber General Manager, Houston

In May 2021, after being passed over for a promotion within Safelite, Billingsley began searching for new employment. (*Id.*, ¶ 214.) He applied to Caliber and was interviewed in early June. (*Id.*, ¶¶ 215–16.) Billingsley had a second interview the following month—this time, with Nowak. (*Id.*, ¶ 222–25.) On July 30, Caliber offered Billingsley a position as General Manager for auto glass operations in Houston, Texas. (*Id.*, ¶ 226.)

On August 1, Billingsley downloaded certain documents containing Proprietary Information—including job descriptions and contact information for Houston-area Safelite technicians—from the Safelite computer system. (*Id.*, ¶ 227.) He emailed those documents to his personal email address from his Safelite address, then deleted any record from the "sent" and "deleted" folders in his Safelite account. (*Id.*, ¶¶ 228, 230–31.) Days later, Billingsley accepted Caliber's offer. (*Id.*, ¶ 234.)

5

### 2. Lockridge — Caliber General Manager, Tucson

In 2020, Lockridge was assigned to be Store Manager at a Safelite location in Tucson, Arizona. (*Id.*, ¶ 261.) Safelite alleges that Lockridge viewed the assignment as a "demotion and was upset at the change." (*Id.*, ¶ 262.) In the spring of 2021, Lockridge contacted his old Tucson-colleague, Nowak, to inquire about joining Caliber. (*Id.*, ¶ 264.) Conversations progressed, and Caliber offered Lockridge a position as General Manager in Tucson. (*Id.*, ¶¶ 265, 268–271.)

In August 2021, Lockridge held a staff meeting at which he announced that he had resigned from Safelite and was "going to work for his wife's cleaning company." (*Id.*, ¶¶ 273–73.) But, according to Safelite, Lockridge had already accepted Caliber's offer and never intended to work elsewhere. (*Id.*, ¶¶ 272, 274–75.)

After leaving Safelite, Lockridge is alleged to have made a series of inculpatory remarks, including: that a Caliber lawyer had instructed Lockridge to "lay low" for "legal reasons" (*id.*, ¶ 280) and to say he worked in Phoenix, rather than in Tucson (*id.*, ¶ 281); that Lockridge had a list of Safelite technicians (*id.*, ¶ 282); and that Caliber had instructed Lockridge to use the list to recruit technicians for Caliber in Tucson and Phoenix (*id.*, ¶ 283).

### 3. Lynch — Caliber General Manager, Houston

In 2019, Lynch was assigned to be Store Manager at a Safelite location in Shenandoah, Texas. (*Id.*, ¶ 307.) Safelite alleges that Lynch viewed the assignment as a "demotion and was upset at the change." (*Id.*, ¶ 308.) Lynch applied to join Caliber's auto glass operation and was later interviewed by Nowak, among others.

(*Id.*, ¶¶ 310–12, 314.) In the summer of 2021, Lynch left Safelite and accepted a position with Caliber. (*Id.*, ¶¶ 315–16.) Lynch was employed as a General Manager for Caliber in Houston, but represented that he worked in San Antonio. (*Id.*, ¶¶ 318–20.)

### E. Billingsley, Lockridge, and Lynch—at Caliber and Nowak's direction—try to recruit Safelite technicians and customers.

After Billingsley, Lockridge, and Lynch were in position at Caliber, Caliber and Nowak "deployed" them to solicit Safelite technicians in Houston, San Antonio, and Tucson to join Caliber. (*Id.*, ¶ 323.) Billingsley, Lockridge, and Lynch carried out those instructions with the aid of Proprietary Information—including the documents Billingsley downloaded and the list in Lockridge's possession. (*Id.*, ¶¶ 324–27.) Indeed, Safelite alleges that "[t]hese documents helped Caliber, Nowak, Billingsley, Lockridge, and Lynch identify the best Safelite technicians in Houston and Tucson and focus their solicitations efforts on those individuals." (*Id.*, ¶ 327.)

Caliber and Nowak also directed Billingsley, Lockridge, and Lynch to solicit Safelite customers to divert their business to Caliber's new auto glass operation. (*Id.*, ¶ 363.) Safelite alleges that they used Proprietary Information to "target" customers, as well. (*Id.*, ¶ 365.)

## II.  PROCEDURAL BACKGROUND

Safelite filed suit in September 2021. (ECF No. 1.) Based on previous iterations of the complaint, this Court entered agreed orders granting preliminary injunctions against Nowak, Billingsley, and Lockridge (*see* ECF Nos. 93, 97, 99),

and denied motions to dismiss for lack of personal jurisdiction filed by Caliber, Nowak, Billingsley, and Lockridge (ECF No. 85).

Through its Second Amended Complaint, Safelite now asserts the following claims:

Count 1:    Misappropriation of Trade Secrets (Federal)
            Caliber, Billingsley, Lockridge

Count 2:    Misappropriation of Trade Secrets (Ohio)
            Caliber, Billingsley, Lockridge

Count 3:    Misappropriation of Trade Secrets (Arizona)
            Caliber, Lockridge

Count 4:    Misappropriation of Trade Secrets (Texas)
            Caliber, Billingsley

Count 5:    Tortious Interference with Business Relationships
            Caliber, Nowak, Billingsley, Lockridge, Lynch

Count 6:    Tortious Interference with Contractual Relationships
            Caliber, Nowak

Count 7:    Conspiracy
            Caliber, Nowak, Billingsley, Lockridge, Lynch

Count 8:    Unjust Enrichment
            Caliber, Nowak, Billingsley, Lockridge, Lynch

Count 9:    Breach of Duty of Loyalty
            Billingsley, Lockridge

Count 10:   Conversion
            Billingsley, Lockridge

Count 11:   Aiding and Abetting
            Caliber, Nowak

Count 12:   Breach of Contract
            Nowak

Count 13:   Breach of Contract
            Billingsley

8

Count 14:   Breach of Contract
                  Lockridge

Count 15[1]: Breach of Contract
                  Lynch

Count 16:   Intentional Spoliation of Evidence
                  Caliber, Billingsley

(SAC, *generally*.) The matter is currently before the Court on several motions, including:

- Lynch's Motion to Dismiss pursuant to Rules 12(b)(2), 12(b)(3), and 12(b)(6) (ECF No. 154);

- Caliber's Motion to Dismiss pursuant to Rule 12(b)(2) and 12(b)(6) (ECF No. 152);

- Nowak's Motion for Judgment on the Pleadings on Counts 7, 8, and 11 (ECF No. 162); and

- Lockridge's Motion for Judgment on the Pleadings on Counts 5, 7, 8, 9, and 10 (ECF No. 166).

The motions are fully briefed and ripe for review. Though the Court will address each motion in full, they will be analyzed together to the extent the arguments overlap.

## III.   LYNCH'S MOTION TO DISMISS

Lynch argues that this Court lacks personal jurisdiction over him, that venue is improper, and that the Second Amended Complaint fails to state a claim. (ECF No. 154.) The Court will address the first two arguments, which are unique to Lynch, in this section.

---

[1] The SAC identifies this as a second "Count Fourteen." (SAC, 86.) The Court here corrects the numbering for this and the following counts.

### A.      Rule 12(b)(2) — Personal Jurisdiction

Rule 12(b)(2) provides for dismissal of a lawsuit for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2).  Lynch argues that this Court lacks authority to exercise jurisdiction over him (ECF No. 154); Safelite disagrees (ECF No. 179). Both have filed sworn affidavits in support of their position (*see* PAGEID # 1707–09, 1867–68). Neither discovery nor an evidentiary hearing is necessary to rule on the motion.

The plaintiff bears the burden of proving that jurisdiction exists "over each defendant independently." *Beydoun v. Wataniya Rests. Holding, Q.S.C.*, 768 F.3d 499, 504 (6th Cir. 2014) (quoting *Days Inns Worldwide, Inc. v. Patel*, 445 F.3d 899, 904 (6th Cir. 2006)); *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). When a court resolves a Rule 12(b)(2) motion on written submissions, "the burden on the plaintiff is 'relatively slight,' and 'the plaintiff must make only a *prima facie* showing that personal jurisdiction exists in order to defeat dismissal.'" *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007) (quoting *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988); *Theunissen*, 935 F.2d at 1458) (cleaned up). A plaintiff can meet its burden by "establishing with reasonable particularity sufficient contacts between [the defendant] and the forum state to support jurisdiction." *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002) (quoting *Provident Nat'l Bank v. Cal. Fed. Sav. Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987)). In the absence of an evidentiary hearing, courts apply the *prima facie* standard weighing the evidence in the light most favorable to the plaintiff. *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th Cir. 1998).

Nonetheless, the court may consider a defendant's undisputed factual assertions. *Conn v. Zakharov*, 667 F.3d 705, 711 (6th Cir. 2012).

Personal jurisdiction over a defendant exists "if the defendant is amenable to service of process under the [forum] state's long-arm statute and if the exercise of personal jurisdiction would not deny the defendant[ ] due process." *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002) (internal quotation omitted) (alterations in original). Safelite has met its burden of showing that personal jurisdiction over Lynch exists. The Second Amended Complaint alleges that Lynch had a long employment history with Safelite, by virtue of which he regularly participated in trainings and leadership meetings based out of Ohio, received his compensation and benefits from Ohio, accessed information stored in Ohio, and entered into an agreement with continuing obligations governed by Ohio law. (SAC, ¶¶ 285–306.) It further alleges that Lynch engaged in the same tortious conduct, in furtherance of the same tortious scheme, as his co-defendants. (*Id.*, ¶¶ 307–320, 324–27.) Though the Court conducts its analysis as to each defendant independently, there is no meaningful difference between the jurisdictional allegations made as to Lynch and his co-defendants. The Court finds that it may properly exercise personal jurisdiction over Lynch in this matter for the same reasons as those discussed in the January 21, 2022 Opinion & Order. (*See* ECF No. 85, 5–6, 7–8.)

Lynch's motion to dismiss for lack of personal jurisdiction is **DENIED**.

## B.    Rule 12(b)(3) — Improper Venue

Lynch also argues that, under Rule 12(b)(3), venue is not proper. Having concluded that this Court may exercise personal jurisdiction over Lynch in this

action, venue is proper. *See* 28 U.S.C. § 1391; *Atl. Marina Constr. Co., Inc. v. U.S. Dist Court for W. Dist. of Tex.*, 571 U.S. 49, 57 (2013) (explaining that "venue is proper so long as the requirements of § 1391(b) are met").

Lynch's motion to dismiss for improper venue is **DENIED**.

## IV. CALIBER'S MOTION TO DISMISS

Caliber's Motion has two components: First, that this Court lacks personal jurisdiction over it; and next, that the Second Amended Complaint fails to state a claim. (ECF No. 152.) Because the personal jurisdiction argument is unique to Caliber, the Court will address it here.

Caliber argues that the Second Amended Complaint should be dismissed for want of personal jurisdiction, under Rule 12(b)(2). (*Id.*) Caliber made the same argument in its motion to dismiss the First Amended Complaint. (*See* ECF No. 34.) The Court found Caliber's argument unavailing and denied the motion. (*See* January 21, 2022 Opinion & Order, 7–8.) Accordingly, the personal-jurisdiction portion of Caliber's instant Motion to Dismiss will be construed as a motion for reconsideration. *See League of Women Voters of Ohio v. Blackwell*, 432 F. Supp. 2d 734, 738 (N.D. Ohio 2006), *rev'd in part on other grounds*, 548 F.3d 463 (6th Cir. 2008) ("[A] motion to dismiss an amended complaint is no more than a motion for reconsideration to the extent it simply restates arguments already considered and rejected with respect to the original complaint.").

While the Federal Rules of Civil Procedure do not expressly provide for motions to reconsider interlocutory orders, "[d]istrict courts have authority both under common law and Rule 54(b) to reconsider interlocutory orders and to reopen

any part of a case before entry of final judgment." *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004); *see also In re Life Investors Ins. Co. of Am.*, 589 F.3d 319, 326 n. 6 (6th Cir. 2009) ("[A] district court may always reconsider and revise its interlocutory orders while it retains jurisdiction over the case."). District courts may "afford such relief from interlocutory orders as justice requires." *Rodriguez*, 89 F. App'x at 959 (internal quotation marks and brackets omitted). Courts traditionally find justification for reconsidering interlocutory orders only when there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct clear error or prevent manifest injustice. *Louisville/Jefferson Cnty. Metro Gov't v. Hotels.com, L.P.*, 590 F.3d 381, 389 (6th Cir. 2009) (citing *Rodriguez*, 89 F. App'x at 959). This standard "vests significant discretion in district courts." *Rodriguez*, 89 F. App'x at 959 n. 7.

Caliber submits that the January 21, 2022 Opinion & Order "did not correctly separate Caliber's alleged contacts **with Safelite** from Caliber's contacts **with the State of Ohio**[.]" (ECF No. 152, 10 (emphasis in original).) In Caliber's view, without any "assertion that Caliber itself committed any tortious acts within Ohio, hired any Safelite employees based in Ohio, accessed any Safelite computers located in Ohio, conspired with the other defendants to deprive Safelite of market share among Ohio consumers, or even caused Safelite to lose a single customer in Ohio[,]" this Court cannot exercise specific jurisdiction over it. (*Id.*) In other words, Caliber disagrees with the Court's finding that the Complaint (then First Amended form,

and now Second) sufficiently alleges that the "purposeful availment" and "arising from" prongs of the specific jurisdiction test are satisfied. (*See* January 21, 2022 Opinion & Order, 7–8.) But Caliber's disagreement with the Court is not evidence of clear error. *See Lorillard Tobacco Co. v. Chester, Willcox & Saxbe, L.L.P.*, No. 2:04-CV-715, 2007 WL 3051150, at *1 (S.D. Ohio Oct. 16, 2007) (Sargus, J.) ("Motions for reconsideration should not be used . . . for mere disagreement with a district court's opinion."). Caliber offers no other argument in favor of reconsidering the Court's earlier ruling.

Caliber's motion for reconsideration is **DENIED**.

## V. FAILURE TO STATE A CLAIM

Caliber, Lynch, Lockridge, and Nowak have moved to dismiss portions of the Second Amended Complaint for failure to state a claim.[2] In particular, they argue that: Counts 5 through 10 are preempted by the Uniform Trade Secrets Act; Count 7 (Conspiracy) is barred by the intra-corporate conspiracy doctrine; Count 11 (Aiding and Abetting) is not viable under Ohio law; and Count 16 (Intentional Spoliation) is not sufficiently alleged as to Caliber.

---

[2] Due to the differences in the movants' procedural posture, the motions were made under both Rules 12(b)(6) and 12(c). Motions made under those two rules are analyzed in the same manner. *See Tucker*, 539 F.3d at 549. In particular, Caliber argues that Safelite's Second Amended Complaint fails to state a claim as to Counts 5, 6, 7, 8, 11, and 16. (ECF No. 152 (citing Fed. R. Civ. P. 12(b)(6)).) Except as to Count 16, Caliber failed to raise this available defense in its earlier Motion to Dismiss. *See* Fed. R. Civ. P. 12(g)(2), 12(h)(2)(B). The Court accordingly construes Caliber's motion (except as to Count 16) as one made under Rule 12(c). *See Satkowiak v. Bay Cnty. Sheriff's Dep't*, 47 F. App'x 376, 377 n.1 (6th Cir. 2002) (explaining that it is a "technical error" having "no impact on [the court's] review" to mis-label a Rule 12(c) motion as one made under Rule 12(b)(6)).

### A.    Standard of Review

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient specificity to "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal alteration and quotations omitted). A complaint which falls short of the Rule 8(a) standard may be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The Supreme Court has explained:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotations omitted). The complaint need not contain detailed factual allegations, but it must include more than labels, conclusions, and formulaic recitations of the elements of a cause of action. *Directv, Inc. v. Treesh*, 487 F.3d, 471, 476 (6th Cir. 2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

**B.    Safelite's tort claims are preempted to the extent they are based on alleged misappropriation of the Proprietary Information.**

Safelite brings claims for misappropriation of trade secrets under federal, Ohio, Texas, and Arizona law. (*See* SAC.) Ohio, Texas, and Arizona have all adopted some form of the Uniform Trade Secrets Act ("UTSA"). The UTSA—which, in this respect, was unaltered by the states' legislatures—"displace[s] conflicting tort, restitutionary, and other [state laws] providing civil remedies for misappropriation of a trade secret." Ohio Rev. Code § 1333.67(A); *see also* Ariz. Rev. Stat. Ann. § 44-407(A), Tex. Civ. Prac. & Rem. Code § 134A.007(a). "The Ohio Supreme Court has yet to speak to the scope of the OUTSA's preemption clause." *Stolle Mach. Co., LLC v. RAM Precision Industries*, 605 F. App'x 473, 484 (6th Cir. 2015) (quotation omitted); *see also Sal's Heating & Cooling, Inc. v. BERS Acquisition Co.*, 192 N.E.3d 537, 547 (Ohio Ct. App. May 26, 2022) (applying the rule adopted in *Stolle*), *appeal denied*, 196 N.E.3d 856 (table) (Ohio 2022). But the Sixth Circuit "has adopted a broader interpretation of OUTSA preemption, finding that it 'should be understood to preempt not only causes of action for misappropriation of trade secrets but also causes of action that are based in some way on misappropriation of trade secrets.'" *Campfield v. Safelite Grp., Inc.*, No. 15-CV-2733, 2021 WL 1215869, at *13 (S.D. Ohio Mar. 31, 2021) (Watson, J.) (quoting *Stolle*, 605 F. App'x at 485). Under this standard, a claim will be preempted if it is "no more than a restatement of the same operative facts that form[ ] the basis of the plaintiff's statutory claim for trade secret misappropriation." *Stolle*, 605 F. App'x at 485 (quoting *Thermodyn Corp. v. 3M Co.*, 593 F. Supp. 2d 972, 989 (N.D. Ohio 2008)) (cleaned up). Nevertheless, a

16

claim will survive preemption to the extent it has an "independent factual basis."
*Id*. (quoting *Miami Valley Mobile Health Servs., Inc. v. ExamOne Worldwide, Inc.*,
852 F. Supp. 2d 925, 940 (S.D. Ohio 2012) (Rice, J.)).

Caliber, Nowak, Lockridge, and Lynch argue that certain of Safelite's
asserted tort claims are preempted by the UTSA. (ECF Nos. 152, 154, 162, and
166.[3]) In short, their arguments prevail to the extent that Counts 5 through 10 are
based on the misappropriation of Safelite's Proprietary Information.[4]

### 1.    Count 5 (Tortious Interference with Business Relationships)

In Count 5, Safelite alleges that each Defendant tortiously interfered with
Safelite's business relationships by "unlawfully target[ing] and unlawfully
solicit[ing] Safelite" employees and customers. (SAC, ¶¶ 480, 485.) Caliber,
Lockridge, and Lynch argue that Count 5 is preempted by the UTSA. (ECF Nos.
152, 154, 162, 166.)

---

[3] Caliber argues that Counts 5, 6, 7, and 8 are preempted. (ECF No. 152.)
Lynch makes the same argument as to Counts 5, 7, and 8. (ECF No. 154.) Nowak
argues that Counts 7 and 8 are preempted. (ECF No. 162.) Finally, Lockridge
argues that 5, 7, 8, 9, and 10 are preempted. (ECF No. 166.)

[4] Safelite argues with Nowak and Lockridge about an apparent conflict
between Arizona's UTSA and Ohio's UTSA—namely, whether tort claims are
preempted even if the subject information does not meet the statutory definition of
a trade secret. (*See* ECF Nos. 178, 180, 186, 193.) Safelite has persuaded the Court
that a conflict exists. *Compare Stolle*, 605 F. App'x at 484 (adopting "the (broader)
majority rule" that the Ohio UTSA "abolish[es] all other causes of action for theft,
misuse, or misappropriation of any confidential or secret information") *with Orca
Commc'ns Unltd., LLC v. Noder*, 337 P.3d 545, 547 (Ariz. 2014) (concluding that the
Arizona UTSA does not displace "common-law claims for misuse of confidential
information that does not fall within AUTSA's definition of 'trade secret'"). But
Safelite stops short of explaining why that conflict matters, or advocating for the
application of Arizona law. (*See* ECF Nos. 178, 180.) The Court declines to make
arguments on Safelite's behalf.

"As an analytical tool, partial preemption allows a court to parcel out the common law theory designed to remedy a separate wrong from misappropriation of trade secrets." *Office Depot, Inc. v. Impact Office Prods., LLC*, 821 F. Supp. 2d 912, 921 (N.D. Ohio 2011). That tool is useful here. The 'unlawful targeting' in Count 5 refers to Defendants' alleged use of Safelite's Proprietary Information (*id.*, ¶¶ 481, 486)—whereas the 'unlawful solicitation' refers to Defendants' efforts to recruit Safelite employees, or induce Safelite customers, to abandon their old relationship in favor of a new one with Caliber (*id.*, ¶¶ 483, 488). In other words, the two component parts of the claim have different degrees of "congruity" with trade-secret misappropriation. *Premier Dealer Servs., Inc. v. Allegiance Adm's, LLC*, No. 18-CV-735, 2019 WL 79038, at *6 (S.D. Ohio Jan. 2, 2019) (Sargus, J.). In light of their histories with Safelite, it is reasonable to infer that Lockridge and Lynch had personal connections with Safelite employees and customers, such that soliciting them did not require reference to the Proprietary Information. So, while the 'targeting' component of Count 5 is based on the same operative facts comprising trade-secret misappropriation and is preempted, the claim survives to the extent it is based on interference unrelated to the Proprietary Information. *See Miami Valley*, 852 F. Supp. 2d at 941 (denying defendants' motion to dismiss tortious interference claims that "allege far more than the wrongful use of clients' contact information"); *Office Depot*, 821 F. Supp. 2d at 922 (same, to the extent tortious interference claim was based on defendants' obligations arising under a separate non-compete clause).

18

Caliber, Lockridge, and Lynch's motions as to Count 5 are **GRANTED in part** and **DENIED in part**.

### 2. Count 6 (Tortious Interference with Contractual Relationships)

In Count 6, Safelite alleges that Caliber and Nowak tortiously interfered with its contractual relationships by recruiting the individual Defendants to violate their non-competition agreements. (SAC, ¶¶ 495–96.) Count 6 further alleges that Caliber interfered by receiving and using the Proprietary Information. (SAC, ¶ 495.) In this latter regard, Count 6 restates the operative facts that support Safelite's UTSA claim and is, accordingly, preempted to that extent.

Caliber's motion as to Count 6 is **GRANTED in part** and **DENIED in part**.

### 3. Count 7 (Conspiracy)

Count 7 alleges that each Defendant conspired to harm Safelite. (SAC, ¶¶ 499–505.) The parties do not dispute that a conspiracy claim is valid only when based on an "underlying unlawful act." (*See, e.g.*, ECF No. 174 (quoting *Ohio Bureau of Workers' Comp. v. MDL Active Duration Fund, Ltd.*, 476 F. Supp. 2d 809, 825 (S.D. Ohio 2007) (Graham, J.).) And it is beyond dispute that a conspiracy claim is preempted when the underlying unlawful act is the misappropriation of trade secrets—indeed, by its nature, such a claim "rises or falls based on whether the defendant is found to have misappropriated a trade secret." *Murray Energy Holdings Co. v. Bloomberg, L.P.*, No. 15-CV-2845, 2016 WL 3355456, at *11 (S.D. Ohio June 17, 2016) (Marbley, J.) (quotation and citation omitted). So, once again, to the extent the Count 7 is based on Defendants' alleged misappropriation or

19

misuse of the Proprietary Information, it is preempted. But to the extent it is based on the surviving components of Counts 5 and 6, the conspiracy claim also survives.

Caliber, Nowak, Lockridge, and Lynch's motions as to Count 7 are **GRANTED in part** and **DENIED in part**.

### 4.    Count 8 (Unjust Enrichment)

Safelite next alleges an unjust enrichment claim against each Defendant. (SAC, ¶¶ 506–13.) Unlike Counts 5, 6, and 7, which rely in part on factual bases independent of trade-secret misappropriation, Count 8 is "no more than a restatement" of Safelite's UTSA claim. *Stolle*, 605 F. App'x at 485 (citation omitted). Safelite argues that Count 8 should not be dismissed because it is pleaded as an alternative theory of recovery to trade-secret misappropriation. (*See, e.g.*, ECF No. 180, 8 (citing Fed. R. Civ. P. 8(d)(3)).) But, as this Court has previously explained, "[i]t would be incongruent to hold that [certain] claims are preempted yet allow them to be pleaded in the alternative." *Murray Energy*, 2016 WL 3355456, at *11.

Caliber, Nowak, Lockridge, and Lynch's motions as to Count 8 are **GRANTED**.

### 5.    Count 9 (Breach of Duty of Loyalty)

In Count 9, Safelite alleges that Billingsley and Lockridge breached their duty of loyalty to the company by:

> misappropriating Safelite's confidential, proprietary, and trade secret information to Caliber while still employed with Safelite, working with Caliber to develop a competing auto glass repair and replacement business based on Safelite's confidential, proprietary, and trade secret information, and soliciting employees to leave their employment with Safelite to go work for Caliber, all while still employed by Safelite[.]

(SAC, ¶ 516.) Lockridge argues that the claim is preempted. (ECF No. 166, 9.) Except to the extent the claim is based on the independent factual basis of soliciting Safelite employees, Lockridge is correct.

Lockridge's motion as to Count 9 is **GRANTED in part** and **DENIED in part**.

### 6.    Count 10 (Conversion)

Count 10 alleges that Billingsley and Lockridge converted the Proprietary information. (SAC, ¶¶ 518–22.) The claim relies on the same operative facts as trade-secret misappropriation and is, accordingly, preempted. *See Campfield*, 2021 WL 1215869, at *13 (finding counterclaim for conversion of materials containing proprietary information preempted).

Safelite argues for the opposite conclusion by noting that it seeks return of physical property from Lockridge—*i.e.*, the list. (ECF No. 178, 11.) District courts within the Sixth Circuit have rejected this argument where, as here, "the physical property [a plaintiff] alleges to have been stolen derived its primary, if not entire, value from the trade secrets contained therein." *Hauck Mfg. Co. v. Astec Indus., Inc.*, 375 F. Supp. 2d 649, 661 (E.D. Tenn. 2004).

Lockridge's motion as to Count 10 is **GRANTED**.

### C.    The intra-corporate conspiracy doctrine does not bar the remainder of Count 7 (Conspiracy).

Caliber, Nowak, Lockridge, and Lynch next argue that the non-preempted remainder of Count 7 (Conspiracy) is barred by the intra-corporate conspiracy doctrine. (ECF Nos. 152, 154, 162, 166.) Safelite responds, arguing that the doctrine

21

does not apply because the conspiracy is alleged to have occurred before one or more of the individual Defendants worked for Caliber. (ECF Nos. 174, 179, 180, 182.) The Court agrees with Safelite.

Under Ohio law, a civil conspiracy requires proof of a malicious combination by at least two people, an injury, and the existence of an unlawful act that is independent from the conspiracy itself. *See Renner v. E. Mfg. Corp.*, No. 2001-P-0135, 2002 WL 31744760, at *7 (Ohio Ct. App. Dec. 6, 2002). But,

> "a corporation cannot conspire with its own agents or employees." *Cap City Dental Lab, LLC v. Ladd*, No. 2:15-CV-2407, 2016 WL 4573993, at *7 (S.D. Ohio Sept. 1, 2016). As the Sixth Circuit put it when discussing the federal doctrine, it "is the basic law of conspiracy that you must have two persons or entities to have a conspiracy. A corporation cannot conspire with itself any more than a private individual can, and it is the general rule that the acts of the agent are the acts of the corporation." *Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Educ.*, 926 F.2d 505, 509 (6th Cir. 1991) (citing *Nelson Radio & Supply Co., Inc. v. Motorola, Inc.*, 200 F.2d 911, 914 (5th Cir. 1952)).

*Cheryl & Co. v. Krueger*, 536 F. Supp. 3d 182, 214 (S.D. Ohio 2021) (Sargus, J.). Nonetheless, "[i]f the elements of [civil conspiracy] were satisfied when at least one of the [individual defendants] was not yet an agent of [the corporate defendant], the intra-corporate conspiracy doctrine would not bar the claim[.]" *Id.*

Here, Safelite alleges that Defendants conspired to tortiously interfere with its business and contractual relationships. (SAC, ¶ 501.) Notably, Safelite alleges that the conspiracy existed both "[d]uring and after Nowak's, Billingsley's, Lockridge's, and Lynch's employment with Safelite[.]" (*Id.*, ¶ 500.) The Second Amended Complaint further alleges that: (i) Nowak played a role in interviewing or recruiting Billingsley, Lockridge, and Lynch (*id.*, ¶¶ 219, 264–65, 311); and that

22

(ii) Billingsley, Lockridge, and Lynch each accepted their offer of employment from Caliber before separating from Safelite (*id.*, ¶¶ 234–35, 272, 315). What's more, the nature of Safelite's claims on the whole—that Defendants joined forces in order to build a competing business—coupled with the rapidity with which Defendants are alleged to have actively engaged in the tortious conduct following their hire (*see, e.g., id.*, ¶ 323), allows a reasonable inference that the conspiracy began before one or more of the individual Defendants were employed by Caliber. Accordingly, the facts alleged, when taken as true, plausibly state a claim for civil conspiracy.

Caliber, Nowak, Lockridge, and Lynch's motions as to Count 7 are **DENIED**, except as discussed above.

### D. Safelite fails to state a claim for aiding and abetting.

In Count 11, Safelite alleges that Caliber and Nowak aided and abetted Billingsley and Lockridge in breaching their duties of loyalty to the company. (SAC, ¶¶ 523–29.) Caliber and Nowak move for judgment on Count 11 on the grounds that Ohio law does not recognize a cause of action for aiding and abetting. (ECF No. 162, 9 (citing, *inter alia*, *Peter D. Brown Trust v. Shriver*, No. 1:17-cv-280, 2018 WL 776365, at *2 (S.D. Ohio Feb. 8, 2018) (Dlott, J.) (explaining that "Ohio law does not recognize claims for aiding and abetting tortious conduct" and collecting cases).)

Safelite responds to both motions as follows:

> While Safelite believes Ohio law should apply to the majority of claims at issue in this case, Defendants have not yet stipulated to this. Anticipating this, Safelite pled this claim in the alternative. *See Kramer v. Plan*, No. 2:21-cv-5501, 2022 U.S. Dist. LEXIS 89844, at *3 (S.D. Ohio May 10, 2022) (noting that "the Civil Rules allow a plaintiff to plead in the alternative" (internal quotation marks and citations omitted)). Because aiding and abetting is a cause of action under both

23

> Texas and Arizona law, and choice of law has yet to be decided, this
> claim survives.

(ECF No. 174, 18 (footnote omitted). *See also* ECF No. 180, 10.) Safelite omits a

critical point: The Court has not decided a choice-of-law question because no choice-

of-law question has been raised. That analysis would not only require the Court to

find that a conflict exists, but also to evaluate several factors to determine which

state has the "most significant relationship" to the case. *See, e.g., Novus Grp., LLC*

*v. Prudential Fin., Inc.*, 2:19-cv-208, 2019 WL 4452708, at *9–10 (S.D. Ohio Sept.

17, 2019) (Sargus, J.) (analyzing factors to determine whether Ohio or New Jersey

had the most significant relationship to the UTSA case) (citing RESTATEMENT

(SECOND) OF CONFLICT OF LAWS § 145 (AM. LAW INST. 1971)). Yet, Safelite fails to

present case-specific facts going to those factors, argument on their application, or

authority supporting reservation of this issue for a later stage of litigation. *Cf.*

*McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("Issues adverted to in a

perfunctory manner, unaccompanied by some effort at developed argumentation,

are deemed waived. It is not sufficient for a party to mention a possible argument in

the most skeletal way, leaving the court to put flesh on its bones.") (quotation

omitted) (cleaned up).

    Where, as here, "'neither party argues that the forum state's choice-of-law

rules require the court to apply the substantive law of another state, the court

should apply the forum state's substantive law.'" *Wilkes Assocs. v. Hollander Indus.*

*Corp.*, 144 F. Supp. 2d 944, 949 n.4 (S.D. Ohio 2001) (quoting *ECHO, Inc. v. Whitson*

*Co., Inc.*, 52 F.3d 702, 707 (7th Cir. 1995)); *see also Super Sulky, Inc. v. U.S.*

*Trotting Ass'n*, 174 F.3d 733, 741 (6th Cir. 1999) ("A federal court exercising supplemental jurisdiction over state law claims is bound to apply the law of the forum state to the same extent as if it were exercising its diversity jurisdiction."). Accordingly, Ohio law applies to Count 11, which fails.

Caliber and Lockridge's motions as to Count 11 are **GRANTED**.

### E.    Safelite plausibly alleges a claim for intentional spoliation against Caliber.

Finally, in Count 16, Safelite alleges that Caliber and Billingsley committed intentional spoliation. (SAC, ¶¶ 585–97.) The supporting facts are unique to this claim. Safelite alleges that, after this litigation commenced, Billingsley "was instructed by counsel not to destroy any documents or communications that could be relevant[.]" (*Id.*, ¶ 590.) Nonetheless, Billingsley "used his Caliber-issued laptop" to "willfully destroy[ ] documents from his [personal] email account after this litigation commenced that are relevant to Safelite's" claims. (*Id.*, ¶¶ 589–91.) Safelite further alleges that "Billingsley['s] willful destruction of evidence was an act performed in the course and scope of his employment as a managerial employee of Caliber." (*Id.*, ¶ 594.)

Ohio is one of the few states to recognize a cause of action for intentional spoliation. *Elliott-Thomas v. Smith*, 110 N.E.3d 1231, 1233 (Ohio 2018). To succeed, a plaintiff must prove:

> (1) pending or probable litigation involving the plaintiff, (2) knowledge on the part of defendant that litigation exists or is probable, (3) willful destruction of evidence by defendant designed to disrupt the plaintiff's case, (4) disruption of the plaintiff's case, and (5) damages proximately caused by the defendant's acts

*Smith v. Howard Johnson Co., Inc.*, 615 N.E.2d 1037, 1038 (Ohio 1993). Caliber argues that Safelite fails to allege that Caliber "willfully" destroyed any evidence. (ECF No. 152, 19–20.) Safelite responds by noting that an employer can be held liable for its employees' tortious conduct when it is committed in the course and scope of employment, or by ratification.[5] (ECF No. 174, 18–19.)

In *Williams v. Clerac, LLC*, --- F. Supp. 3d ---, 2022 WL 9992507 (N.D. Ohio Oct. 17, 2022), the Northern District summarized Ohio law on employers' liability for employees' torts. As the *Williams* court explained, *respondeat superior* "makes an employer . . vicariously liable of the torts of its employees" when those torts are "committed within the scope of employment." *Id.*, at *3 (quoting *Auer v. Paliath*, 140 Ohio St. 3d 276, 278 (Ohio 2014)). Although the "general rule [is] that intentional torts fall outside the scope of employment[,]" there are exceptions, such as "if the employee's conduct was calculated to facilitate or promote the business for which the employee was employed[,]" or "if an employer specifically and explicitly ratifies the employee's tortious act[.]" *Id.* at *3–4 (quotations and citations omitted) (alterations omitted). Here, Safelite alleges Billingsley willfully destroyed documents relevant to its case against Billingsley <u>and Caliber</u>, while Billingsley was working <u>for Caliber</u>, on a machine issued <u>by Caliber</u>. These facts fail to plausibly allege that Caliber ratified Billingsley's conduct. *See id.*, at *4 (noting that "[t]he

[5] Safelite's argument does not comply with the Court's Local Rules because it is made without any citation to authority. *See* S.D. Ohio Civ. R. 7.2(a)(1) ("All motions and applications tendered for filing shall be accompanied by a memorandum in support thereof that shall be a brief statement of the grounds, with citation of authorities relied upon.").

mere failure to terminate the employee for the tortious act does not constitute ratification") (quotation and citation omitted). But, at this stage of the proceedings, Safelite plausibly states a claim that Billingsley acted within the course and scope of his employment.

Caliber's motion as to Count 16 is **DENIED**.

## VI. CONCLUSION

For the reasons set forth above, Lynch's motion to dismiss for lack of personal jurisdiction or improper venue is **DENIED**; Caliber's motion for reconsideration is **DENIED**; Caliber, Nowak, Lockridge, and Lynch's motions to dismiss, or for judgment on the pleadings, are **GRANTED in part** and **DENIED in part**. The following claims are hereby **DISMISSED**:

- Count 5 (Tortious Interference with Business Relationships), to the extent it is based on misappropriation of the Proprietary Information;

- Count 6 (Tortious Interference with Contractual Relationships), to the extent it is based on misappropriation of the Proprietary Information;

- Count 7 (Conspiracy), to the extent it is based on misappropriation of the Proprietary Information;

- Count 8 (Unjust Enrichment);

- Count 9 (Breach of Duty of Loyalty), to the extent it is based on misappropriation of the Proprietary Information;

- Count 10 (Conversion); and

- Count 11 (Aiding and Abetting).

**IT IS SO ORDERED.**

/s/ Sarah D. Morrison
**SARAH D. MORRISON**
**UNITED STATES DISTRICT J'UDGE**

27