UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

SAFELITE GROUP, INC.,

   **Plaintiff,**

   :

   **Case No. 2:21-cv-4558**
v.    **Chief Judge Sarah D. Morrison**
   **Magistrate Judge Elizabeth A.**
   **Preston Deavers**

NATHANIEL LOCKRIDGE, *et al.*,

   :

   **Defendants.**

## OPINION AND ORDER

  Safelite Group, Inc. is a nationwide auto glass repair and replacement provider. Caliber Collision Centers recently expanded its collision repair business to include auto glass repair and replacement. In 2021, Nathaniel Lockridge left his position as a Safelite Store Manager—and started working for Caliber. Safelite brought suit alleging that Lockridge, at Caliber's direction, used Safelite's proprietary information to persuade Safelite employees and customers to take their talents and their business to Caliber.

  The matter is now before the Court on Safelite's Motion Seeking Spoliation Sanctions against Lockridge. (Mot., ECF No. 287.) Lockridge and Caliber responded (Lockridge Resp., ECF No. 294; Caliber Resp., ECF No. 195) and Safelite replied[1] (Reply, ECF No. 299). For the reasons below, Safelite's Motion is **GRANTED**.

---

[1] Lockridge and Caliber have moved to strike new evidence submitted with Safelite's reply. (ECF No. 301.) Because the new evidence is responsive to the arguments and evidence raised in Lockridge and Caliber's responses, the joint motion to strike is **DENIED**.

I.     **BACKGROUND**

In 2020, Lockridge was assigned to be Store Manager at a Safelite location in Tucson, Arizona. (SAC, ECF No. 126, ¶ 261.) Safelite alleges that Lockridge viewed the assignment as a "demotion and was upset at the change." (*Id.*, ¶ 262.) In the spring of 2021, Lockridge contacted his old Tucson-colleague, Defendant Jeffrey Nowak, to inquire about joining Caliber. (*Id.*, ¶ 264.) Conversations progressed, and Caliber offered Lockridge a position as General Manager in Tucson. (*Id.*, ¶¶ 265, 268–271.)

In August 2021, Lockridge held a staff meeting at which he announced that he had resigned from Safelite and was "going to work for his wife's cleaning company." (*Id.*, ¶¶ 273–73.) But Lockridge had accepted Caliber's offer on July 30. (ECF No. 287-2, PAGEID # 4087.) He first began working at Caliber on August 16. (ECF No. 294-1, PAGEID # 4512.)

Ten days later, on August 26, Lockridge sent an email to Chris Abal, a recruiter at Caliber:

> Hey Chris,
>
> Here are the leads for tech in Tucson. These are all techs that I have worked with and all would make a great addition to the team. I have also talked to all of them and they know you will be reaching out to them.
>
> Richard Gracia- . . . Master Tech
> Alex Royal- . . . Master Tech
> Tirell Lovett- . . . Senior Tech
> Kevin Mancera- . . . Tech
> William Gibes- . . . Tech (Tentative) Trying to buy a house
>
> Thank you sir.

2

(ECF No. 287-2, PAGEID # 4088.) The next day, Lockridge texted Richard Gracia, saying:

> Hey bro, when you fill out the app go to the website and look for jobs in Phoenix

(ECF No. 294-7, PAGEID # 4632.)

Safelite caught wind of Lockridge's activities, and believed that his new employment and recruiting activities violated Lockridge's contractual obligations to Safelite. On August 27 (the same day Lockridge texted Gracia), Safelite sent Lockridge a cease-and-desist letter. (August 27 Letter, ECF No. 287-2, PAGEID # 4091.) The letter provides:

> Dear Mr. Lockridge:
>
> It has come to our attention that you may be engaged in vehicle glass business activities at Caliber Collision Glass in direct violation of the terms of the Non-Competition, Non-Disclosure, Non-Solicitation and Assignment of Inventions Agreement dated March 1, 2016 ("Agreement") executed between you and Safelite Group, Inc. ("Safelite").
>
> The purpose of this letter is to place you on formal notice that you are bound by the restrictions set forth in the Agreement, including those that preclude you from, directly or indirectly, owning, controlling, participating in, being associated with, or rendering services to any business engaged in competition with Safelite within the geographic area to which you were assigned while employed at Safelite for twelve (12) months following the end of your employment with Safelite. From what we currently know, your role at Caliber Collision Glass fits within this definition, thus, you are prohibited from working there. Additionally, under the Agreement, you may not, directly or indirectly, solicit or divert from Safelite any customer or business whatsoever or in any way interfere with its relationship with Safelite. Similarly, you may not solicit or attempt to solicit any associate of Safelite to terminate employment with Safelite or to employ any person who was employed by Safelite at the time your employment ended.

As you know, in your Operations Manager role, you had access to highly confidential and proprietary information of Safelite. You participated in numerous management meetings, were actively involved in strategic planning for the company and received reports and other documents containing sensitive historical and prospective business intelligence pertaining to Safelite. Under the confidentiality terms of your Agreement, you are strictly prohibited from using or disclosing any of Safelite's proprietary information, including but not limited to its customer lists and confidential parts and pricing information for your own benefit or the benefit of a competitor. Your obligation to maintain the confidentiality of Safelite's proprietary information is unconditional and remains intact indefinitely.

Safelite also believes that much of the confidential information that you had access to and learned while employed at Safelite would qualify as "trade secrets" as that term is defined both by Arizona statutes and common law. Safelite has taken many measures to protect the secrecy of its customer lists and information, marketing plans, pricing strategies and other proprietary business information, including making certain information available only to select management-level associates, such as you. As a result, Safelite takes important measures to have its key associates enter into non-complete and non-disclosure agreements, as you did, and Safelite will continue to exercise its legal rights to enforce such agreements.

During your employment with Safelite, you had access to Safelite's confidential information, as noted above. In addition, your job duties required that you maintain relationships with the associates you led, as well as customers, relationships which are considered protected by law. Accordingly, Safelite hereby demands that you immediately cease and desist:

(1) Directly or indirectly owning, controlling, participating in, associating with, or rendering services to, as an officer, consultant, employee, partner, owner, or otherwise, for Caliber Collision Glass or any of Safelite's competitors within the geographic area to which you were assigned while employed by Safelite for a period of twelve (12) months;

(2) Directly or indirectly using, divulging or disclosing confidential information to any unauthorized person or to any individual not employed by Safelite, or for your own benefit or for the benefit of any person;

> (3) Directly or indirectly soliciting, marketing, submitting bids to, calling upon, offering to provide, or providing any services to Safelite's clients or customers, or potential clients or customers, for whom you (or any of Safelite's other employees or agents under your supervision while you were employed with Safelite) performed any services or to whom you (or any of Safelite's other employees or agents under your supervision while you were employed with Safelite) sold Safelite's products; and
>
> (4) Directly or indirectly, soliciting or attempting to solicit any associate of Safelite to terminate employment with Safelite or to employ any person who is employed by Safelite for a period of twelve (12) months.
>
> Safelite requires that you provide it with assurances that you will abide by the terms of your Agreement for the full twelve (12) months after the date of your termination of employment with Safelite, which was August 13, 2021. Please provide this written acknowledgement to me no later than the close of business on Friday, September 10, 2021.
>
> Although Safelite desires to resolve this matter without litigation, if you fail to provide the requested assurances, specifically agreeing to cease and desist working for businesses in competition with Safelite and from soliciting Safelite associates to work for your new company, Safelite intends to pursue this matter vigorously against you and Caliber Collision Glass, which may include filing a lawsuit seeking monetary damages and injunctive relief. As such, we encourage you to seek the counsel of a competent attorney.

(*Id.*) Lockridge forwarded this August 27 Letter to Caliber within days. (ECF No. 294-1, ¶¶ 10–11.)

Safelite filed suit against Lockridge on September 13, 2021. (ECF No. 1.) Lockridge was served with the Complaint shortly thereafter. (ECF No. 6.) He notified Caliber, who referred him to counsel. (ECF No. 294-1, ¶ 12.) Lockridge met with counsel on October 7, 2021. (*Id.*, ¶ 13.) Counsel "advised [him] orally of [his] obligation to retain and not destroy, delete, or throw away any documents, records or communications that dealt with the allegations in the lawsuit." (*Id.*) Lockridge

received his first written litigation hold from Caliber in November 2021. (*Id.*, ¶ 15.) Then, during a February 3, 2022 conference with his counsel to review discovery responses, Lockridge "learned [that his] personal phone was set to auto-delete text messages after 30 days." (*Id.*, ¶ 17.)

During discovery, Safelite asked Lockridge to produce all communications with Alex Royal and Kevin Mancera "including but not limited to, text messages and text conversations[.]" (Mot., PAGEID # 4045.) Safelite also asked Lockridge to produce all communications between him and "any person or entity that evidence, refer, or in any way related to [his] employment with Caliber." (*Id.*) In response to these requests, Lockridge did not produce any text messages with Alex Royal, Kevin Mancera, Tirell Lovett,[2] Richard Gracia, or Nicole Jensen.

Lockridge admits that he made no effort to preserve his text messages until February 3, 2022, and that his cell phone was set to delete any text messages older than 30 days. (Lockridge Resp., PAGEID # 4500.) As a result, he did not preserve any text messages sent or received before January 4, 2022.

Safelite now asks the Court to find that Lockridge spoliated evidence, impose an adverse-inference sanction, and award costs and expenses.

## II.    LEGAL STANDARD

A party to civil litigation has a duty to preserve information, including electronically stored information ("ESI"), when he knows (or should know)

---

[2] Lockridge disputes that Safelite requested texts with Lovett, but he admits that he talked to Lovett about job opportunities with Caliber. Safelite's request would fairly encompass texts about Caliber job opportunities.

6

that the information "may be relevant to future litigation." *John B. v. Goetz*, 531 F.3d 448, 459 (6th Cir. 2008) (internal quotations and citations omitted) (cleaned up). When that duty is breached, and relevant information has been spoiled, or spoliated, "a district court may exercise its authority to impose appropriate discovery sanctions." *Id*. A party seeking sanctions for spoliation of ESI must show that:

1) ESI that "should have been preserved in the anticipation or conduct of litigation" was lost;

2) The party responsible for preserving the information "failed to take reasonable steps to preserve" it; and

3) The information "cannot be restored or replaced through additional discovery."

Fed. R. Civ. P. 37(e). If a movant satisfies these three threshold elements, a court can sanction the non-producing party in one of two circumstances, depending on the cause and effect of the spoliation.

First, a court can impose sanctions if the loss of information prejudices the movant, regardless of the non-producing party's intent. Fed. R. Civ. P. 37(e)(1). Courts have "broad discretion to craft proper sanctions for spoliated evidence." *Adkins v. Wolever*, 554 F.3d 650, 651 (6th Cir. 2009) *see also* Fed. R. Civ. P. 37(e)(1) advisory committee's note to 2015 amendment. But, in this circumstance, the sanction must be "no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1).

Second, a court can impose sanctions if the non-producing party intended to deprive the movant of the information's use in the litigation, regardless of whether

7

the movant can show prejudice. Fed. R. Civ. P. 37(e)(2). When a court finds intentional spoliation, it can order more severe sanctions, such as an adverse-inference instruction to a jury. *Id.* A court cannot impose the Rule 37(e)(2) sanctions without a demonstration of intent—a "showing of negligence or even gross negligence will not do the trick." *Applebaum v. Target Corp.*, 831 F.3d 740, 745 (6th Cir. 2016).

## III. ANALYSIS

### A. Safelite satisfies the three threshold elements of Rule 37(e).

There is no dispute that Lockridge's text messages before January 4, 2022, are lost—nor is there any dispute as to how that happened. Lockridge admits that his personal cell phone was set to delete text messages after 30 days, until that function was disabled on February 3, 2022. (ECF No. 287-5, PAGEID # 4451.) The Court must now ask whether that loss constitutes spoliation of relevant evidence.

#### 1. The text messages should have been preserved.

##### a) The August 27, 2021 Cease and Desist Letter put Lockridge on notice of potential litigation.

Courts use an objective standard to determine the point at which a party is put on notice that evidence may be relevant to future litigation. *Byrd v. Alpha Alliance Ins. Corp.*, 518 F. App'x 380, 384 (6th Cir. 2013). The question thus becomes, when the non-producing party "*should have known* that the evidence may be relevant to future litigation"—not when he subjectively learned of the litigation. *John B.*, 531 F.3d at 459 (emphasis added) (citation omitted).

8

Lockridge was put on notice of potential litigation when he received the August 27 Letter. *Cf. Graham*, 2021 WL 4810498, at *6 (finding that defendants had a duty to preserve information when they internally discussed "a non-compete suit that might come down the road"). The August 27 letter was detailed and specific, describing Safelite's concern that Lockridge was, among other things, soliciting employees in violation of his contract. Safelite laid out its view of Lockridge's contractual obligations and demanded assurance-of-compliance from him by a date certain. Safelite also demanded that Lockridge cease and desist from any further violations, and closed with explicit reference to "a lawsuit seeking monetary damages and injunctive relief." Where "a letter openly threatens litigation, then the recipient is on notice that litigation is reasonably foreseeable and the duty to preserve evidence relevant to that dispute is triggered." *Goodman v. Praxair Services, Inc.*, 632 F. Supp. 2d 494, 511 (D. Md. 2009).

Lockridge argues otherwise. In his view, the August 27 Letter did not prompt him, and should not impose a duty on him, to preserve evidence because he is a lay person. (Lockridge Resp., PAGEID # 4499.) First, the proposition runs counter to the objective approach described above. Second, Lockridge misreads the only authority he cites in support. *Franklin v. Shelby County Board of Education* counsels that a party's inexperience in litigation is one factor in evaluating whether he took reasonable steps to preserve evidence—not whether he had a duty to preserve. No. 20-cv-02812-JPM-tmp, 2021 WL 6066673, at *6 (W.D. Tenn. Sept. 28, 2021); *cf.* Rule 37(e), advisory committee notes to 2015 amendments (noting that

9

courts "should be sensitive to the party's sophistication with regard to litigation <u>in evaluating preservation efforts</u>") (emphasis added).

### b) The text messages are relevant to the litigation threatened in the Cease and Desist Letter.

The Court next asks whether the lost text messages were relevant to Safelite's claims. Relevance, in this context, means something different than the Rule 401 definition. *Automated Sols. Corp. v. Paragon Data Sys. Inc.*, 756 F.3d 506, 514 (6th Cir. 2014). To show that the text messages are relevant to its claims, Safelite must "adduce sufficient evidence from which a reasonable trier of fact could infer that the destroyed or unavailable evidence would have been of the nature" Safelite alleges. *Id.* (internal quotation and citation omitted) (cleaned up). Given the inherent difficulty in proving the contents of what is no longer, Safelite "may rely on circumstantial evidence to suggest the contents of destroyed evidence." *Beaven v. U.S. Dep't of Justice*, 622 F.3d 540, 555 (6th Cir. 2010). Safelite need not prove that the lost text messages would be dispositive of its claims. *McCarty v. Covol Fuels No. 2, LLC*, 644 F. App'x 372, 379 (6th Cir. 2016).

Here, the Court finds that the lost text messages are relevant to Safelite's claims. The August 27 Letter demanded, among other things, that Lockridge cease and desist from "[d]irectly or indirectly, soliciting or attempting to solicit any associate of Safelite to terminate employment with Safelite[.]" Safelite has proffered evidence that Lockridge was soliciting Safelite employees around the time he received the August 27 Letter. For example, on August 26, Lockridge sent Caliber recruiter Chris Abal a list of five Safelite technicians, saying he had "talked to all of

10

them and they know you [the recruiter] will be reaching out to them." Texts from August 27 show that Lockridge encouraged Gracia to apply to Caliber through its website. Safelite has also submitted declarations from other technicians who say Lockridge approached them about working for Caliber around this time. (ECF Nos. 299-4, 299-5, 299-6.)

Safelite's evidence casts a pall over Lockridge's lost texts with Mancera, Royal, Lovett, and Jensen.[3]

*Kevin Mancera*. Mancera and Lockridge exchanged seven texts on August 27, and 63 more on September 1—the same day Caliber offered Mancera a job. (ECF No. 287-4, PAGEID # 4423–25.)

*Alex Royal*. Royal appeared on the list of technicians that Lockridge emailed to Abal on August 26. Lockridge and Royal then exchanged a substantial number of texts between September 7 and September 30. (*Id.*, PAGEID # 4435–40.) Given that Royal is Lockridge's son-in-law, that may not seem unusual. But the three weeks of regular texting stands in stark contrast to the three-month period of silence that followed—after September 30, the next text between the two was sent on December 23. (*Id.*)

*Tirell Lovett*. Lovett also appeared on the list that Lockridge sent to Abal. Lockridge and Lovett spoke on the phone and exchanged texts throughout the time Lovett continued to work at Safelite. (*Id.*, PAGEID # 4443–44.)

---

[3] Gracia provided Safelite with his texts to and from Lockridge. They are not properly considered lost.

11

*Nicole Jensen.* Jensen joined Caliber on September 27, 2021. (ECF No. 295-3, ¶ 3.) And although she had not worked at Safelite for three years, Jensen came to Caliber as the Tucson General Manager. (Id., ¶¶ 3, 4.) The evidence that Lockridge solicited Tucson technicians supports an inference that his texts with Jensen may have pertained to that activity.

Lockridge argues that he was texting these individuals as friends—about family and shared interests. But Safelite's evidence is sufficient for a reasonable jury to infer that the lost text messages would have also shown a continuation of Lockridge's solicitation activities.

### 2. Lockridge failed to take reasonable steps to preserve the text messages.

Rule 37(e) requires that a party take "reasonable steps" to preserve evidence. The rule "does not call for perfection." Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment. To determine whether a party took reasonable steps to preserve evidence, courts should consider that party's familiarity with litigation, level of control over the lost evidence, resources, and any evidence of the routine, good-faith operation of an information retention system. *Id.* A court may also "need to assess the extent to which a party knew of and protected against" the risk of destruction of evidence. *Id.*

Here, Lockridge made no effort to preserve his text messages, which were under his exclusive control. And while he does not have experience with litigation, he had the wherewithal and the resources to discuss his obligations with Caliber after receiving the August 27 Letter and, ultimately, to retain counsel.

12

Lockridge maintains that he did not know his phone automatically deleted text messages after 30 days, and the loss was an honest mistake. Lockridge is an experienced businessman—he is now the General Manager for Caliber in Phoenix and he previously served as an operations manager and store manager for Safelite. His plea of ignorance strains credulity. It is not plausible that a modern, professional smartphone user like Lockridge could carry on for four years without realizing that his text messages disappeared after 30 days. *See, e.g., DeMartino v. Empire Holdings & Invs., LLC*, No. 22-cv-14301, 2024 WL 712456, at *6 (S.D. Fla. Jan. 26, 2024) (finding a defendant "to be an intelligent professional who regularly used cell phone technology as part of his everyday work and personal life" such that he "should have taken reasonable steps to preserve the text messages on his phone(s)").

Lockridge's failure to preserve his text messages is exacerbated by his lawyers' failures. Counsel are obligated to both implement a litigation hold and "monitor[] a party's efforts to retain and produce the relevant documents." *Schnatter v. 247 Grp., LLC*, No. 320CV00003BJBCHL, 2022 WL 2402658, at *19 (W.D. Ky. Mar. 14, 2022) (quoting *John B. v. Goetz*, 879 F. Supp. 2d 787, 868 (M.D. Tenn. 2010) and *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 432 (S.D.N.Y. 2004)). "Once a 'litigation hold' is in place, a party and [his] counsel must make certain that all sources of potentially relevant information are identified and placed 'on hold[.]'" *Zubulake* at 432.

13

When Lockridge first met with counsel on October 7, 2021, they orally advised him of the "obligation to retain and not destroy, delete, or throw away any documents, records, or communications that dealt with the allegations in the lawsuit." (ECF No. 294-1, PAGEID # 4513.) That advisement was inadequate. First, "an oral litigation hold is insufficient to reasonably protect against the spoliation of evidence." *Borum v. Brentwood Vill., LLC*, 332 F.R.D. 38, 46 (D.D.C. 2019). Further, "[a] litigation hold—whether verbal or written—that fails to instruct a party to disable auto-deletion functions is not much of a litigation hold." *DR Distribs., LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839, 933 (N.D. Ill. 2021).

### 3. The text messages cannot be restored or replaced through additional discovery.

Even when ESI is lost due to a party's failure to take reasonable preservation steps, sanctions should not be imposed if the information can be restored or replaced through additional discovery efforts proportional to the information's import. Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment. Here, Safelite has demonstrated that the lost text messages cannot be restored or replaced. Safelite was unable to obtain the text messages by other means, including from the other parties to those texts or from Lockridge's mobile carrier.[4] (*See* Mot., PAGEID # 4045.) Further, there is no substitute for the messages themselves. As the Northern District of Illinois has said:

---

[4] Safelite obtained the text messages between Lockridge and Gracia pursuant to a subpoena. (Reply, PAGEID # 4725.) Safelite concedes that this resolves the spoliation claim as to Gracia's texts, but that it should be awarded fees and costs for securing the texts. (*Id.*)

> The content of text messages cannot be replaced simply by eliciting testimony from the Defendants, and by having Plaintiff accept that testimony rather than relying on the actual messages to use as they deem fit. Without the lost text messages, Plaintiff is deprived of the opportunity to know 'the precise nature and frequency' of those private communications, which occurred during a critical time period.

*Schmalz v. Vill. of N. Riverside*, No. 13 C 8012, 2018 WL 1704109, at *4 (N.D. Ill. Mar. 23, 2018) (citation omitted).

### B. Safelite satisfies the two elements of Rule 37(e)(1).

#### 1. Lockridge was negligent in failing to preserve the text messages.

The Court can impose the most severe sanctions only if it finds that Lockridge <u>intended</u> to deprive Safelite of the use of the text messages. Fed. R. Civ. P. 37(e)(2); *see also id.*, advisory committee's note to 2015 amendment. To find that a party acted with intent to deprive another of evidence, a court must find by clear and convincing proof that the party acted "with the specific purpose of gaining an advantage in the present litigation." *Franklin*, 2021 WL 6066673, at *3 (internal quotation, citation, and alteration omitted). "But where information loss can be credibly explained by something other than bad faith, a finding of intent is not appropriate." *Id.* (internal quotation and citations omitted).

Lockridge maintains that he did not intend to deprive Safelite of his text messages, saying he was simply "not aware that [his] personal cell phone had a setting that auto-deleted text messages after thirty days, so changing that setting did not enter [his] mind." (ECF No. 294-1, ¶ 14.) Safelite argues that "Lockridge's repeated attempts to lead Safelite away from uncovering the truth about his actions proves an intent to deprive Safelite of evidence[.]" (Reply, PAGEID # 4734.) Safelite

15

points to the various occasions during this ordeal when Lockridge was either dishonest or less than forthcoming. (*Id.*) But evidence that Lockridge tried to conceal his new employer from Safelite does not equate to evidence that he tried to deprive Safelite of his text messages. Lockridge, his counsel, and Caliber have not been model participants in the discovery process—and Lockridge must face the consequences for their collective failure to take reasonable steps to preserve evidence. The record before the Court contains clear and convincing evidence that Lockridge was negligent—though, not intentional—in failing to preserve his text messages. See *EPAC Techs., Inc. v. Thomas Nelson, Inc.*, No. 3:12-CV-00463, 2018 WL 3322305, at *3–4 (M.D. Tenn. May 14, 2018).

### 2. Safelite was prejudiced by Lockridge's failure to preserve the text messages.

Because Safelite has not shown that Lockridge intended to deprive it of evidence, the Court turns to whether Safelite has been prejudiced by the loss of the text messages. *See* Fed. R. Civ. P. 37(e)(1). "Prejudice can be properly understood as a party's ability to obtain the proofs necessary for its case . . . which is another way of saying the loss of ESI could negatively impact a party's ability to make its case, or prejudice that party because of the loss of information." *J.S.T. Corp. v. Robert Bosch LLC*, No. 15-13842, 2019 WL 2324488, at *6 (E.D. Mich. May 30, 2019), *report and recommendation adopted*, No. 15-13842, 2019 WL 2296913 (E.D. Mich. May 30, 2019). Establishing prejudice when ESI has been destroyed and the contents are unknown is challenging. On this point, the Advisory Committee advises:

> The rule does not place a burden of proving or disproving prejudice on one party or the other. Determining the content of lost information may be a difficult task in some cases, and placing the burden of proving prejudice on the party that did not lose the information may be unfair. In other situations, however, the content of the lost information may be fairly evident, the information may appear to be unimportant, or the abundance of preserved information may appear sufficient to meet the needs of all parties. Requiring the party seeking curative measures to prove prejudice may be reasonable in some such situations. The rule leaves judges with discretion to determine how best to assess prejudice in particular cases.

Fed. R. Civ. P. 37(e), advisory committee's notes to the 2015 amendment.

Safelite has demonstrated that it is prejudiced by Lockridge's failure to preserve his text messages. Records subpoenaed from Lockridge's phone carrier show that he exchanged extensive text messages with relevant individuals during a critical time period. The discovery that was produced demonstrates that Lockridge was communicating with Caliber about Safelite's technicians during that same critical period, and that he was talking to the technicians about going to Caliber. Safelite is entitled to discovery of his communications, including his text messages; it is not required to rely on his testimony that the messages were unrelated to the issues in this litigation.

Moreover, "[p]rejudice under Rule 37(e) may be found where a party has been required to 'piece together information from other sources to try to recover relevant documents.'" *Yoe v. Crescent Sock Co.*, No. 1:15-CV-3-SKL, 2017 WL 5479932, at *11 (E.D. Tenn. Nov. 14, 2017) (internal quotation and citation omitted). *See also Paisley Park Enterprises, Inc. v. Boxill*, 330 F.R.D. 226, 236 (D. Minn. 2019) ("Plaintiffs are not forced to go to already existing discovery and attempt to piece

17

together what information might have been contained in those messages, thereby increasing their costs and expenses."). Safelite has been required to do just that.

### C. Sanctions are appropriate.

#### 1. A permissive adverse-inference instruction is no greater than necessary to cure the prejudice.

Because the Court finds that Lockridge's negligent failure to preserve the text messages prejudices Safelite, a sanction under Rule 37(e)(1) is appropriate. *See Pullins v. Klimley*, No. 3:05-CV-082, 2008 WL 85871, at *5 (S.D. Ohio Jan. 7, 2008) (Rose, J.) (explaining that even "negligence or inadvertent destruction of evidence is sufficient to trigger sanctions"). The severity of the sanction is determined on a case-by-case basis, depending in part on non-producing party's level of culpability. *Adkins*, 554 F.3d at 652–53. "[A] proper spoliation sanction should serve both fairness and punitive functions." *Id.*, at 652. Where, as here, a court finds that the movant was prejudiced by the loss of evidence, it may order "measures no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1). A court has discretion to fashion an appropriate sanction, and "[t]he range of such measures is quite broad if they are necessary for this purpose." Fed. R. Civ. P. 37(e), advisory committee's note to 2015 amendment. Nevertheless, courts must "ensure that curative measures under subdivision (e)(1)" do not have the effect of those measures (enumerated in subdivision (e)(2)) reserved for use on a finding of intent. *Id*.

The Court has considered the record as a whole in assessing the extent to which Safelite has been prejudiced by the lost text messages. Accordingly, Safelite will be permitted to introduce evidence at trial of the August 27 Letter and of

18

Lockridge's failure to preserve his text messages. Safelite may also argue for whatever inference it hopes the jury will draw. Lockridge will also be permitted to present evidence on the matter, and argue that the jury should not draw any inference from his failure to retain his text messages. This sanction is appropriate but no greater than necessary to cure the prejudice. *Cf. EPAC Techs., Inc. v. HarperCollins Christian Publ'g, Inc.*, 810 F. App'x 389, 403 (6th Cir. 2020) (finding the district court did not abuse its discretion by instructing the jury that it "may" infer that the lost evidence was unfavorable to the non-producing party, as the permissive instruction was "no greater than necessary" to cure the prejudice").

### 2. Safelite is entitled to attorneys' fees and costs.

When a motion for Rule 37 sanctions is granted, a court may award the reasonable expenses incurred in making the motion. Fed. R. Civ. P. 37(a)(5)(A). The Court will award Safelite attorneys' fees and costs associated with all discovery related to the dispute over Lockridge's text messages, including the fees and costs incurred in bringing the instant motion.

IV. **CONCLUSION**

Because the Court finds that Lockridge spoliated evidence and Safelite was prejudiced by the spoliation, Safelite's Motion (ECF No. 287) is **GRANTED**. Pursuant to Rule 37(e)(1), the parties will be permitted to present admissible evidence of Lockridge's duty to preserve his text messages, and negligent failure to do so, and argument on whatever inference the jury should take from that evidence.

Safelite is also **AWARDED** attorneys' fees and costs. Safelite is **ORDERED** to submit a statement of its attorneys' fees and costs so incurred **within two weeks** of the date of this Order.

Lockridge and Caliber's Motion to Strike (ECF No. 301) is **DENIED**.

**IT IS SO ORDERED.**

/s/ Sarah D. Morrison
**SARAH D. MORRISON
CHIEF UNITED STATES DISTRICT JUDGE**