IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**SAFELITE GROUP, INC.,**

    **Plaintiff,**

    v.

**NATHANIEL LOCKRIDGE, et al.,**

    **Defendants.**

Case No. 2:21-cv-4558
Chief Judge Sarah D. Morrison
Magistrate Judge Elizabeth P. Deavers

## OPINION AND ORDER

This matter is before the Court on two discovery-related motions, one filed by Plaintiff Safelite Group, Inc. ("Safelite") and one filed by Defendant Caliber Collision Center ("Caliber"). Safelite's motion (ECF No. 333) seeks a protective order to limit a 30(b)(6) deposition. Caliber's motion (ECF No. 338) seeks leave to serve Safelite with additional interrogatories as an alternative to obtaining the same information at a Rule 30(b)(6) deposition. Both motions have been fully briefed. (ECF Nos. 337, 340, 341, 351.) For the following reasons, Caliber's motion is **GRANTED, in part, and deferred, in part,** pending further ruling by the presiding Chief District Judge. Further, Safelite's motion is **GRANTED, in part**, **DENIED, in part**, and **deferred, in part**, pending further ruling by the presiding Chief District Judge.

**I.**

The lengthy history of this case has been detailed across various orders of the Court and will not be repeated here. By way of very quick background relevant to the current Motions, at issue here is a revised 30(b)(6) deposition notice that Caliber, on behalf of all Defendants, sent to Safelite. The notice contained 29 numbered topics. (ECF No. 333, Exhibit A.) To date, the

parties have agreed on Topics 13, 15, 16, 18, 19, 21, 23, 24, 27, and 29.  That leaves Topics 1-12, 14, 17, 20, 22, 25, 26, and 28 remaining at issue and the subject of Safelite's motion for a protective order.  Through its separate motion, Caliber has requested leave, pursuant to Federal Rule of Civil Procedure 33, to serve 15 additional interrogatories to resolve the dispute as to Topics 3-6, 8, 14, 20, 22, 26 and 28, *see* ECF No. 338-1, in the event the Court would find such an approach preferable.

Without belaboring it, upon review of the Rule 30(b)(6) Topics at issue, in the exercise of the discretion afforded to the Court in managing discovery, the Court finds it preferable for Caliber to attempt to obtain certain information in the form of interrogatory answers. Accordingly, the Court will consider Caliber's alternative proposal set forth in its Motion. Further, because the resolution of Caliber's Motion would impact the scope of Safelite's Motion, the Court will consider the Motions in reverse order.

## II.

Rule 33, by its express terms, limits each party to a total of 25 written interrogatories with certain specified exceptions. Rule 33 states:

> Unless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts. Leave to serve additional interrogatories may be granted to the extent consistent with Rule 26(b)(1) and (2).

Fed. R. Civ. P. 33.  the Advisory Committee Note to Fed. R. Civ. P. 33 makes clear that 25 written interrogatories is the limit *unless* a party obtains either a stipulation by the opposing party or leave of court to exceed the limit.

The district court has "broad discretion to determine the proper scope of discovery" under Fed. R. Civ. P. 26(b)(2).  *Mall v. Merlo*, No. 2:18-cv-430, 2019 WL 2521165, at *1 (S.D. Ohio June 19, 2019).  Under Rule 26(b)(2) the Court has discretion to "alter the limits" on the number

of written interrogatories a party may serve on another party. *West v. Hilton*, No. 3:10-cv-284, 2012 WL 1186007, at *1 (S.D. Ohio Apr. 9, 2012). "To determine whether a party should be permitted to serve additional discovery requests, 'the Court looks to whether the benefits of the expansion outweigh[ ] the burden of the extra discovery.'" *Mall,* 2019 WL 2521165, at *1 (quoting *Pettus-Brown v. Phelps*, No. 2:18-cv-082, 2018 WL 5960821, at *5 (S.D. Ohio Nov. 14, 2018)), *report and recommendation adopted*, No. 2:18-cv-82, 2019 WL 132346 (S.D. Ohio Jan. 8, 2019) (quoting *Martin v. Posey*, No. 2:15-cv-2294, 2017 WL 412876, at *4 (S.D. Ohio Jan. 31, 2017)). A party who seeks leave to serve additional discovery requests "must make a 'particularized showing'" to demonstrate a need for the additional requests. *Id.* (quoting *Pettus-Brown,* 2018 WL 5960821, at *5) (quoting in turn *St. Ann v. McLean*, No. 5:15-cv-11770, 2017 WL 5732991, at *2 (E.D. Mich. Nov. 28, 2017) (collecting cases)).

Through its current Motion, Caliber proposes to obtain certain information originally sought by way of Rule 30(b)(6) Deposition Topics through the use of fourteen contention interrogatories, Interrogatory Nos. 25-38. (ECF No. 338-1.) These proposed interrogatories are directed to Topics 3-6, 8, 14, 20, and 22 request the factual bases for Safelite's claims (Topics 3-6), allegations (Topics 14, 20, and 22), and attorney fees and damages (Topic 8), including supporting documents by Bates number. Caliber also proposes one non-contention interrogatory, Interrogatory No. 39, which it describes as directed to Rule 30(b)(6) Topic Nos. 26-29. (ECF No. 338-1.) Topics 26 and 28 both address the matter of spoliation. Unsurprisingly, Safelite opposes Caliber's proposals on several grounds.

Turning first to the contention interrogatories, Safelite primarily argues that Caliber has not made the required particularized showing that such interrogatories "largely addressing [Caliber's] own documents" are necessary. (ECF No. 341 at 3.) While recognizing that

3

contention interrogatories are allowable, Safelite further contends that, under the circumstances of this case, responding would require significant resources, would provide no additional facts, and would "only explain what Safelite's counsel thinks about the documents already exchanged." (*Id*. at 5.)

For its part, Caliber asserts that the additional interrogatories are designed to accommodate Safelite's claim of undue burden and Safelite's assertion that the information Caliber sought by way of a Rule 30(b)(6) deposition was more appropriately obtained utilizing interrogatories. In rejecting Caliber's alternative offer, Caliber contends that Safelite is attempting to preclude "**the only two forms of discovery-under-oath that are available under the Civil Rules**." (ECF No. 351 at 2) (emphasis in original). As for particularized need, Caliber asserts that more than 3½ years since Safelite filed this action, Safelite still has not identified by Bates number: (1) the specific trade secrets allegedly misappropriated by Caliber or Caliber's means of that alleged misappropriation; (2) the documents supporting Safelite's customer and employee solicitation claims; or (3) the documents supporting Safelite's claims of tortious interference with customer relationships and contracts. (*Id*.) Moreover, Caliber contends, Safelite fails to acknowledge the complexity of this litigation involving five Defendants and over a dozen claims or that Caliber served its first 17 interrogatories before the Court granted Safelite leave to file its Second Amended Complaint in April 2022. Caliber also refutes Safelite's claims of burden and that additional interrogatories should not be permitted because the information sought resides with Caliber.

This issue, at least as it relates to the proposed contention interrogatories, Interrogatories 25-38, does not require significant discussion. Caliber should be permitted to serve these additional interrogatories.

First, beyond reasonable debate, Caliber may have made a different calculus regarding interrogatories with the benefit of Safelite's Second Amended Complaint. Further, this case, involving claims of trade secret misappropriation, tortious interference, conspiracy, and spoliation is without question factually and legally complex. The most cursory glance at the Court's docket in this nearly four-year-old case confirms this to be true. Looking no further than the number and quality of counsel would suggest such a conclusion. So would the sheer number of filings. Digging deeper, of course, the length and content of the persistent briefing, frequently involving disputes arising from expansive discovery, substantiates the legal and factual complexity.

Additionally, the interrogatories are intended as an accommodation to Safelite's claim that preparing a corporative representative to address the targeted matters would be unduly burdensome. As Caliber asserts, Safelite cannot have it both ways.

Beyond this, there is no merit to Safelite's argument that additional interrogatories are unwarranted because Caliber already possesses responsive documents. *Dodd v. Hendrickson USA, LLC*, 349 F.R.D. 286, 295 (W.D. Ky. 2025) ("The fact that responsive documents are already in Defendant's possession is not a valid objection."). The same holds true for Safelite's unadorned statement that responses to these interrogatories would only explain the thoughts of Safelite's counsel about documents already exchanged. This argument, seemingly rooted in the work product doctrine, has been rejected by courts. *United States v. Brancatelli*, 740 F. Supp. 3d 677, 680 (N.D. Ohio 2024) (citing *SEC v. McGinnis*, No. 14-cv-6, 2015 WL 13505396, at *7 (D. Vt. Jan. 13, 2015) (" the court concludes that contention interrogatories asking for those same facts constitute a less burdensome and more convenient substitute for a Rule 30(b)(6) deposition on the same subject matter"); *SEC v. Morelli*, 143 F.R.D. 42, 48 (S.D.N.Y. 1992) ("in

5

circumstances similar to the case at bar, the use of contention interrogatories has been authorized in the face of work product objections") (citing cases)). Finally, Safelite's claim of burden is wholly conclusory.

The lone non-contention interrogatory, Interrogatory No. 39, however, requires a different discussion. For ease of reference, that Interrogatory provides in full:

> **INTERROGATORY NO. 39:** *Identify any and all electronic information and other documents that were deleted, destroyed, corrupted, damaged, lost, overwritten or otherwise not preserved that were in Safelite's custody, possession or control and were discoverable or potentially discoverable in this Lawsuit, regardless of whether or not such non-preservation occurred pursuant to any retention policy. [30(b)(6) Topic Nos. 26-29.] See Stage v. Restoration Hardware, Inc., No. 2:14- cv-077, 2015 WL 631113, \*2 (S.D. Ohio Feb. 12, 2015).*

Safelite asserts that the Interrogatory is an attempt by Caliber to shift blame regarding the destruction of evidence. Caliber, on the other hand, argues that it pertains to Safelite's pending motion for spoliation sanctions against Caliber. In support, Caliber, in part, relies on the Sixth Circuit's statement in *Nat'l Lab. Rels. Bd. v. Bannum, Inc.*, 93 F.4th 973, 983 (6th Cir. 2024), that "implicit in spoliation is the requirement that the evidence be actually lost or destroyed." Thus, according to Caliber, Interrogatory No. 39 "goes to the ultimate question of whether Safelite is entitled to spoliation sanctions in the event Safelite failed to preserve the very emails or other documents Safelite claims that Defendant Billingsley deleted from his **Safelite** laptop and **Safelite's** systems while he was employed by Safelite, and its failure to preserve its employees' relevant text messages if they were under its control." (ECF No. 351 at 8) (emphasis in original).

To the extent Caliber contends that Interrogatory No. 39 pertains to the pending motion for spoliation sanctions, as Caliber notes, that motion was the subject of a hearing before the presiding Chief District Judge earlier this year. Thus, any forthcoming ruling on the spoliation

6

motion may bear upon the specifics of this Interrogatory. Moreover, the information requested by Interrogatory No. 39 is not unrelated to the issue surrounding RFP 187 as raised in Caliber's more recently filed motion to compel (ECF No. 372). For these reasons, the Undersigned will defer resolution of Caliber's Motion as it relates to Interrogatory No. 39, pending further ruling by the presiding Chief District Judge.

In sum, Caliber's Motion seeking leave to serve additional interrogatories is **GRANTED, in part,** with respect to Interrogatory Nos. 25-38. With respect to Interrogatory No. 39, resolution of Caliber's Motion is **DEFERRED** pending further ruling by the presiding Chief District Judge.

### III.

Turning to Safelite's Motion, "[a] Rule 30(b)(6) deposition notice, like other forms of discovery, is subject to the limitations under Rule 26 of the Federal Rules of Civil Procedure." *Majestic Bldg. Maint., Inc. v. Huntington Bancshares Inc.*, No. 2:15-CV-3023, 2018 WL 3358641, at *5 (S.D. Ohio July 10, 2018) (citation omitted); *see also* Fed. R. Civ. P. 30 Advisory Committee's Note to 2015 Amendment ("Rule 30 is amended in parallel with Rules 31 and 33 to reflect the recognition of proportionality in Rule 26(b)(1)."). Rule 26, which governs the scope of discovery and its limits, provides in relevant part:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

In order to protect a party from annoyance, embarrassment, oppression, or undue expense, and upon a finding of good cause, a court can issue a protective order under Rule 26. Fed. R.

7

Civ. P. 26(c)(1)("A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending ..."). "The burden of establishing good cause for a protective order rests with the movant." *Smith v. Gen. Mills, Inc.*, No. C2 04-705, 2006 WL 7276959, at *1–2 (S.D. Ohio Apr. 13, 2006) (quoting *Nix v. Sword*, 11 F. App'x 498, 500 (6th Cir. 2001)). To show good cause, a movant must be "able to demonstrate that the requested discovery, if not excluded or materially modified, would cause a clearly defined and serious injury." *Consumer Fin. Prot. Bureau v. Borders & Borders, PLC*, No. 3:13-CV-1047-CRS, 2016 WL 9460471, at *2 (W.D. Ky. June 29, 2016) (citations omitted); *see also Smith*, 2006 WL 7276959, at *1–2 ("To show good cause, a movant for a protective order must articulate specific facts showing a 'clearly defined and serious injury' resulting from the discovery sought and cannot rely on mere conclusory statements.") (citing *Nix*, 11 F. App'x at 500).

As Safelite notes, many of the Rule 30(b)(6) Topics remaining at issue here involve numerous subsections. In the interest of brevity, the Court will not include them here verbatim. Rather, given the absence of any specific objection to Safelite's framing, the Topics will be set forth as summarized in Safelite's Motion, but expanded as necessary.

> **Topics 1 and 2:** *Seek the "factual basis" regarding the misappropriation of Safelite trade secrets allegations against Caliber, Nathaniel Lockridge ("Lockridge"), and William Harris Billingsley ("Billingsley"), including the "identity of documents, by Bates number, supporting each such alleged misappropriation." Among other subtopics, Topic 1 seeks discussion on "the amount of all monetary damages and all other relief Safelite seeks for each" claim, including "how Safelite calculates" such amounts. Topic 2 includes "the facts, circumstances, and documents (by Bates number) supporting Safelite's claim that each such information identified in Topic 1 constitutes Safelite's trade secret."*

Safelite argues that these Topics are directed to Defendants' own actions and therefore seek legal theories and impressions from Safelite's counsel, not Safelite's own knowledge. Safelite

8

also explains that it has served an expert report on damages and Defendants have scheduled the deposition of Safelite's expert on that report. In response, Caliber asserts that deficiencies in Safelite's unverified interrogatory answers necessitate these Topics. In reply, Safelite acknowledges that a Topic discussing Safelite documents that it contends Defendants misappropriated is proper. But, Safelite asserts, a Safelite representative would not be able to testify as to what Defendants did with Safelite's trade secrets after they left Safelite unless the representative reviewed documents and testimony from non-Safelite parties.

To be clear, Topics 1 and 2 state, in their entirety, as follows:

> 1. The factual basis for Safelite's Counts One, Two, Three and Four of the Second Amended Complaint (the "Complaint") against Caliber and Defendants Nathaniel Lockridge ("Lockridge") and William Harris Billingsley ("Billingsley"), as applicable, for alleged misappropriation of Safelite's purported trade secrets; a specific description of each trade secret (by Bates number, if applicable) allegedly misappropriated by each such Defendant, and the factual circumstances (the who, what, when, where and how) concerning each such alleged misappropriation, including the identity of each Person to whom each alleged Safelite trade secret was disclosed (and identity of documents, by Bates number, supporting each such alleged misappropriation); and the amount of all monetary damages and all other relief Safelite seeks for each and every such claim of misappropriation against Caliber and each other applicable Defendant, and how Safelite calculates all such amounts of damages and other relief.
>
> 2. The facts, circumstances, and documents (by Bates number) supporting Safelite's claim that each such information identified in Topic 1 constitutes Safelite's trade secret or other protected confidential or proprietary information (each an alleged "trade secret"), including:
>
>     a. Which Persons currently have and historically have had access to each such alleged trade secret;
>
>     b. Safelite's efforts, steps, measures, policies, procedures, practices, methods, actions, and attempts to protect and/or maintain the secrecy or confidentiality of each such alleged trade secret, including any changes to these efforts, steps, measures, policies, procedures, practices, methods, actions, and attempts in the past five years; and
>
>     c. The independent economic value, actual or potential, derived from each such alleged trade secret not being generally known to, and not being readily

>ascertainable through proper means by, the public or other Persons who could obtain economic value from each such information.

Notably, Topic 1 is set forth in the same format as Topics 3-6. As discussed above, Caliber has offered to utilize a contention interrogatory to address those Topics. (ECF No. 338-1 at Interrogatory Nos. 25-29.) It is unclear why Caliber could not do the same with respect to this Topic. Accordingly, the parties are **DIRECTED** to meet and confer on the use of a contention interrogatory to resolve their disagreement over Topic 1.

Topic 2, however, is in a different category. Safelite's objections, which do not appear to be meaningfully directed to this Topic, as distinct from Topic 1, are not persuasive. Without doubt, "[a] Rule 30(b)(6) notice … may properly seek the factual basis for another party's claims or defenses." *Miller v. Experian Info. Sols., Inc.,* No. 3:13-CV-90, 2014 WL 7176620, at *2 (S.D. Ohio Sept. 18, 2014); *see also White v. City of Cleveland*, 417 F. Supp. 3d 896, 910 (N.D. Ohio 2019) (citing *Miller* and other cases). And, contrary to Safelite's objection, the Court is satisfied that Topic 2 is limited to the factual bases for Safelite's claim of trade secret protection. Moreover, the nature of Safelite's trade secrets, Safelite's efforts to protect them, and the economic value Safelite attaches to such secrets, are all matters specific to Safelite, and, therefore, a legitimate topic of inquiry for a corporate representative under the circumstances here. That is, they are not "'facts' that occurred almost entirely at Caliber" or based upon "documents that were produced by Defendants." (ECF No. 340 at 3.) Accordingly, Safelite's Motion is **DENIED** as to Topic 2. Nevertheless, the parties should consider the utility of addressing Topic 2 by way of a contention interrogatory in the context of their meet and confer as to Topic 1.

>**Topic 7**: *The topic and its six sub-topics seek "[t]he total damages and other relief Safelite seeks to recover" against the Defendants, including all data and calculations of the damages claims.*

According to Safelite, the data already has been produced. Beyond this, Safelite argues that this Topic is not particularized. To the contrary, Caliber describes this Topic as "the epitome of appropriateness and particularity." (ECF No. 337 at 13.) As support for its need for this information, Caliber explains that it seeks this information because, to date, Safelite has not provided a complete answer to Interrogatory No. 18 relating to Safelite's alleged damages. In Caliber's view, if Safelite is relying exclusively on its expert's Report, Safelite's corporate designee may simply so state at the Rule 30(b)(6) deposition. At the same time, Caliber notes, if Safelite has damages-related information responsive to this Topic *not included in the Ikizler report,* Defendants are entitled to depose Safelite about it.

Caliber has the better argument here. Contrary to Safelite's characterization, based on Caliber's explanation, the Court does not interpret this Topic as Caliber's effort to require Safelite to prepare a second witness just to echo Dr. Ikizler. Accordingly, Safelite's Motion is **DENIED** as to Topic 7.

> **Topic 9:** *The topic and its multiple sub-topics seek testimony regarding the agreements between Safelite and the former-employee defendants.*

Safelite states that it agreed to designate a corporate representative to speak on the agreements, but it objected to preparing a corporate representative to speak on "all communications" pertaining to the "terms and conditions of the agreements" between Safelite and each of the four former-employee defendants. Safelite's objection notes that several agreements date back more than a decade. Caliber explains that, despite the use of the term "all" in this Topic is sufficiently specific because it is limited to the agreements between Safelite and the four individual Defendants relating to the alleged restrictive covenants underlying Safelite's claims.

11

> To be clear, Topic 9, in full, states that it includes, but is not limited to:
>
> (i) all communications with each of the individual Defendants listed above regarding the terms and conditions of the agreements and/or Safelite's attempt to enforce the agreements; (ii) the Safelite position(s) or job title(s) of employees who are or have been subject to similar agreements containing non-competition and/or non-solicitation obligations; and (iii) the non-privileged communications with respect to the enforceability of such agreements (as applied to Defendants and any other similar agreements as applied to other Safelite employees with the same or similar job positions or titles).

(ECF No. 333 at 24.) As stated, Safelite's objection is limited to the specific language in subtopic (i) relating to "all communications … regarding the terms and conditions of the agreements." The Court agrees that, in the context of this Topic, this particular subtopic is overly broad. Caliber's reliance on *Tera II, LLC v. Rice Drilling D, LLC*, No. 2:19-cv-2221, 2020 WL 5792921 (S.D. Ohio Sept. 29, 2020), in support of a different result is misplaced. In that case, the defendants agreed to narrow the topic from "[a]ny and all information regarding communications" to "communications regarding the leases in this case and any facts constituting the claims and defenses raised…." *Id.* at *4. The Court found that narrowed topic to satisfy the particularity requirement. *Id.* ("these narrowed topics satisfy the reasonable particularity requirement"). Here, the phrase "terms and conditions" easily could include information beyond the claims and defenses in this case making compliance unnecessarily burdensome. *Majestic Bldg. Maint.*, 2018 WL 3358641, at *7 (citing *Tr. of Boston Univ. v. Everlight Elecs. Co.*, No. 12-CV-11935-PBS, 2014 WL 5786492, at *3 (D. Mass. Sept. 24, 2014) (holding that deposition topics seeking testimony regarding "all facts related to" certain topics did not meet the reasonable particularity requirement). Thus, the Court finds that this particular subtopic of Topic 9 does not describe the intended topic with reasonable particularity. Accordingly, the Court

modifies subtopic (i) to limit it to the terms and conditions *related to this case*. To this extent, Safelite's Motion is **GRANTED** as to Topic 9.

> **Topic 10:** *Seeks identification of every single Safelite competitor in the geographic markets at issue, including those that meet the "Conflicting Organization" definition in the non-competition agreements at issue.*

Safelite asserts that this Topic is overly broad and unduly burdensome and seeks information which Safelite does not keep in any centralized manner. According to Safelite, it agreed to designate a corporate representative to speak on examples of competitors, and how a competitor is defined, but Defendants rejected that proposal and said examples were not sufficient. Caliber counters that Topic 10 is not overly broad because it is limited to only those competitors "(i) 'Safelite has identified' (ii) 'in each geographic market for which Safelite seeks recovery of damages ….'" (ECF No. 337 at 15.) Caliber explains that this information is critical to Safelite's claimed damages. According to Caliber, Safelite's damages expert acknowledges in his Report that "the existence and extent of other Safelite competitors in a particular market means that material portions of Calibers' auto glass business gains in that market were not taken from Safelite." (*Id*.) Safelite, relying on the deposition testimony of Nathanial Lockridge, explains that there could be thousands of auto glass businesses in Arizona alone, making it unreasonable to prepare a witness to testify as to each one. To be clear, Mr. Lockridge testified that he estimates 3000 glass replacement companies in Phoenix and 1500 in Tucson. (ECF No. 340-1.) (ECF Nos. 340 at 7; 340-1.)

The Court agrees that this information is relevant to Safelite's damages claims. The Court also notes that, in claiming overbreadth, Safelite relies on the most expansive interpretation of this Topic. To be sure, however, the contractually defined terms, presumably of Safelite's drafting, are quite expansive. But Caliber cannot be faulted for holding Safelite's to its own

13

language. At the same time, the Topic assumes that Safelite maintains a comprehensive list for each year from which this information readily can be extracted. Safelite represents that this is not the case. Caliber has presented nothing to allow the Court to conclude otherwise. Nevertheless, it seems reasonable to expect that, as a matter of standard business practice, Safelite was or is acutely aware of, at the very least, its self-defined top competitors or "Conflicting Organization[s]" in any given year in each of its geographic markets. For this reason, the Court will modify this Topic by limiting it to Safelite's top ten competitors or "Conflicting Organization[s,]" excluding Caliber, as identified by Safelite for 2021, 2022, 2023, 2024 and to date in 2025 for the Houston and San Antonio markets in Texas and the Tucson and Phoenix markets in Arizona[1]. To this extent, Safelite's Motion is **GRANTED** as to Topic 10.

> **Topic 11:** *Topic 11 merges 13 independent sub-categories into one topic. The sub-topics range from "financial performance (i.e. revenue, revenue by customer, profits and losses, expenses, annual budges/forecasts, etc.)" for a five-year period to "technician retention and attrition/turnover."*

Safelite asserts that this Topic seeks testimony on some of the vast amount of data it has produced and claims this Topic requires more particularity. For its part, Caliber explains that this Topic is stated with more than sufficient particularity, seeks highly relevant and specific information, and is tailored to each store, geographic area and/or market that Safelite contends is at issue here. Further, Caliber states that it has offered to provide additional clarification if requested by Safelite. In reply, Safelite states that it has agreed to produce a witness or witnesses who could discuss how the data and reports were run and could answer specific questions on what certain data fields meant. According to Safelite, Defendants have indicated this is not

---

[1] As the Court understands it, these are four geographic markets at issue here. If, contrary to this understanding, one or more of these geographic markets is not at issue, Safelite is not be required to respond to this Topic with respect to that specific geographic market.

sufficient but have failed to state with particularity on what type of additional information they would like a witness prepared.

This Topic is stated with sufficient particularity.  Accordingly, the Motion for a Protective Order is **DENIED** as to Topic 11.  To the extent Safelite needs any additional clarification, the parties are **DIRECTED** to meet and confer about such need.

> **Topic 12:** *This topic includes four subtopics. Safelite agreed to designate a corporate representative for Topics 12(a), (c), and (d). However, Topic 12(b) asks for each former-employee defendant's access to "trade secrets" and "the documents (by Bates number)" reflecting such access.*

Safelite explains that the requested information is not tracked in that manner, such that it would be impossible to prepare a witness on this.  Caliber does not appear to challenge this representation in response.  Accordingly, Safelite's Motion is **GRANTED** as to Topic 12(b).

> **Topic 17:** *The topic and its 7 sub-topics seek Safelite's auto glass technician turnover rates from January 2020 to June 2023 in Texas and Arizona, including the specific information surrounding each of the Texas and Arizona technicians that have separated from Safelite.*

Safelite explains that it does not track this information in a centralized way and this Topic is otherwise overly broad and unduly burdensome.  In Safelite's view, through this Topic, Caliber is requesting that a corporate representative identify every single technician that left Safelite from January 2020 to June 2023 and the technician's stated reason for leaving.  Caliber responds that the Topic is described with reasonable particularity and Safelite has failed to meet its burden of presenting specific facts to support its claim of burden.  According to Caliber, the Topic does not seek the range of testimony described by Safelite but is specific to Safelite's technician turnover/attrition rates from 2021 to June 2023 and the reasons identified by Safelite for such attrition.  Further, the information from exit interviews and surveys regarding their reasons for leaving is limited to the relevant time period and only the Texas and Arizona markets

for which Safelite seeks damages. In reply, Safelite asserts that it already has provided extensive raw data responsive to Topic 17 and is willing to prepare a witness to explain the data. Beyond, it reiterates its expansive interpretation of this Topic.

Based on the Court' review of this Topic in full, Caliber's characterization of this Topic is more accurate. Contrary to Safelite's interpretation, the Court does not read Topic 17 as requiring "Safelite to look through every single exit interview of every single technician, over several years, to determine why each and every technician left." (ECF No. 340 at 7.) Rather, the Topic seeks Safelite's efforts "to track glass technician turnover/attrition" from January 1, 2021 to June 30, 2023, and then, based upon any efforts, "[t]he reasons identified by Safelite for such glass technician turnover/attrition," which, of course, assumes that Safelite made such an identification. (ECF No. 333 at 27.) If it did not, its corporate representative may so state. Further, to the extent the Topic refers to exit interviews, by its plain language, it is limited to "[e]xit interviews, surveys, and/or notes reflecting the reasons why technicians leave Safelite's employment *in the Texas and Arizona markets.*" (*Id*.) (emphasis added). Beyond this, Caliber is correct that Safelite has not meaningfully supported its claim of undue burden. For these reasons, Safelite's Motion is **DENIED** as to Topic 17.

> **Topic 25**: *Seeks "Safelite's responses and supplemental responses to Caliber's First Set of Expedited Discovery to Safelite and to Caliber's subsequent Interrogatories to Safelite" as to ROGs 5, 7, and 18."*

Safelite contends that this Topic seeks inappropriate discovery on discovery that is duplicative and can be obtained through less burdensome means. According to Safelite, it repeatedly inquired as to what specifically Defendants were seeking testimony on, but no additional specificity was provided. In response, Caliber asserts that this Topic is necessary due to either the unverified interrogatory answers' inconsistency with the report of Safelite's

16

damages expert or their deficiency.  (ECF No. 337 at 16.)   According to Caliber, it offered to withdraw this Topic if Safelite agreed to provide supplemental, completed verified answers to the specified interrogatories but Safelite declined the offer.  In reply, Safelite explains that, if there are specific components of its interrogatory answers that Defendants wish to ask about, they should identify those issues.  Safelite offers its willingness to meet and confer to the extent Defendants believe supplementation is necessary.  As to Caliber's offer of withdrawal, Safelite explains that Caliber's proposal did not indicate which issues in its interrogatory responses Caliber viewed as requiring supplementation.

The Court has reviewed Caliber's proposal as reflected in its letter dated November 7, 2024.  (ECF No. 337-1 at 83.)  Based on this review, Safelite's characterization of Caliber's proposal on this Topic appears to be more accurate.  For this reason, and in the interest of efficiency, Safelite's Motion is **DENIED, without prejudice** and the parties are **DIRECTED** to meet and confer on this Topic.

Finally, the two remaining topics, Topics 26 and 28, are summarized as follows:

**Topic 26:** *The topic has several sub-topics, one of which is Safelite's "provision of mobile devices to its auto glass technicians since January 1, 2020," which Safelite has agreed to produce a corporate representative to testify. The other sub-topics involve what actions Safelite's counsel took to search for documents during discovery.*

**Topic 28:** *Seeks "the efforts of Safelite to preserve evidence prior to its October 5, 2021 litigation hold in connection with actual or probable litigation[.]"*

Safelite makes the same arguments with respect to these Topics as it makes regarding Topic 25.   In response, Caliber contends that topics concerning preservation issues are proper, especially where there is evidence of non-preservation by the proposed corporate deponent.  In reply, Safelite asserts that these topics echo Caliber and Billingsley's responses to Safelite's

17

Motion for Default Judgment against Billingsley, ECF No. 302. In Safelite's view, Defendants are attempting to manufacture spoliation issues against Safelite to minimize their own capability.

As with proposed Interrogatory No. 39, any forthcoming ruling on the spoliation motion may bear upon the specifics of these Rule 30(b)(6) Topics.  For this reason, the Undersigned will defer resolution of Safelite's Motion as it relates to these Topics, pending further ruling by the presiding Chief District Judge.

## IV.

Caliber's motion (ECF No. 338) is **GRANTED, in part, and deferred, in part,** pending further ruling by the presiding Chief District Judge.  Further, Safelite's motion (ECF No. 333) is **GRANTED, in part**, **DENIED, in part**, and **deferred, in part**, pending further ruling by the presiding Chief District Judge.  The parties are **DIRECTED** to meet and confer as set forth above.

**IT IS SO ORDERED.**


Date: September 19, 2025                /s/ *Elizabeth A. Preston Deavers*
                                                **ELIZABETH A. PRESTON DEAVERS**
                                                **UNITED STATES MAGISTRATE JUDGE**