# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

**SAFELITE GROUP, INC.,**

        **Plaintiff,**        **:**

                            **Case No. 2:21-cv-4558**

        **v.**                       **Chief Judge Sarah D. Morrison**

                            **Magistrate Judge Elizabeth A. Preston Deavers**

**NATHANIEL LOCKRIDGE, *et al.*,**    **:**

        **Defendants.**

## OPINION AND ORDER

Safelite Group, Inc. is a nationwide auto glass repair and replacement provider. Caliber Collision Centers recently expanded its collision repair business to include auto glass repair and replacement. In 2021, William Harris Billingsley left his position at Safelite and started working for Caliber. Safelite brought suit alleging that Billingsley and others used Safelite's proprietary information to persuade Safelite employees and customers to move to Caliber. Billingsley also faces claims that he intentionally destroyed evidence of his improper conduct. The matter is now before the Court on Safelite's Motion (ECF No. 302) seeking sanctions against Billingsley and Caliber for intentional spoliation. The parties appeared before the Court for an evidentiary hearing on January 9 and 10, 2025. At the close of the hearing, the Court ordered the parties into mediation—unfortunately, that effort was unsuccessful. The Court thus turns its attention back to Safelite's Motion. For the reasons below, the Motion is **GRANTED in part** and **DENIED in part**.

## I.     STATEMENT OF FACTS

### A.     <u>July 30, 2021</u>: Billingsley accepted a job with Caliber.

Billingsley began working for Safelite after its predecessor company, Belron, acquired Diamond Auto Glass. By mid-2021, Billingsley started looking for new employment. He applied to Caliber and was interviewed on June 4, 2021. (*See* ECF No. 302-2, PAGEID # 5240.) Four days later, Billingsley emailed the Non-Compete Agreement he executed when working at Diamond to his personal email account (glassman303836@gmail.com) and, from there, he sent it to Caliber Director of Auto Glass Michael Fox. (*See* ECF No. 302-3, PAGEID # 5276.) On June 18, 2021, Caliber VP of Auto Glass Mark Turner emailed a Caliber recruiter, copying Fox and others, saying "We found out yesterday that [Billingsley's] noncompete is enforceable. We have been communicating with and we are working through a way to make things work. Stay tuned." (ECF No. 302-2, PAGEID # 5239.)

On July 28, 2021, Billingsley met with Turner, Fox, and Jeffrey Nowak (a co-defendant in this action). Two days later, Caliber sent Billingsley a formal offer to work as Caliber's General Manager, Auto Glass – Houston. (ECF No. 302-2, PAGEID # 5241.) Billingsley accepted.

Billingsley gave Safelite his two-weeks' notice on August 2, 2021.

**B.** __August 1, 2021__**: The alleged spoliation activity began.**

The alleged spoliation activity began on August 1, 2021. The activity is most

easily reviewed in timeline format:

| | |
|---|---|
| 3:23 pm | Six USB storage devices were connected to Billingsley's Safelite laptop. (Reynolds Rep., ECF No. 302-5, PAGEID # 5353.) One of those devices had a 2-terabyte storage capacity. (*Id.*, PAGEID # 5359.) Billingsley purchased the 2 TB drive from Best Buy earlier that day. (*See* ECF No. 302-3, PAGEID # 5288.) |
| 7:38 pm | Billingsley sent an email from his Safelite account to his Gmail account with eight Safelite documents attached (the "7:38 Email"). (ECF No. 42-1, PAGEID # 269.) |
| 7:40 pm | Billingsley's Safelite account received a "Bounceback Notice" because the 7:38 Email was too large to send. (*Id.*) Billingsley deleted the Bounceback Notice from his inbox. |
| 8:47 pm | Billingsley deleted the 7:38 Email from his sent folder. (*Id.*, PAGEID # 263.) |
| 9:48 pm | Billingsley deleted the 7:38 Email from his deleted folder. (*Id.*, PAGEID # 263.) This completed a "double-delete." |

Between 8:00 and 10:00 that night, Billingsley deleted a large number of

files, folders, and emails from his Safelite laptop. (Reynolds Rep., PAGEID # 5352.)

Of note, 47 emails with subject lines similar to the 7:38 Email (the "Exhibit C

Emails") were deleted from the "Sent" folder of Billingsley's Safelite email account

during this time.[1] (Reynolds Rep., PAGEID # 5361.) Billingsley admitted during the

---

[1] The 7:38 Email had the subject line: *Emailing: 10-2 Associate Letter, 1881 ROLE RESPONSIBILITIES 8-3-2020, 1881-1870-phone assignments, 2020 Asst Store Mgr NE Store Mgr IC Plan - MKAM_INE, 2020 HOUSTON MARKET KPI REPORT RANKED, 091520 WH Nonglass, Adding Vendors to GlassTrack Buyout Box, Ass* (Reynolds Rep., PAGEID # 5365.) This syntax "is consistent with a subject line that *Outlook* pre-populates when a *Windows* user right-clicks on a file or a set of files, hovers over 'Send to,' then chooses 'Mail recipient.'" (*Id.*, PAGEID # 5360–61.)

hearing that these "are the subject lines of emails that [he] sent from [his] Safelite email account to [his] personal Gmail in August of 2021[.]" (Hr'g Tr. Vol. I, ECF No. 353, 142:12–16.) The Exhibit C Emails contained at least 148 attachments with file names ranging from "Harris B resume Final" and "2017_TaxReturn," to "Van Supply Checklist" and "Safelite Location Manager List 2021." (Reynolds Rep., PAGEID # 5369–72.)

Even though he was still employed by Safelite, Caliber issued Billingsley an iPhone and laptop on August 12, 2021. (ECF No. 302-3, PAGEID # 5311.) On August 13, Billingsley connected his Caliber iPhone to his Safelite laptop. (Reynolds Rep., PAGEID # 5359.) That afternoon, Billingsley performed mass-scale deletions and double-deletions in his Safelite email. (*Id.*, PAGEID # 5354 (noting 3,382 double-deletions in a 53-minute period and 2,015 deletions in a 16-minute period).) The next day, Billingsley deleted 5,717 files and 872 folders from his Safelite *OneDrive* account. (*Id.*)

Billingsley's last day with Safelite was August 16.

**C.**  **August 27, 2021: Safelite sent Billingsley a cease-and-desist letter.**

On August 27, 2021, Safelite sent Billingsley a letter advising that the company believed he was in breach of contract (the "August 27 Letter"). (ECF No. 117-1.) The letter reached Caliber within days. (*See* ECF No. 242-2, PAGEID # 3039–40.) Caliber responded on September 10, 2021, "assur[ing]" Safelite that Billingsley was "not in violation" of his agreement. (ECF No. 242-2, PAGEID

# 3036.) Emails from around the same time indicate that Caliber had instructed Billingsley to "run[] under the radar." (ECF No. 242-3, PAGEID # 3041.)

**D.** **September 14, 2021: Safelite sued Billingsley in Texas.**

On September 14, 2021, Safelite filed suit against Billingsley for breach of contract in a Texas state court. (ECF No. 56-1.) Two months later, Safelite joined Billingsley in the instant action. (ECF No. 15.) At some point in the interim, Safelite became aware of the 7:38 Email because it found the Bounceback Notice in the "Deleted Items" folder on Billingsley's Outlook account. (*See* ECF No. 42-1.)

Billingsley and his accounts and devices were issued litigation holds during the early months of litigation. First, Billingsley's Safelite email account was subject to an automatic hold for departing employees effective August 17, 2021. (Hr'g Tr. Vol. II, ECF No. 354, 303:17–304:15.) Then, in early-October 2021, Safelite put a litigation hold on the laptop Billingsley used before he left the company. (ECF No. 310-4, PAGEID # 5871.) Next, on October 27, 2021, Billingsley's Texas counsel issued him a litigation hold. (ECF No. 302-3, PAGEID # 5300.) Then, on November 22, 2021, Caliber issued a litigation hold to Billingsley. (ECF No. 302-3, PAGEID # 5305.) And finally, on December 24, 2021, Billingsley's Ohio counsel issued a litigation hold. (ECF No. 140-1, PAGEID # 1394.)

**E.** **January 21, 2022: Billingsley testified under oath that he deleted records from his Gmail account even after litigation was filed.**

During a January 21, 2022 deposition, Safelite confronted Billingsley about the 7:38 Email and the Bounceback Notice. Billingsley admitted that the documents attached to the 7:38 Email "appear[ed] to be Word documents that [he] created for

5

certain role responsibilities and phone assignments in [Safelite's] Pasadena location." (ECF No. 302-2, PAGEID # 5219.) He explained that his "intention was to get [his] personal data off of the computer and [he] inadvertently made a mistake and tried to send too much documentation[.]" (*Id.*, PAGEID # 5220.) Billingsley gave conflicting testimony about his subsequent email activity:

> Q. Did you resend it, when it bounced back?
> A. No.
> Q. Why not?
> A. Because I went back through it and realized that I had made a mistake.
> Q. And did you resend any emails to yourself after that?
> A. No.
> Q. So you left your personal information on the Safelite's computer then?
> A. I went back through and I pulled exactly what was mine to make sure that I didn't make this mistake.
> Q. And then did you send that information to yourself?
> A. I did.
> Q. Have you produced that email, in this litigation?
> A. I have not.

(*Id.*, PAGEID # 5221–22.) And he admitted to deleting "all emails and all personal documentation off the computer." (*Id.*, PAGEID # 5223.) He also admitted to deleting records from his Gmail account as late as January 2022, although he maintained that he printed and gave "just about everything" to his counsel before deleting the original file. (*Id.*, PAGEID # 5226–27; *see also* Hr'g Tr. Vol. I, 147:3–9.)

## F. Other misconduct allegations.

Safelite also alleges that Billingsley deleted the browser history on his Caliber laptop (ECF No. 302, PAGEID # 5166), failed to disable the 30-day auto-delete for his text messages until January 21, 2022 (*see* ECF No. 309, PAGEID # 5630), failed to disable the 30-day auto-delete for his Gmail account (*see id.*), and

provided "evasive and untrue" responses to discovery (ECF No. 302, PAGEID # 5174).

## II.   PROCEDURAL BACKGROUND

In its operative Second Amended Complaint, Safelite asserts the following claims against Billingsley:

Count 1:   Misappropriation of Trade Secrets (Federal)
Count 2:   Misappropriation of Trade Secrets (Ohio)
Count 4:   Misappropriation of Trade Secrets (Texas)
Count 5:   Tortious Interference with Business Relationships
Count 7:   Conspiracy
Count 8:   Unjust Enrichment
Count 9:   Breach of Duty of Loyalty
Count 10:  Conversion
Count 13:  Breach of Contract
Count 16:  Intentional Spoliation of Evidence

(ECF No. 126.)

In the Motion now before the Court, Safelite seeks default judgment against Billingsley for intentional spoliation and failure to comply with discovery orders, an adverse instruction against Caliber for ratifying Billingsley's conduct, and attorneys' fees. (Mot. (citing Fed. R. Civ. P. 37(b)(2), (e)(2)).)

## III.  ANCILLARY MOTIONS

As an initial matter, the Court will address three ancillary motions. First, Caliber's Motion for Leave to File Sur-Reply (ECF No. 321) is **GRANTED**; Caliber's Sur-Reply (ECF No. 321-1) will be considered. Next, both Caliber and Billingsley take issue with the evidence attached to Safelite's post-hearing brief. Caliber argues that the evidence is being used for the first time and so should be stricken; Billingsley argues that the portions of Safelite's brief discussing that evidence

should be stricken. The evidence in question was not raised at the two-day evidentiary hearing, or introduced into the extensive record at any prior time. Still, motions to strike evidence are disfavored—especially when the presiding court can simply ignore the offending evidence. *Cf. Berry v. Frank's Auto Body Carstar, Inc.*, 817 F. Supp. 2d 1037, 1041–42 (S.D. Ohio 2011) (Dlott, J.). This Court will not consider the evidence attached to Safelite's post-hearing brief; the pending motions to strike (ECF Nos. 368, 369) are thus **DENIED as moot**.

## IV. LEGAL STANDARD

A party to civil litigation has a duty to preserve information, including electronically stored information ("ESI"), when he knows or should know that the information "may be relevant to future litigation." *John B. v. Goetz*, 531 F.3d 448, 459 (6th Cir. 2008) (citation omitted). When that duty is breached, and relevant information has been spoiled, or spoliated, "a district court may exercise its authority to impose appropriate discovery sanctions." *Id*. A party seeking sanctions for spoliation of ESI must show that:

1) ESI that "should have been preserved in the anticipation or conduct of litigation" was lost;

2) The party responsible for preserving the information "failed to take reasonable steps to preserve" it; and

3) The information "cannot be restored or replaced through additional discovery."

Fed. R. Civ. P. 37(e). If a movant satisfies these three threshold elements, a court can sanction the non-producing party in one of two circumstances, depending on the cause and effect of the spoliation.

First, a court can impose sanctions if the loss of information prejudices the movant, regardless of the non-producing party's intent. Fed. R. Civ. P. 37(e)(1). Courts have "broad discretion to craft proper sanctions for spoliated evidence." *Adkins v. Wolever*, 554 F.3d 650, 651 (6th Cir. 2009); *see also* Fed. R. Civ. P. 37(e)(1) advisory committee's note to 2015 amendment. But, in this circumstance, the sanction must be "no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1).

Second, a court can impose sanctions if the non-producing party intended to deprive the movant of the information's use in the litigation, regardless of whether the movant can show prejudice. Fed. R. Civ. P. 37(e)(2). When a court finds intentional spoliation, it can order more severe sanctions, such as an adverse-inference instruction or default judgment. *Id*. A court cannot impose the Rule 37(e)(2) sanctions without a demonstration of intent—a "showing of negligence or even gross negligence will not do the trick." *Applebaum v. Target Corp.*, 831 F.3d 740, 745 (6th Cir. 2016).

## V.    ANALYSIS

### A.    Billingsley intentionally spoliated relevant evidence; but default judgment is not appropriate.

To determine whether Billingsley spoliated evidence, with what degree of culpability, and to what effect, the Court finds it helpful to catalog the information allegedly spoiled. First, there are the emails deleted from Billingsley's Safelite email account (the "Safelite Emails"). This category includes emails from the Inbox, Sent folder, Deleted Items folder, and any other folder in Billingsley's Safelite

9

email. Second, there are the files and folders deleted from Billingsley's Safelite laptop and OneDrive account (the "Safelite Files"). Third are the external storage devices that were plugged into Billingsley's Safelite laptop, never to be seen again (the "External Hard Drives"). Fourth, the text messages automatically deleted from Billingsley's cell phone (the "Text Messages"). Fifth are the items deleted, either manually or automatically, from Billingsley's Gmail account (the "Gmail Items"). Sixth and finally, there is the browser history from Billingsley's Caliber laptop (the "Browser History").

> ### 1. The threshold elements of Rule 37(e) are satisfied.

>> #### a) Billingsley's Text Messages and Gmail Items should have been preserved, but were lost.

"It goes without saying that a party can only be sanctioned for destroying evidence if it had a duty to preserve it." *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 216 (S.D.N.Y. 2003). So, the first step in the Court's analysis is to identify the boundaries of Billingsley's duty to preserve evidence in this case. This "involves two related inquiries: *when* does the duty to preserve attach, and *what* evidence must be preserved?" *Id*.

Courts use an objective standard to determine the point at which a party is put on notice that evidence may be relevant to future litigation. *Byrd v. Alpha Alliance Ins. Corp.*, 518 F. App'x 380, 384 (6th Cir. 2013). The focus thus lies on when the party "*should have known*" that the evidence may be relevant to future litigation"—not when he subjectively learned of the litigation. *John B.*, 531 F.3d at 459 (emphasis added) (citation omitted). Although this trigger-point can predate the

10

filing of a complaint, the mere possibility of a future dispute does not suffice. *See Goodman v. Praxair Servs., Inc.*, 632 F. Supp. 2d 393, 509 (D. Md. 2009). Instead, it must be "reasonably foreseeable that the [spoliated evidence] would be needed in future litigation." *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 587 (6th Cir. 2009), *abrogated on other grounds by, Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016); *see also* Fed. R. Civ. P. 37(e), advisory committee's note to 2015 amendment (explaining the "common-law duty" that "potential litigants have a duty to preserve relevant information when litigation is reasonably foreseeable").

The parties dispute when Billingsley's duty to preserve arose. Billingsley argues that he could not have reasonably anticipated litigation before receiving Safelite's August 27 Letter. He asserts that, until that time, he had no reason to anticipate litigation because his new position at Caliber respected the Non-Compete Agreement's geographic restrictions (and, in any event, he doubted the Agreement's validity). The Court agrees: the August 27 letter alerted Billingsley to the reasonable likelihood of legal action. *Accord Goodman*, 632 F. Supp. 2d at 511 ("Demand letters stating a claim may be sufficient to trigger an obligation to preserve.") (internal quotation and citation omitted); *Safelite Grp., Inc. v. Lockridge*, No. 2:21-CV-4558, 2024 WL 4343038, at *4 (S.D. Ohio Sept. 30, 2024) (Morrison, J.) (finding that the same letter triggered a duty-to-preserve for Billingsley's co-defendant). From that date, Billingsley was under a duty to preserve any "unique, relevant evidence that might be useful to an adversary." *Tenpenny v. Prime Now,*

*LLC*, No. 3:19-0420, 2020 WL 2062121, at *7 (M.D. Tenn. Apr. 29, 2020) (quoting *Clark Const. Grp., Inc. v. City of Memphis*, 229 F.R.D. 131, 136 (W.D. Tenn. 2005)).

Safelite argues that Billingsley should have anticipated litigation in June 2021, when he discussed his Non-Compete Agreement with Caliber. It relies on *Prudential Defense Solutions, Inc. v. Graham*, No. 20-11785, 2021 WL 4810498 (E.D. Mich. Oct. 15, 2021) for support. There, Prudential Defense Solutions ("PDS") brought suit against Jake Graham, a former-executive who, along with Mark Sheahan and Robert Charnot, founded a competing private-security company. PDS alleged that Graham colluded with Sheahan and Charnot while he was working for PDS and with full knowledge that his activities ran afoul of the non-compete agreement he signed with the company. Graham attached a note to his application for a private security license, requesting that the licensing authority not contact PDS because they "would fire him on the spot if they knew he . . . were making plans to start his own business." *Id.*, at *2 (internal alterations omitted). And the three defendants exchanged emails suggesting that their new legal counsel could help keep Graham "anonymous as long as possible" and protect him "from a non-compete suit that might come down the road." *Id.*

*Graham* supports the proposition that the duty-to-preserve may pre-date the filing of litigation, but it does not support a finding that Billingsley's duty arose in June 2021. The distinguishing factor is Graham's apparent knowledge that his conduct would prompt PDS to sue. No similar facts exist here. Billingsley certainly knew Safelite would not appreciate him taking a position with a competitor; but

12

nothing shows that he knew before late-August that Safelite might sue. Sending Caliber a copy of the Non-Compete Agreement for evaluation is far from acknowledging litigation exposure on a state licensing application. And seeking counsel's input on the Agreement's validity is far from asking counsel to prepare a defense from an action brought under it.

Having found that Billingsley was not under a duty to preserve before August 27, 2021, he cannot be sanctioned for failing to preserve the Safelite Emails, Safelite Files, or External Hard Drives.

The Text Messages, Gmail Items, and Browser History remain. Evidence that is available—including Billingsley's testimony that he sent the Exhibit C Emails to his Gmail account and Billingsley's text messages that were preserved and produced (Hr'g Ex. PX19)—indicates that these categories of information were relevant to Safelite's claims as previewed in the August 27 Letter and as pleaded. *See Beaven v. U.S. Dep't of Just.*, 622 F.3d 540, 555 (6th Cir. 2010) ("A party seeking an adverse inference may rely on circumstantial evidence to suggest the contents of destroyed evidence.") (quotation, citation, and alterations omitted). The next question is: Was that information lost?

There is no dispute that Billingsley's iPhone and Gmail account were set to auto-delete messages after 30 days, that these functions were not disabled until January 21, 2022, and that messages from both platforms were lost. There is also no dispute that Billingsley manually deleted information inside his Gmail account after litigation was filed. Although Billingsley asserts that he provided hard copies

13

of everything relevant to the litigation before deleting the information from his Gmail, Billingsley was not in a position to make that determination.

The Browser History is a different story. Although Safelite argues that Billingsley may have "manually deleted [] browser history during the pendency of discovery in litigation," (ECF No. 302, PAGEID # 5172), its expert testified that he "didn't observe any evidence of that directly." (Hr'g Tr. Vol. I, 48:16–19.) And Caliber's expert testified that there was "no browser history deletion" and that he was able to review "browser history going back much farther than was listed in" Safelite's expert's report. (Hr'g Tr. Vol. II, 342:21–23.) The Court thus lacks clear evidence that the Browser History was lost.

### b) Billingsley failed to take reasonable steps to preserve the Text Messages and Gmail Items.

Rule 37(e) requires that a party take "reasonable steps" to preserve evidence. The rule "does not call for perfection." Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment. To determine whether a party took reasonable steps to preserve evidence, courts should consider that party's familiarity with litigation, level of control over the lost evidence, resources, and any evidence of the routine, good-faith operation of an information retention system. *Id*. A court may also "need to assess the extent to which a party knew of and protected against" the risk of destruction of evidence. *Id*.

Billingsley made no effort to preserve the Text Messages or the Gmail Items. And while he does not have prior experience with litigation, he was advised no

14

fewer than three times—in October, November, and December of 2021—that he needed to retain relevant ESI.

Billingsley was first advised of his duty in an October 2021 Legal Services Agreement with Attorney Robert Wood:

> 4.8 CLIENT IS HEREBY INFORMED OF THE DUTY TO MAINTAIN ALL DOCUMENTS, E-MAILS, TEXTS, SOCIAL MEDIA AND OTHER COMMUNICATIONS RELATED TO THIS MATTER AND TO REFRAIN FROM THE DESTRUCTION, DELETION, OR MODIFICATION OF SAID MATERIALS. FAILURE TO DO SO MAY HAVE SERIOUS ADVERSE CONSEQUENCES TO CLIENTS' CASE. EVEN ACCIDENTAL DESTRUCTION OR DELETION OF DOCUMENTS, E-MAILS, TEXTS AND OTHER COMMUNICATIONS MUST BE AVOIDED. AUTOMATIC DELETION OF EMAILS MUST BE HALTED.

William Billingsley                          10/27/2021

William Billingsley                          Date

Attorney                                     Date

(ECF No. 302-3, PAGEID # 5300.) The Agreement specifically advised Billingsley to "halt" automatic delete functions on his e-mail.[2] (*Id.*)

Less than one month later, Caliber issued Billingsley a Litigation Hold Notice with specific instructions to retain ESI in its native format and to disable automatic deletion programs. (*Id.*, PAGEID # 5305–08.) Finally, Attorney Gil

---

[2] Counsel must implement a litigation hold and "monitor[] a party's efforts to retain and produce the relevant documents." *Schnatter v. 247 Grp., LLC*, No. 3:20-CV-00003-BJB-CHL, 2022 WL 2402658, at *19 (W.D. Ky. Mar. 14 2022) (quoting, *inter alia, John B.*, 879 F. Supp. 2d at 868); *see also Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 432 (S.D.N.Y. 2004) ("Once a 'litigation hold' is in place, a party and [his] counsel must make certain that all sources of potentially relevant information are identified and placed 'on hold[.]'"). Although the record does not detail Attorney Wood's litigation hold monitoring efforts, Safelite does not argue that Attorney Wood's representation was in any way inadequate.

Gradisar was retained to represent Billingsley after Safelite's claims against him were re-pleaded in Ohio. Attorney Gradisar also advised Billingsley "to preserve all documents in [his] possession relative to [his] employment with Safelite." (ECF No. 309-6, PAGEID # 5718.)

Despite these admonitions and detailed instructions, Billingsley did not disable the auto-delete function on his iPhone until January 21, 2022 (*id.*); did not disable the auto-delete function on his Gmail account until around that time (*see id.*); and manually deleted items from his Gmail account between the filing of litigation and his first deposition.

> c) **Neither the Text Messages nor the Gmail Items can be restored or replaced through additional discovery.**

Finally, the Court must ask whether the third threshold element of the Rule 37(e) analysis is met. It is. Despite the retention of forensic experts and substantial (perhaps, too much) discovery on this issue, Safelite argues that it lacks relevant information that should have been retained and produced in discovery. The Court agrees, and so concludes that sanctions are warranted.

> 2. **Rule 37(e)(2) applies because Billingsley intentionally spoliated evidence.**

The Court can impose the most severe sanctions only if it finds that Billingsley <u>intended</u> to deprive Safelite of the use of the emails. Fed. R. Civ. P. 37(e)(2); *see also id.*, advisory committee's note to 2015 amendment. To find that a party acted with intent to deprive another of evidence, a court must find by clear and convincing proof that the party acted "with the specific purpose of gaining an

16

advantage in the present litigation." *Franklin*, 2021 WL 6066673, at *3 (internal quotation, citation, and alteration omitted). "But where information loss can be credibly explained by something other than bad faith, a finding of intent is not appropriate." *Id.* (internal quotation and citations omitted).

After reviewing the extensive record and observing Billingsley's testimony, the Court finds by clear and convincing evidence that Billingsley failed to retain the Text Messages and the Gmail Items with the specific purpose of gaining an advantage in his defense against Safelite's claims. Two factors weigh heavily in the Court's determination. First, Billingsley failed to retain relevant ESI after repeated counsel on his duty to do so. And second, Billingsley's inconsistent and implausible testimony destroyed his credibility.

For example, Billingsley testified in deposition that he tried to remove personal documents from his Safelite laptop before leaving the company. But the 7:38 Email included several documents related to Safelite operations. And although Billingsley maintained that these documents were "personal," he admitted that they were created for and pertained to his work at Safelite and that he wanted to keep them "for future reference in the glass industry." (*Id.*, 125:7, 126:12.) Billingsley also testified in deposition that he attempted to wipe the laptop clean, but he left a number of documents on the laptop's hard drive, including a personal tax return.

In another example, Safelite asked Billingsley to explain how and why its BYOD Policy was found in his Gmail account. Billingsley suggested that he "could have had a paper copy" that he scanned at FedEx and emailed to himself after

17

naming the document "BYOD Policy – Safelite Group – v1.4.pdf." (*Id.*, 150:8–151:24.) Meanwhile, Safelite's expert report shows that Billingsley deleted a file with that title from his OneDrive on August 14, 2021. Finally, and most importantly, Billingsley provided inconsistent testimony on whether he sent Safelite documents to his personal Gmail address. During deposition, he denied sending any emails after receiving the Bounceback Notice. But, in court, he testified that he started emailing documents from his Safelite account to his Gmail account only after he tried (and failed) to transfer them to an external hard drive—and that the subject lines of the Exhibit C Emails reflect his efforts.[3] (Hr'g Tr. Vol. I, 122:17–123:4.)

### 3. The Court will impose a permissive adverse inference instruction as to the Text Messages and the Gmail Items.

Having found that Billingsley intentionally failed to preserve the Text Messages and the Gmail Items, a sanction is warranted. The severity of the sanction is determined on a case-by-case basis, depending in part on the non-producing party's level of culpability. *Adkins*, 554 F.3d at 652–53. "[A] proper spoliation sanction should serve both fairness and punitive functions." *Id.*, at 652. Safelite requests the most punitive sanction available: default judgment. The so-called 'nuclear option,' default judgment should be reserved for only the most egregious circumstances. *See Bank One of Cleveland, N.A. v. Abbe*, 916 F.2d 1067, 1073 (6th Cir. 1990) (describing default judgment as "a sanction of last resort").

---

[3] Even though Billingsley's deletion of <u>sent</u> emails (the Safelite Emails) is not sanctionable, his subsequent deletion of the <u>received</u> emails (included in the Gmail Items) is properly considered spoliation of evidence.

Is that level of egregiousness present here? The Court concludes it is not. Billingsley has worked in the auto glass industry since he was 16 years old. (ECF No. 309, PAGEID # 5608.) He received his GED at some point and did not pursue any further education. (Hr'g Tr. Vol. I, 180:5–10.) This is his first experience with litigation, outside of divorce court. (*Id.*, 184:18–24.) His actions betray ignorance—of technology, of electronic records, and of proper conduct in litigation—more than malgnance. For example, he and co-Defendant Bryan Lynch texted about a form that Caliber legal was using to screen new hires who worked with any of the defendants in this suit at Safelite:

| Lynch: | We are both mentioned by name! LOL |
| Billingsley: | Wow<br>Can you download that and send me a PDF |
| Lynch: | You want a PDF? |
| Billingsley: | Yes 👍<br>To my personal email |

(Hr'g Ex. PX19.) When confronted about these text messages during cross examination, Billingsley was unable to explain why he asked Lynch to use his personal email address when both men worked at Caliber. (Hr'g Tr. Vol. I, 166:7.) In another example, Billingsley admitted that he "could have" deleted text messages that showed him and his co-defendants "blowing off steam in regards to the litigation we're involved in." (*Id.*, 242:21–23.)

It is clear that, while Billingsley thought himself clever, he made enormous miscalculations about Safelite's ability to probe his electronic records for information and communications pertinent to its case. Those probes uncovered

bread-crumbs leading the way through his sloppy and rudimentary attempts to dispose of information relevant to these proceedings.[4] It is this Court's judgment that Billingsley is not sophisticated enough to have fully understood the ramifications of these decisions when he made them.

Neither default judgment nor a mandatory adverse inference would serve the purposes of fairness and punishment; they are simply too extreme. Yes, Billingsley intentionally deleted evidence—but "[f]inding an intent to deprive another party of the lost information's use in the litigation does not require [this Court] to adopt any of the measures listed in" Rule 37(e)(2). Fed. R. Civ. P. 37(e)(2), advisory committee's note to 2015 amendment. Instead, the interests of fairness and punishment are satisfied by imposing a permissive adverse inference instruction. Accordingly, Safelite will be permitted to introduce evidence at trial of Billingsley's failure to preserve the Text Messages and the Gmail Items, including evidence indicating what the content of those lost Text Messages/Gmail Items might have been. Safelite may also argue that the jury should infer that those Text

---

[4] Billingsley's own testimony highlights the dilemma:

Q [Safelite's counsel]: So, there were items, multiple items, that you sent yourself that night that you performed a hard or permanent delete on them, correct?
A [Billingsley]: They were sent, but I don't know where they were sent.
Q: Were they sent to your personal Glassman Gmail?
A: I don't know.
**Q: Who would know?**
**A: Nobody but me.**

(Hr'g Tr. Vol. I, 233:6–13 (emphasis added).)

Messages/Gmail Items were adverse to Billingsley's case. Billingsley will also be permitted to present evidence and argument on the matter. The Court will instruct the jury that it may draw an adverse inference from the loss of the Text Messages and Gmail Items.[5]

### B. Safelite fails to establish that Caliber should be sanctioned for spoliation of evidence.

Safelite also seeks sanctions against Caliber. Because it fails to establish the Rule 37(e) threshold elements, sanctions are not appropriate.

### 1. The threshold elements of Rule 37(e) are not satisfied.

On the first threshold element, the Court must determine whether Caliber had a duty to preserve the Text Messages or the Gmail Items.[6] "[T]he duty to preserve evidence does not extend to evidence which is not in a litigant's possession or custody and over which the litigant has no control." *MacSteel Inc. v. Eramet N. Am.*, No. 05–74566, 2006 WL 3334011, at *1 (E.D. Mich. Nov. 16, 2006) (citation and quotation omitted). *Cf. Beaven*, 622 F.3d at 553 (including as an element of a claim for spoliation sanctions before the 2015 amendments to Rule 37 "that the party having control over the evidence had an obligation to preserve it at the time it was destroyed"). Caliber argues that it did not have possession, custody, or control over the Gmail Items and, thus, did not have a duty to preserve them. The Court

---

[5] The Court declines to issue any different or additional sanctions under Rule 37(b).

[6] Safelite also argues that Caliber failed to timely image a laptop resulting in loss of information. After hearing testimony from Caliber's expert, the Court is not persuaded that any information was actually lost as a result of the date on which the laptop was imaged.

agrees: Caliber was not in possession or custody of Billingsley's Gmail account; but the question of whether it could exercise control is more difficult. The Sixth Circuit has interpreted control to mean actual control or "the legal right to obtain the [information] on demand." *In re Bankers Tr. Co.*, 61 F.3d 465, 469 (6th Cir. 1995).[7] Safelite does not argue that Caliber had the legal right to obtain access to or the contents of Billingsley's Gmail account on demand, and the Court finds Caliber did not have any such legal right. *Accord* The Sedona Conference, *The Sedona Conference Commentary on Rule 34 and Rule 45 "Possession, Custody, or Control,"* 25 Sedona Conf. J. 1, 61 (2024) ("As a general matter, an employer does not have 'control' over or the right to access personal information and data stored . . . personal email accounts . . . of its employees.").

As to the Text Messages, it is unclear whether the lost messages were on Billingsley's personal iPhone, his Caliber-issued iPhone, or both. (*Compare* Reynolds Rep., PAGEID # 5362–3 (discussing 30-day autodelete on Billingsley's "first Caliber iPhone") with Hr'g Tr. Vol. I, 158:13–14, 159:6–12  (discussing autodelete on Billingsley's personal cell phone).) The parties do not brief this nuance, or the impact of it on the issue of 'control.'

Moving to the second threshold element, the Court considers Caliber's efforts to preserve the Text Messages. Caliber took all reasonable efforts to do so. Caliber

---

[7] Safelite urges the Court to use the more lenient practical-ability test to determine whether Caliber had control over the Gmail Items. Finding no instance in which the Sixth Circuit Court of Appeals has ever employed that test, the Court declines to do so.

helped Billingsley retain counsel in both Texas and Ohio, but will not pay his legal fees incurred for defending him on the spoliation allegations. (See Hr'g Tr. Vol I., 206:24–208–17.) It also issued a separate litigation hold to Billingsley that expressly instructed him to disable auto-delete functions on all his accounts and devices.[8] Caliber led the horse to water—the Court will not impose a sanction simply because Billingsley wouldn't drink.

Because Caliber lacked control over the Gmail Items and made reasonable efforts to preserve the Text Messages, Safelite has not made the threshold showing necessary to establish that Caliber committed any sanctionable spoliation.

### 2. The Court declines to impute Billingsley's spoliation to Caliber.

Finally, Safelite argues that Caliber should be sanctioned for Billingsley's spoliation under general principles of agency law. Safelite asserts that Caliber ratified Billingsley's conduct by promoting him after knowing that he spoliated evidence. "A principal ratifies the unauthorized act of his agent if the principal, with full knowledge of the facts, conducts himself in a way which manifests his intention to approve an earlier act performed by his agent which did not bind him." *Kirby Devs. LLC v. XPO Glob. Forwarding, Inc.*, No. 2:18-CV-500, 2021 WL 4125457, at *20 (S.D. Ohio Sept. 9, 2021) (Morrison, J.) (quoting *Bailey v. Midwestern Ent., Inc.*, 658 N.E.2d 1120 (Ohio Ct. App. 1995)) (internal quotation marks omitted).

---

[8] Nothing in the record indicates that Caliber could have remotely controlled the auto-delete function on the iPhone it issued to Billingsley.

The record indicates that Caliber did not have full knowledge of the facts. By Safelite's own admission, Billingsley had not admitted before the evidentiary hearing that he sent the Exhibit C Emails from his Safelite account to his Gmail account. Beyond ratification, the Court does not find that the interests of fairness or punishment would be served by sanctioning Caliber for a co-defendant's conduct when there is no evidence showing that another Caliber agent prompted, assisted, or otherwise participated in the spoliation. The extensive record simply does not bear out Safelite's allegations of a vast corporate conspiracy to hide the lost information.

### C. Safelite is entitled to some attorneys' fees and costs.

When a motion for Rule 37 sanctions is granted, a court may award the reasonable expenses incurred in making the motion. Fed. R. Civ. P. 37(a)(5)(A).

The Court will **AWARD** Safelite attorneys' fees and costs associated with the dispute over the Text Messages and Gmail Items. The Court further **AWARDS** fees and costs incurred in bringing the instant motion, but only to the extent they were incurred for the specific categories of information intentionally spoliated. Safelite is **ORDERED** to submit a statement of such fees and costs **within two weeks** of the date of this Order.

## VI. CONCLUSION

In conclusion, the Court finds that Billingsley intentionally spoliated evidence and imposes a permissive adverse inference instruction. Further, because Caliber has not spoliated evidence, no sanction is warranted.

Safelite's Motion for Default Judgment and Sanctions (ECF No. 302) is **GRANTED in part** and **DENIED in part**; Caliber's Motion for Leave to File Sur-Reply (ECF No. 321) is **GRANTED**; Caliber's Motion to Strike (ECF No. 368) is **DENIED as moot**; and Billingsley's Motion to Strike (ECF No. 369) is **DENIED as moot**. Finally, Safelite is **ORDERED** to submit a statement of fees and costs **within two weeks** of the date of this Order.

      **IT IS SO ORDERED.**

/s/ Sarah D. Morrison
**SARAH D. MORRISON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
